*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

---

TIMOTHY P BEUCA,

*Plaintiff-Appellant,*

v.

WASHINGTON STATE UNIVERSITY
and JOHN AND JANE 1-10,

*Defendants-Appellees.*

---

*Appeal from a Decision of the United States District Court for the Eastern District of Washington,*
*No. 2:23-cv-00069-TOR · Honorable Thomas O. Rice*

## APPELLANT'S OPENING BRIEF

HAROLD H. FRANKLIN JR., ESQ.
HAROLD H. FRANKLIN, JR.,
ATTORNEY AT LAW
459 Seneca Avenue NW
Renton, Washington 98057
(206) 617-7031 Telephone
haroldfranklin1@comcast.net

MATTHEW B. MCREYNOLDS, ESQ.
PACIFIC JUSTICE INSTITUTE
9851 Horn Road, Suite 115
Sacramento, California 95827-6600
(916) 857-6900 Telephone
mattmcreynolds@pji.org

*Attorneys for Appellant Timothy P Beuca*




**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ...............................................................................1

JURISDICTIONAL STATEMENT ......................................................1

STATUTORY AUTHORITIES ...........................................................2

ISSUES PRESENTED FOR REVIEW .................................................2

STATEMENT OF THE CASE.............................................................3

SUMMARY OF THE ARGUMENT ....................................................4

ARGUMENT .....................................................................................6

    I.     Standards of Review....................................................6

    II.    The Decision Below is Irreconcilable with *Groff v. DeJoy* .................6

         A.    The District Court relied on the de minimis standard and assumed undue hardship ............................7

         B.    The District Court's reliance on the de minimis standard is indefensible post-*Groff*.............................9

         C.    Even prior to *Groff*, this Circuit required a more searching examination of undue hardship defenses than is reflected in the decision below .................................................11

         D.    The District Court's conclusion that WSU could establish undue hardship as a matter of law misreads out-of-Circuit decisions, ignores reality, and would diminish the rights of healthcare employees to a degree not contemplated by Title VII..................................................................13

    III.   The District Court's denial of leave to amend was an abuse of discretion .........................................................18

         A.    Denial of leave to amend was inseparable from the District Court's misperception of the undue hardship standard ..................................................................18

i

B.   Dr. Beuca provided a short and plain statement of his claims, and any defects in pleading could have been cured either through amendment or discovery .........................20

C.   The one week between removal and the filing of the Motion to Dismiss was not "ample opportunity" for Dr. Beuca to re-frame his case for federal court ............................24

IV.  The District Court failed to meaningfully address or remand Dr. Beuca's WLAD claims .......................................................................26

CONCLUSION ..............................................................................................27

STATEMENT OF RELATED CASES ..................................................29

CERTIFICATE OF COMPLIANCE ....................................................30

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Alvarez v. Hill,*
　　518 F.3d 1152 (9th Cir. 2008) ..............................................................22

*Anderson v. Gen. Dynamics Convair Aerospace Div.,*
　　589 F.2d 397 (9th Cir. 1978) ...............................................................11

*Balint v. Carson City, Nev.,*
　　180 F.3d 1047 (9th Cir. 1999) ........................................7, 11, 12, 16

*Balistreri v. Pacifica Police Dep't,*
　　901 F.2d 696 (9th Cir. 1988) ..........................................................18, 19

*Bolden-Hardge v. Office of Cal. State Controller,*
　　63 F.4th 1215 (9th Cir. 2023) ......................................6, 7, 14, 16, 20

*Burns v. S. Pac. Transp. Co.,*
　　589 F.2d 403 (9th Cir. 1978) ......................................................11, 13

*Burwell v. Hobby Lobby Stores, Inc.,*
　　573 U.S. 682 (2014) ..............................................................................20

*Davis v. Team Elec. Co.,*
　　520 F.3d 1080 (9th Cir. 2008) ..................................................22, 23

*Does 1-2 v. Hochul,*
　　632 F. Supp. 3d (E.D.N.Y. Sept. 30, 2022) ......................................14

*Gilligan v. Jamco Dev. Corp.,*
　　108 F.3d 246 (9th Cir. 1997) ..................................................6, 22, 25

*Groff v. DeJoy,*
　　No. 22-174, slip op., 600 U.S.___,143 S. Ct. 2279 (2023) ......................*passim*

*Heller v. Ebb Auto Co.,*
　　8 F.3d at 1438 (9th Cir. 1993)........................................................12, 15

*Kumar v. Gate Gourmet, Inc.*,
  180 Wn.2d 481(Wash. 2014) ........................................................25, 26

*Lowe v. Mills*,
  68 F.4th 706 (1st Cir. 2023)................................................................14

*MacDonald v. Or. Health & Sci. Univ.,*
  WL 5529959, 2023 U.S. Dist. Lexis 151070
  (D. Or. Aug. 28, 2023).......................................................................15

*Opuku-Boateng v. Cal.*,
  95 F.3d 1461 (9th Cir. 1996), *cert. denied*, 520 U.S. 1228 (1997) ...................12

*Payton v. Walsh*,
  579 F. Supp. 3d 1057 (S.D. Ind. 2022)...............................................16

*Payne v. St. Charles Health Sys*.,
  No. 6:22-cv-01998-MK, 2023 WL 4711431 (D. Or. July 6, 2023) ...................16

*Samper v. Providence St. Vincent Med. Ctr.*,
  675 F.3d 1233 (9th Cir. 2012) ............................................................15

*Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*,
  450 U.S. 707 (1981) ...........................................................................20

*Together Emps. v. Mass Gen. Brigham Inc.*,
  573 F. Supp. 3d 412 (D. Mass. 2021),
  *aff'd*, 32 F.4th 82 (1st Cir. 2022)...............................................13, 14

*Tooley v. Martin-Marietta Corp*.,
  648 F.2d 1239 (9th Cir. 1981) .............................................................7

*Trans World Airlines*, *Inc. v. Hardison*,
  432 U.S. 63 (1977).................................................9, 10, 11, 12, 26

*United States v. Corinthian Colls.*,
  655 F.3d 984 (9th Cir. 2011) ..................................................18, 19, 25

## STATUTES AND RULES

28 U.S.C. § 1291 ............................................................................ 2

28 U.S.C. § 1331 ............................................................................ 1

28 U.S.C. § 1367(a) ........................................................................ 1

42 U.S.C. § 2000e et seq. (Title VII of Civil Rights Act) ..............................*passim*

Fed. R. Civ. P. 8 ..........................................................................21, 24

Fed. R. Civ. P. 12 ...........................................................................25

Fed. R. Civ. P. 12(b)(6) ....................................................................23

Fed. R. Civ. P. 56 ...........................................................................23

RCW 49.60.180 (Washington Law Against Discrimination).........................*passim*

Wash. Super. Ct. Civ. R. 7 .................................................................25

Wash. Super. Ct. Civ. R. 7(c) ..............................................................27

Wash. Super. Ct. Civ. R. 12 ...............................................................27

## OTHER SOURCES

Ariane de Vogue, *Supreme Court seems sympathetic to postal worker who didn't work Sundays in dispute over religious accommodations*, CNN (April 18, 2023), https://www.cnn.com/2023/04/18/politics/groff-dejoy-supreme-court-religious-liberty/index.html.......................................9, 11

Dani Travis, *Suspended Ascension Florida employees can go back to work after change in state vaccine laws*, WJHG (November 19, 2021), https://www.wjhg.com/2021/11/19/suspended-ascension-florida-employees-can-go-back-work-after-change-state-vaccine-laws/.........................................17

Kyle Pfannenstiel, *Eastern Idaho hospitals not requiring COVID vaccines for employees — yet*, IDAHO PRESS (August 1, 2021), https://www.idahopress.com/news/local/eastern-idaho-hospitals-not-requiring-covid vaccines-for-employees-yet/article_8f439b51-0db0-5359-9202 59e7a0 bbc6c9.html ...................................................................................................17

Lisa Schencker, *NorthShore agrees to pay $10.3 million settlement in COVID-19 vaccine lawsuit over religious exemptions*, CHICAGO TRIBUNE (August 1, 2022), https://www.chicagotribune.com/business/ct-biz-northshore-employee-covid-vaccine-settlement-20220801-hbqgrua6xnczbojhusupqy4nq4-story.html .......................................................17

## INTRODUCTION

The Plaintiff-Appellant, Dr. Timothy Beuca, was terminated from his medical residency by Washington State University. He had requested a religious exemption to the COVID-19 vaccines. His request was initially approved by the private hospital where he was working, Providence Regional Medical Center, but WSU determined no accommodation was possible and terminated him.

WSU removed the case to federal court and immediately moved to dismiss. The District Court accepted the university's proffered undue hardship as a matter of law. The Court dismissed the Complaint without leave to amend. Dr. Beuca was given no opportunity to demonstrate that accommodation was feasible and would not have posed an undue hardship to WSU. This appeal follows.

## JURISDICTIONAL STATEMENT

This case presents claims arising under federal and state employment accommodation statutes. As more fully detailed below in the Statement of the Case, Dr. Beuca first filed suit in state court, and WSU removed it to federal court without objection. The U.S. District Court for the Eastern District of Washington had original, federal question jurisdiction pursuant to 28 U.S.C. § 1331. The District Court had supplemental jurisdiction over Dr. Beuca's related state constitutional claims pursuant to 28 U.S.C. § 1367(a).

The District Court granted the Defendants' Motion to Dismiss with prejudice on May 19, 2023, disposing of all issues in the case. ER-13. The order and judgment entered the same day are final, ER-3. Dr. Beuca timely filed his Notice of Appeal on June 7, 2023. ER-49. This Court therefore has jurisdiction to hear this appeal, pursuant to 28 U.S.C. § 1291.

## STATUTORY AUTHORITIES

All constitutional provisions, statutes, and court rules cited herein appear in the Addendum to this Brief.

## ISSUES PRESENTED FOR REVIEW

The primary issues for appeal are as follows:

1. When dismissing a Title VII failure to accommodate claim, does the District Court's reliance on the de minimis standard to interpret undue hardship, subsequently abrogated by the Supreme Court in *Groff v. DeJoy*, necessitate reversal?

2. Do healthcare professionals who have not received COVID-19 vaccines pose an undue hardship to healthcare employers as a matter of law, such that no set of facts can support terminated employees' failure to accommodate claims?

3.     Should the District Court have permitted leave to amend, where Dr. Beuca had amended once in state court but did not have a meaningful opportunity to do so after his case was removed to federal court?

4.     Upon dismissing Dr. Beuca's Title VII claim, did the District Court err by not remanding Dr. Beuca's WLAD claim back to the Superior Court in which it had originally been filed?

## STATEMENT OF THE CASE

The material facts accepted as true by the District Court for purposes of the Motion to Dismiss may be summarized as follows.

In August 2021, Dr. Beuca was employed by Washington State University but was doing his medical residency at Providence Regional Medical Center. ER-5. On or about August 9, 2021, Gov. Inslee mandated that certain state employees become vaccinated against COVID-19 while allowing for religious exemptions pursuant to Title VII of the federal Civil Rights Act. ER-5. Dr. Beuca has sincerely held religious beliefs against taking a COVID-19 vaccine, and he submitted a request for religious exemption. ER-6. Dr. Beuca's requested exemption was initially approved by Providence, but not by WSU. ER-5. The latter then terminated his employment. ER-5.

Following his termination by WSU, Dr. Beuca filed a complaint with the Equal Employment Opportunity Commission; he received his right-to-sue notice

from the EEOC on or about September 5, 2022. ER-6. He then filed suit seeking damages in the Superior Court of Whitman County, on or about December 2, 2022, alleging one cause of action for failure to accommodate under Title VII. ER-6. Dr. Beuca amended his complaint once, on February 22, 2023, to add a second cause of action for failure to accommodate under the Washington Law Against Discrimination, RCW 49.60.180. ER-6. Defendants then removed the case to the Eastern District of Washington, without opposition from Plaintiff, on March 15, 2023. A week later, Defendants moved to dismiss the case with prejudice, which Dr. Beuca did oppose.

The District Court granted WSU's Motion to Dismiss without leave to amend on May 19, 2023. ER-13. Entry of judgment was entered the same day. ER-3. Dr. Beuca timely filed his Notice of Appeal on June 7, 2023. ER-49.

## SUMMARY OF THE ARGUMENT

The decision below hands not only hospitals, but a larger swath of healthcare-related employers as well, an extraordinary ability to deny religious accommodation requests across the board, without a fact-based, interactive assessment of whether the requested accommodation would truly pose an undue hardship. The District Court's holding was erroneous when decided, but it became much more so within a few weeks after the Supreme Court announced its decision in *Groff v. DeJoy.* There, the Justices unanimously discarded the de minimis

interpretation of undue hardship. They also underscored the necessity of a fact-based inquiry specific to the accommodation being requested.

Neither this Circuit's prior precedents nor the Supreme Court's most recent direction for Title VII religious accommodation lend any support to the decision below. If affirmed, it will create an untenable healthcare exception to *Groff*.

The District Court misread out-of-Circuit decisions denying preliminary injunctions, which pointed to the availability of the relief Dr. Beuca seeks. The decision below fails to fully address the factors set forth by this Court when leave to amend is not permitted. The District Court's reasoning is out of step with this Circuit's many pronouncements on notice pleading. And the Court below erred by concluding that Dr. Beuca had ample opportunity to amend, when only a week had elapsed between the removal of his case to federal court and the Motion to Dismiss which foreclosed any such further opportunity.

Lastly, the District Court barely mentioned, and failed to meaningfully address, Dr. Beuca's state law discrimination claim. At a minimum, the case should have been remanded to the Superior Court from whence it had been removed, rather than being dismissed without discussion, without leave to amend and with prejudice.

# ARGUMENT

## I.  Standards of review

On appeal, the Court reviews de novo the granting of a motion to dismiss based on failure to state a claim. *Bolden-Hardge v. Office of Cal. State Controller*, 63 F.4th 1215, 1220 (9th Cir. 2023). The Court accepts well-pleaded factual allegations as true and construes inferences in the Plaintiff's favor. *Id.* Denial of leave to amend is reviewed for abuse of discretion, but dismissal without leave to amend is improper unless it is clear, on de novo review, that the complaint could not be saved by any amendment. *Id. D*ismissal for failure to state a claim is disfavored. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

## II.  The decision below is irreconcilable with *Groff v. DeJoy*.

The District Court first found that Dr. Beuca had inadequately pled his failure to accommodate claims. ER-7. The Court's decision to dismiss with prejudice rather than granting leave to amend, however, turned on its further determination that WSU's affirmative defense of undue hardship rendered any attempts to amend the Complaint futile. Since the decision ultimately hinged on the Court's undue hardship analysis, that conclusion will be addressed here first. The Court's predicate conclusion that Dr. Beuca had failed to make out a prima facie case of failure to accommodate will follow in Section III.

**A.    The District Court relied on the de minimis standard and assumed undue hardship.**

The District Court initially noted that undue hardship is an affirmative defense, and it is to be determined within the particular factual context of each case. ER-10 (citing and quoting *Bolden-Hardge*, 63 F.4th at 1224 and *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999)). With these principles, Dr. Beuca agrees. But the District Court then committed to an analytical course that had already been narrowed by this Circuit and was soon to be rejected by the Supreme Court. The District Court stated, "Accommodation may result in an undue hardship if there is 'more than a de minimis cost to the employer . . . [or] more than a de minimis impact on coworkers.' *Balint*, 180 F.3d at 1054." ER-10. From there, the District Court rendered the sweeping assessment that, because of the pandemic and hospital setting, no set of facts could support Dr. Beuca's accommodation request for the COVID-19 vaccines. The Court acknowledged that the proffered hardship must be premised on actual imposition or disruption, not hypothetical or speculative hardships. ER-10 (citing *Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239, 1243 (9th Cir. 1981)). But the trial court engaged in just such speculation to a remarkable degree. There were as yet no facts before it as to why the accommodations offered in the Governor's vaccine mandate itself could not be extended to Dr. Beuca. Most tellingly, there was no explanation as to why the actual location of Dr. Beuca's hospital residency, Providence, initially

7

indicated it could accommodate him. But WSU—whose main campus and administrators are in Pullman more than 300 miles away from the hospital in Everett—imposed its will. The District Court set forth its position as follows:

> Plaintiff pleaded that he was a medical student doing his residency with Providence Regional Medical Center. Defendant asserts having unvaccinated internal medicine physicians would have imposed an undue hardship because it would have increased the risk of exposure to COVID-19 to patients and other healthcare workers. ECF No. 2 at 19. . .. The Court concludes Defendant's proffered reason for not accommodating Plaintiff's request is sufficient to establish an undue hardship, particularly given the increased risk of COVID-19 infection during the time of Plaintiff's termination. Plaintiff contends this issue cannot be decided on a motion to dismiss. However, the facts, as pleaded by Plaintiff show that he was working in a hospital and would have increased the risk of exposure to COVID-19 to patients and other healthcare workers. No accommodation was possible.

ER-11. The District Court further held that it could conceive of no set of facts Dr. Beuca could present to counter Defendants' blanket undue hardship defense, and therefore amending the Complaint would be futile. ER-11. In other words, it would not have mattered to the Court whether Dr. Beuca could point to other physicians and healthcare professionals who were being accommodated in the same manner he sought. This iteration of the de minimis standard was error when decided, and it is even more so now, as will be shown next, in light of intervening Supreme Court precedent.

**B.    The District Court's reliance on the de minimis standard is indefensible post-*Groff*.**

At the time the District Court was considering the Defendants' Motion to Dismiss, oral arguments held before the supreme Court on April 18 forecast a significant change to how that Court and all lower federal courts would be approaching undue hardship going forward. These arguments were widely reported.[1]

On May 19, the District Court went ahead and dismissed Dr. Beuca's claims as noted above without leave to amend. The Supreme Court then issued its much-anticipated decision rejecting the de minimis standard for Title VII on June 29, in *Groff v. DeJoy*, *Postmaster General*, No. 22-174, slip op., 600 U.S. ____, 143 S. Ct. 2279 (2023).

The *Groff* opinion addresses in considerable detail the origin of the de minimis standard in *Trans World Airlines*, *Inc*. *v. Hardison*, 432 U. S. 63 (1977). In short, the unanimous *Groff* decision holds, regarding Title VII, *Hardison* and the undue hardship standard:

> We hold that showing "more than a *de minimis*," as the phrase is used in common parlance, does not suffice to establish "undue hardship"

---

[1] Ariane de Vogue, *Supreme Court seems sympathetic to postal worker who didn't work Sundays in dispute over religious accommodations*, CNN (April 18, 2023), https://www.cnn.com/2023/04/18/politics/groff-dejoy-supreme-court-religious-liberty/index.html.

under Title VII. *Hardison* cannot be reduced to that one phrase. In describing an employer's "undue hardship" defense, *Hardison* referred repeatedly to "substantial" burdens, and that formulation better explains the decision. We, therefore, like the parties, understand *Hardison* to mean that "undue hardship" is shown when a burden is substantial in the overall context of an employer's business. See Tr. Of Oral Arg. 61-62 (argument of Solicitor General). This fact-specific inquiry comports with both *Hardison* and the meaning of "undue hardship" in ordinary speech.

*Groff*, 143 S. Ct. at 2294.

The Supreme Court further explained, "We think it is enough to say that an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business. *Hardison,* 432 U.S., at 83, n. 14." *Groff*, 143 S. Ct. at 2297.

In Dr. Beuca's case, the District Court erroneously applied a de minimis standard which is now obsolete. Because it did not explain whether it believed WSU had also met the higher substantial cost standard, summary reversal is appropriate. *Id.* (remanding for reconsideration by trial court in light of clarification that "de minimis" is not the standard for undue hardship). Moreover, the District Court did not conduct the fact-specific inquiry required by *Groff* as well as its predecessors. It simply accepted WSU's naked assertions in lieu of established facts. This was error.

**C.** **Even prior to *Groff*, this Circuit required a more searching examination of undue hardship defenses than is reflected in the decision below.**

The District Court's misplaced reliance on the de minimis standard would have been more understandable had the decision in *Groff* come as a surprise. It did not, having been heralded for months ahead of time.[2]

But even when decided, the District Court's reading of this Circuit's precedents was flawed. Shortly after *Hardison* was handed down, this Circuit rejected defenses of undue hardship asserted as a matter of law, *Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397 (9th Cir. 1978). "Undue hardship means something greater than hardship. Undue hardship cannot be proved by assumptions nor by opinions based on hypothetical facts." *Id.* at 402. *See also, Burns v. S. Pac. Transp. Co.,* 589 F.2d 403 (9th Cir. 1978). This Circuit's 45-year wariness of embracing the de minimis approach was fully vindicated in *Groff*.

In *Balint*, aptly cited yet misunderstood by the District Court, this Circuit invoked the de minimis standard as it was obligated at the time to do. But the en banc panel proceeded to reverse summary judgment for the employer in a religious

---

[2] Ariane de Vogue, *Supreme Court seems sympathetic to postal worker who didn't work Sundays in dispute over religious accommodations*, CNN (April 18, 2023), https://www.cnn.com/2023/04/18/politics/groff-dejoy-supreme-court-religious-liberty/index.html.

accommodation case because material facts were in dispute as to the employer's

proffered undue hardship, as they are here. There, the City made a familiar

argument that no accommodation was possible, and it had an undue hardship as a

matter of law. With prescience, this Court refused to read *Hardison* so narrowly,

and it remanded for further development of the limited record. *Balint*, 180 F.3d at

1054. The Court should now do likewise.

     *Balint* was hardly an outlier. This Court took pains to explain the rigors of

undue hardship in decisions such as *Opuku-Boateng v. Cal.*, 95 F.3d 1461 (9th Cir.

1996), *cert. denied*, 520 U.S. 1228 (1997). This Court addressed *Hardison* and

declined to read it broadly. *Id.* at 1469-70.

     As a threshold matter, the employer must negotiate with the employee in

good faith to explore potential accommodations. *Id.* at 1468 (citing *Heller v. Ebb

Auto Co.,* 8 F.3d at 1438, 1440 (9th Cir. 1993)). This, the facts to be taken as true

indicate WSU failed to do. This Circuit described such obligation to negotiate as a

"first requirement" and failure to do so as "a violation of the statute." *Opuku-

Boateng*, 95 F.3d at 1469.

     None of this guidance factored into the District Court's quick dismissal of

Dr. Beuca's claims.

     Far from simply accepting the state employer's claim of undue hardship as

incontrovertible, this Court closely scrutinized the government's proffered

rationales and found them unsupported by the evidence, even under a clearly erroneous standard. *Id.* at 1470-71, 1473. Something "far more concrete" is required. *Id.* at 1474. An employer is on firmer ground when it has attempted various methods of accommodation and can then point to any actual hardships. *Id.* (citing and quoting *Burns,* 589 F.2d at 406).

In short, *Groff* made abundantly clear what this Circuit had long declared Title VII's undue hardship standard requires real, not theoretical, hardships. Neither WSU nor the District Court even attempted to discuss Dr. Beuca's specific situation—they contented themselves with abstract fears about doctors, hospitals, and pandemics much more generally. This failed to meet their burdens for establishing undue hardship, either then or now.

**D.     The District Court's conclusion that WSU could establish undue hardship as a matter of law misreads out-of-Circuit decisions, ignores reality, and would diminish the rights of healthcare employees to a degree not contemplated by Title VII.**

The District Court's conjecture that vaccine accommodations would pose an inherent undue hardship in healthcare settings comported neither with law nor fact.

In dismissing Dr. Beuca's claims without leave to amend, it sought guidance from other jurisdictions, explaining: other courts have determined unvaccinated healthcare workers impose an undue hardship on employers due to the increased risk of infection. *See*, *e.g.*, *Together Emps*. *v. Mass Gen*. *Brigham Inc*., 573 F. Supp. 3d 412, 441 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022) (denying

injunctive relief after determining that unvaccinated healthcare workers materially increased the risk of spreading COVID-19); *Does 1-2 v. Hochul*, No. 121CV5067AMDTAM, 2022 WL 4637843, at *16 (E.D.N.Y. Sept. 30, 2022). ER-11.

In *Together Employees,* the First Circuit twice denied preliminary injunctions, sought by healthcare workers in Massachusetts. But those appellate decisions were quite different from the dismissal without leave to amend Dr. Beuca's claims. Indeed, the First Circuit denied extraordinary injunctive relief precisely because ordinary relief—such as monetary damages—remained available to the plaintiffs. *Together Emps.*, 32 F.4th at 86. Dr. Beuca never sought a preliminary injunction or other extraordinary relief; he seeks only what the First Circuit indicated would be available to a litigant in his situation.

The First Circuit did uphold the dismissal of Title VII claims as an undue hardship in *Lowe v. Mills*, 68 F.4th 706 (1st Cir. 2023). At the same time, it allowed constitutional claims to go forward. The essence of the holding as to Title VII was that granting the plaintiff's requests would have subjected the defendants to state sanctions. This holding appears to be at odds with this Circuit's recent decision in *Bolden-Hardge*, where the Court explained that, under the Supremacy Clause, even the state constitution—let alone a state regulation or executive order—must yield. This Court need not split with the First Circuit on this point,

though, because the minimal facts adduced so far offer no reason to believe that granting Dr. Beuca's request would have placed WSU in violation of a state order.

As to the facts to be taken as true here, the hospital where Dr. Beuca was working initially granted his request, and WSU—whose main campus and decision-makers are hundreds of miles away—overrode that determination. Dr. Beuca's situation is reminiscent of *Heller v. Ebb Auto Co.*, 8 F.3d 1433 (9th Cir. 1993) (reversing judgment for employer in Title VII and wrongful termination claims). There, this Circuit observed that rescission of an accommodation may make the Plaintiff worse off than if he had never been given permission in the first place. *Id.* at 1440.

Never before has Title VII been read to include an inherent exception for hospitals or healthcare settings, notwithstanding their longstanding, heightened interests in ensuring patient care and safety. Indeed, the health system in which Dr. Beuca was working has been successfully navigating employee accommodation needs for years. *See, e.g., Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1236, 1240 (9th Cir. 2012) (describing "highly flexible" and "Herculean" efforts taken to accommodate NICU nurses in ADA case).

Subsequent to the decision below, two other courts within this Circuit have reached nearly opposite conclusions. Most recently, in *MacDonald v. Or. Health & Sci. Univ.*, WL 5529959, 2023 U.S. Dist. Lexis 151070 (D. Or. Aug. 28, 2023),

considered arguments that mirror those put forward by WSU. MacDonald was a registered nurse working in the mother and baby unit of an OHSU hospital, who had been fired for declining the COVID-19 vaccines. OHSU argued that, as a matter of law, her failure to accommodate claims must be dismissed. The District Court of Oregon considered *Bolden-Hardge, Balint*, *Together Employees*, and supplemental briefing on *Groff*. It concluded that undue hardship had not been demonstrated as a matter of law, and dismissal without leave to amend would therefore be improper. *Id*. at 2294.

In a similar fashion, another judge within this Circuit has also recently rejected the notion that healthcare workers could not be accommodated as a matter of law. *Payne v. St. Charles Health Sys*., 6:22-cv-01998-MK, 2023 WL 4711431 (D. Or. July 6, 2023) (mag. findings and recommendations). It was not unreasonable, the magistrate judge determined, to subject the health system to discovery and continued litigation of the plaintiff's plausible claim. *Id.* This determination was consistent with this Circuit's commitment to the full development of employment discrimination claims in particular.

Meanwhile, other examples abound that healthcare settings across the country have, in fact, made the types of accommodations throughout the pandemic that the District Court thought were impossible. *See, e.g., Payton v. Walsh*, 579 F. Supp. 3d 1057 (S.D. Ind. 2022) (The healthcare system initially informed doctors,

nurses, and other healthcare professionals in late 2021 that they would be permanently terminated if unvaccinated, but "in mid-December, Ascension reversed course and informed all but one plaintiff . . . that they had been recalled and could return to their respective positions.").

Numerous other hospitals and health systems—too many to list here—either declined to terminate the unvaccinated or initially took a firm stance but later reconsidered. A few examples include the federal Veterans Administration system which accommodated doctors and nurses on a large scale; Northshore in Northern Illinois[3]; Ascension in Florida[4]; and hospitals just across the border from WSU in Idaho[5] were less hasty to impose such ultimatums.

Dr. Beuca offers the foregoing not as determinative, but to further illustrate the fallacy of assuming as a matter of law that no accommodation was possible.

---

[3] Lisa Schencker, *NorthShore agrees to pay $10.3 million settlement in COVID-19 vaccine lawsuit over religious exemptions*, CHICAGO TRIBUNE (August 1, 2022), https://www.chicagotribune.com/business/ct-biz-northshore-employee-covid-vaccine-settlement-20220801-hbqgrua6xnczbojhusupqy4nq4-story.html.

[4] Dani Travis, *Suspended Ascension Florida employees can go back to work after change in state vaccine laws*, WJHG (November 19, 2021), https://www.wjhg.com/2021/11/19/suspended-ascension-florida-employees-can-go-back-work-after-change-state-vaccine-laws/.

[5] Kyle Pfannenstiel, *Eastern Idaho hospitals not requiring COVID vaccines for employees — yet*, IDAHO PRESS (August 1, 2021), https://www.idahopress.com/news/local/eastern-idaho-hospitals-not-requiring-covid-vaccines-for-employees-yet/article_8f439b51-0db0-5359-9202-59e7a0bbc6c9.html.

Affirmance by this Court would create needless confusion throughout the Circuit and send a detrimental signal to healthcare employers that accommodations need not even be attempted, when they may very well be possible. This is exactly why this Court and the Supreme Court have long emphasized that undue hardships must be evaluated within the context of a specific case, not categorically dismissed.

## III.     The District Court's denial of leave to amend was an abuse of discretion.

### A.     Denial of leave to amend was inseparable from the District Court's misperception of the undue hardship standard.

Proceeding from its misplaced reliance on a de minimis standard, and disregard of the necessary fact-based inquiry, the District Court denied leave to amend as follows:

> In light of Defendant's successful assertion of an undue hardship, the Court further determines amendment would be futile. *See United States v. Corinthian Colls.,* 655 F.3d 984, 995 (9th Cir. 2011) (identifying factors courts should consider in assessing the propriety of leave to amend, including futility). The Court cannot conceive of any facts that would render Plaintiff's claims viable in the context of his employment setting. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988)*.*

ER-11. The District Court neither explained nor applied all of the factors set forth in *Corinthian Colleges*, where this Court held that leave to amend should have been granted even where it had not been requested by the plaintiff, 655 F.3d at 995. The five factors for assessing the propriety of granting leave to amend are the

following: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and previous amendments to the complaint. *Id.*

Not presented with any evidence as to four of the factors, this Court zeroed in on futility and could conceive of additional and alternative arguments dependent on discovery. Here, as there, it could be said of the conflicting signals given to Dr. Beuca about the state mandate and possibility of accommodation that "implementation of its policy, rather than the written policy itself . . . would require additional discovery." *Id.* at 996.

In *Balistreri*, where the plaintiff asserted claims against a police department for failing to take action against her husband when she filed harassment complaints, this Court reversed the dismissal with prejudice of her Equal Protection claim, finding the District Court had abused its discretion by not granting leave to amend. The Court first noted that, in order to grant a 12(b)(6) motion to dismiss, it must be "beyond doubt" that the plaintiff can prove no set of facts in support of the claim. *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "The standard for granting leave to amend is generous." *Id.* Leave to amend should be granted "if it appears at all possible" the defect in the complaint can be cured. *Id.* Dr. Beuca's Amended Complaint alleges that his residency hospital initially granted his accommodation request, ER-40, making it likely and not just possible he could and should have been likewise accommodated by WSU.

Neither *Corinthian Colleges* nor *Balistreri* support the District Court's dismissal without leave to amend.

**B.    Dr. Beuca provided a short and plain statement of his claims, and any defects in pleading could have been cured either through amendment or discovery.**

The District Court accepted Dr. Beuca's assertion of his sincerely held religious beliefs and convictions that prevented him from taking the COVID-19 vaccinations. ER-8 (citing *Bolden-Hardge,* 63 F.4th at 1223; *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (citation omitted); *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 715 (1981)).  However, the District Court then viewed Dr. Beuca's allegations as to the denial of his requested accommodation more skeptically:

> As to the second element, Plaintiff asserts, "[u]pon submission of his request for an exemption, the plaintiff was granted an exemption from receiving the vaccination by Providence but not from the Defendant, WSU."  ECF No. 1-5 at 5, ¶ 28.  It is not clear from this assertion whether Plaintiff submitted an exemption request to Defendant. Plaintiff further alleges he "apprised the Defendants of his sincerely held religious belief" but does not elaborate as to how he informed Defendants. *Id*. at 6, ¶ 34–35.  Defendant argues these vague statements fail to provide the Court with sufficient facts from which it could infer Defendant could be liable for the alleged misconduct.  ECF No. 2 at 17. The Court agrees.

ER-9. The District Court further faulted Dr. Beuca for not adding more elaboration in his briefing, specifically requesting leave to amend, or more

directly connecting the dots between his denied accommodation and termination. The Court held:

> Finally, Plaintiff claims he "lost this job due to his sincerely held religious beliefs." ECF No. 1-5 at 6, ¶ 36. However, Plaintiff does not provide any additional facts connecting his discharge to his religious beliefs. Such conclusory allegations are insufficient to meet the pleading requirements of Rule 8.

ER-9.

The Amended Complaint filed in state court, ER-38, does not suffer from prolix. It could be described as succinct. The practical effect of the decision below is that the "short and plain statement" identified by FRCP 8 no longer suffices.

Dr. Beuca's allegations certainly could be significantly expanded to provide much more detail about his conflict of conscience, his duties, and responsibilities at Providence, how he could have been accommodated in practical terms, how other similarly-situated healthcare professionals were being accommodated at Providence, and his interactions with WSU personnel before they terminated him.

But as pled, WSU had fair notice of his claims, which are not especially complicated. Namely, he was subjected to the Governor's vaccine mandate; he requested a religious accommodation; he was initially granted such accommodation by Providence; but he was then denied an accommodation and fired by WSU. Defendants consequently focused their attack not on the absence of

facts but the irrelevance of facts about this plaintiff, in favor of the supposed undue hardship of accommodating any such plaintiff.

In accepting WSU's position, the decision below "misapprehends the function of pleadings in federal practice." *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.*

This is all the more true in civil rights and discrimination cases. *Gilligan,* 108 F.3d at 251 (reversing dismissal of FHA claim). Borrowing from Title VII jurisprudence, this Court held, "We extend a precedent from our Title VII jurisprudence to the fair housing context. We previously have stated that a Title VII plaintiff need not make a prima facie showing to survive a motion to dismiss provided he otherwise sets forth a short and plain statement of his claim showing he is entitled to relief." *Id.* at 250 (citation omitted). This is because it will often be the case that "without any responsive pleadings or record evidence [plaintiffs] do not have the record evidence they need to allege each of the elements of a prima facie case . . . The standard [defendant] advances would require plaintiffs to plead facts they may have no way of knowing." *Id.* at 250 (brackets added).

The District Court did not take account of this Circuit's many admonitions that employment discrimination claims need to be allowed development, not

rejected out of hand. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir.

2008).

> A plaintiff alleging employment discrimination needs to produce very
> little evidence in order to overcome an employer's motion for summary
> judgment. This is because the ultimate question is one that can only be
> resolved through a searching inquiry, one that is most appropriately
> conducted by a fact finder, upon a full record. [citation omitted] In
> evaluating motions for summary judgment in the context of
> employment discrimination, we have emphasized the importance of
> zealously guarding an employee's right to a full trial, since
> discrimination claims are frequently difficult to prove without a full
> airing of the evidence and an opportunity to evaluate the credibility of
> the witnesses.

*Id.*

   Affirming the decision below would signal to defendants and lower courts

that the way to evade this Circuit's demanding standard for summary judgment in

employment discrimination cases is to prevent such cases from reaching that stage,

or even discovery. Setting a much lower bar for FRCP 12(b)(6) motions than for

FRCP 56 motions seems backwards.

   WSU surely has access to its own personnel records and information Dr.

Beuca does not yet possess as to how and why it terminated him when all other

indications were that accommodations were not only a possibility but an actuality

for other healthcare professionals in his workplace.

**C.** **The one week between removal and the filing of the Motion to Dismiss was not "ample opportunity" for Dr. Beuca to re-frame his case for federal court.**

Lastly, in denying leave to amend the District Court also believed Dr. Beuca had been afforded ample opportunity to amend and had failed to do so. In this regard, the Court wrote:

> Moreover, Plaintiff initiated this action in December 2022 and has amended the complaint once already. Plaintiff has had ample opportunity to identify any facts and causes of action that he could plausibly allege in this matter. Amendment would be futile and granting Plaintiff additional time to amend for a second time would create undue delay and prejudice to Defendant. Therefore, the Court will not grant Plaintiff leave to amend.

ER-11.

A de novo review of the record does not bear out the Court's reasoning. The District Court offered no support for its conclusion that the amendment would cause undue delay and prejudice to Defendants. But as the Court itself noted in assessing the timeline, the case had hardly gotten underway when removed, and barely six months had elapsed by the time it was dismissed with prejudice. Just one week transpired between the time WSU removed the action to federal court on March 15, 2023, and the time it filed the Motion to Dismiss on March 22 from which he now appeals. ER-6.

Although Dr. Beuca had amended once in state court, different considerations for pleading inhered in that forum. As will be further detailed in

Section IV, Washington's corollary to FRCP 12 appears to implement a lower pleading standard. Moreover, Wash. Super. Ct. Civ. R. 7, which abolished demurrers and exceptions for insufficiency of pleadings, indicates that the state and federal rules are not interchangeable.

Dr. Beuca maintains that his Amended Complaint provides a short and plain statement of his entitlement to relief which complies with FRCP 8. But since neither his original complaint with one cause of action nor his Amended Complaint adding just one additional cause of action, were drafted in anticipation of removal to federal court, it hardly seems he had "ample opportunity" to adjust to the District Court's conception of heightened federal pleading standards in the one week before he faced dismissal. And where, as of this writing less than a year has transpired since he first filed suit in state court, Dr. Beuca cannot be said to have been dilatory. The District Court failed to consider all of the *Corinthian Colleges* factors, or the larger civil rights context.

This Court has emphasized not only that failure to state a claim is generally a disfavored basis for dismissal, but all the more where discrimination claims and civil rights are at stake. *Gilligan*, 108 F.3d at 251. It was clearly erroneous for the District Court to dismiss Dr. Beuca's claims without leave to amend.

**IV.  The District Court failed to meaningfully address or remand Dr. Beuca's WLAD claims.**

Nearly lost in the District Court's decision are half of Dr. Beuca's claims—his second cause of action for failure to accommodate under the Washington Law Against Discrimination (WLAD). The District Court offered a passing citation to a leading case interpreting the WLAD, *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481(Wash. 2014), albeit with no analysis. *Kumar* set forth the failure to accommodate standard under the WLAD.

Under *Kumar*, a plaintiff could state a claim for relief if it is "possible" facts could be stated that support relief. *Kumar*, 180 Wn.2d at 488. Courts interpreting the WLAD look to interpretations of Title VII but are not bound thereby. *Id.* at 490-91. The Washington State courts have not yet had an opportunity to consider the WLAD in light of *Groff*'s pronouncement. It is unlikely, though, that they would ascribe fewer protections to the state than federal law. *Id.*

"Washington courts construe the WLAD's protections broadly where other forms of discrimination are concerned. We decline to carve out an exception for religious discrimination." *Id.* at 500. The Washington Supreme Court acknowledged that employers could raise undue hardship as a defense but drew a distinction between that and pleading a claim. *Id.* at 502 (citing *Hardison* but noting parenthetically that it dealt with post-trial context, not the pleading stage).

Accordingly, the Washington Supreme Court reversed the trial court's dismissal of the WLAD claims for failure to accommodate on the basis of religion. *Id.* at 503.

Where this Court has made clear that notice pleading works in tandem with the liberal discovery rules and summary judgment that further ensures discrimination claims are not prematurely dismissed, the Washington appellate courts went even further for WLAD claims. Certainly, Dr. Beuca's Amended Complaint met the "possibility" standard of CR 12. As noted earlier, demurrers and dismissals based on deficient pleadings have been abolished in Washington courts under CR 7(c), making it even less likely WSU could dismiss Dr. Beuca's WLAD claim in Superior Court.

In any event, the District Court's dismissal of the WLAD claims did not carefully consider relevant state precedent. Nor did the Court explain whether and for what reason it was declining either to exercise its supplemental jurisdiction or to remand the WLAD claims to state court. This was reversible error.

## CONCLUSION

The District Court's reliance on the de minimis standard for undue hardship is irreconcilable with *Groff*. The decision below did not take account of this Circuit's many admonitions to conduct a fact-specific inquiry for undue hardship, rather than relying on blanket assertions from the defense. These concerns are heightened here, where WSU's assertion of undue hardship as a matter of law is

undercut by the initial offer of an accommodation to Dr. Beuca. The District Court's denial of leave to amend was premised on its flawed understanding of undue hardship. It did not apply the five factors established in this Circuit for considering leave to amend; it did not consider that dismissal for failure to state a claim is disfavored; and it wrongly conflated amendment in state court as ample opportunity to meet federal pleading standards.

Finally, the District Court's failure to either meaningfully review or remand Dr. Beuca's state discrimination claim was clear error.

For these and all of the foregoing reasons, the decision below should be reversed.

Dated: September 6, 2023

/s/ Matthew McReynolds
Matthew McReynolds, Counsel of Record
Harold Franklin, Jr.

*Attorneys for Plaintiff-Appellant, Timothy Beuca*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s)**  23-35395

The undersigned attorney or self-represented party states the following:

[XX]  I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Signature /s/ Matthew McReynolds          Date  September 6, 2023

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** _ 23-35395 _____

I am the attorney or self-represented party.

**This brief contains 6,265 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[XX] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature /s/ Matthew McReynolds_____ Date September 6, 2023 _____

30

# ADDENDUM

# ADDENDUM

**Statutes**

28 U.S.C. § 1291 ................................................................ ADD-1

28 U.S.C. § 1331 ................................................................ ADD-1

28 U.S.C. § 1367(a) ........................................................... ADD-1

42 U.S.C. § 2000e et seq. (Title VII of Civil Rights Act) ................... ADD-2

**Rules**

Fed. R. Civ. P. 8 .............................................................. ADD-37

Fed. R. Civ. P. 12 ............................................................ ADD-39

Fed. R. Civ. P. 12(b)(6) ...................................................... ADD-39

Fed. R. Civ. P. 56 ............................................................ ADD-40

RCW 49.60.180 (Washington Law Against Discrimination) ............ ADD-41

Wash. Super. Ct. Civ. R. 7 ................................................... ADD-43

Wash. Super. Ct. Civ. R. 7(c) ............................................... ADD-43

Wash. Super. Ct. Civ. R. 12 ................................................. ADD-43

**Statutes**

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title [28 USCS §§ 1292(c) and (d) and 1295].

28 U.S.C. § 1291.

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331.

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or

declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42. U.S.C. § 2000e-2000e17

DEFINITIONS
SEC. 2000e.

For the purposes of this subchapter-

(a) The term "person" includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11 [originally, bankruptcy ], or receivers.

(b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5 [United States Code]), or

(2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26 [the Internal Revenue Code of 1986], except that during the first year after March 24, 1972 [the date of enactment of the Equal Employment Opportunity Act of 1972], persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

(c) The term "employment agency" means any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.

(d) The term "labor organization" means a labor organization engaged in an industry affecting commerce, and any agent of such an organization, and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization.

(e) A labor organization shall be deemed to be engaged in an industry affecting commerce if (1) it maintains or operates a hiring hall or hiring office which procures employees for an employer or procures for employees opportunities to work for an employer, or (2) the number of its members (or, where it is a labor organization composed of other labor organizations or their representatives, if the aggregate number of the members of such other labor organization) is (A) twenty-- five or more during the first year after March 24, 1972 [the date of enactment of the Equal Employment Opportunity Act of 1972], or (B) fifteen or more thereafter, and such labor organization-

(1) is the certified representative of employees under the provisions of the National Labor Relations Act, as amended [29 U.S.C. 151 et seq.], or the Railway Labor Act, as amended [45 U.S.C. 151 et seq.];

(2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce; or

(3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2); or

(4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; or

(5) is a conference, general committee, joint or system board, or joint council subordinate to a national or international labor organization, which includes a labor

organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection.

(f) The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

(g) The term "commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof.

(h) The term "industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor-Management Reporting and Disclosure Act of 1959 [29 U.S.C. 401 et seq.], and further includes any governmental industry, business, or activity.

(i) The term "State" includes a State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, the Canal Zone, and Outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act [43 U.S.C. 1331 et seq.].

(j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

(k) The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical

conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e-2(h) of this title [section 703(h)] shall be interpreted to permit otherwise. This subsection shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion: Provided, That nothing herein shall preclude an employer from providing abortion benefits or otherwise affect bargaining agreements in regard to abortion.

(l) The term "complaining party" means the Commission, the Attorney General, or a person who may bring an action or proceeding under this subchapter.

(m) The term "demonstrates" means meets the burdens of production and persuasion.

(n) The term "respondent" means an employer, employment agency, labor organization, joint labor management committee controlling apprenticeship or other training or retraining program, including an on-the-job training program, or Federal entity subject to section 2000e-16 of this title.

APPLICABILITY TO FOREIGN AND RELIGIOUS EMPLOYMENT
SEC. 2000e-1. [Section 702]

(a) Inapplicability of subchapter to certain aliens and employees of religious entities

This subchapter shall not apply to an employer with respect to the employment of aliens outside any State, or to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

(b) Compliance with statute as violative of foreign law

It shall not be unlawful under section 2000e-2 or 2000e-3 of this title [section 703 or 704] for an employer (or a corporation controlled by an employer), labor organization, employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining (including on-the-job training programs) to take any action otherwise prohibited by such section, with

respect to an employee in a workplace in a foreign country if compliance with such section would cause such employer (or such corporation), such organization, such agency, or such committee to violate the law of the foreign country in which such workplace is located.

(c) Control of corporation incorporated in foreign country

(1) If an employer controls a corporation whose place of incorporation is a foreign country, any practice prohibited by section 2000e-2 or 2000e-3 of this title [section 703 or 704] engaged in by such corporation shall be presumed to be engaged in by such employer.

(2) Sections 2000e-2 and 2000e-3 of this title [sections 703 and 704] shall not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer.

(3) For purposes of this subsection, the determination of whether an employer controls a corporation shall be based on-

(A) the interrelation of operations;

(B) the common management;

(C) the centralized control of labor relations; and

(D) the common ownership or financial control, of the employer and the corporation.

UNLAWFUL EMPLOYMENT PRACTICES
SEC. 2000e-2. [Section 703]

(a) Employer practices

It shall be an unlawful employment practice for an employer -

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

(b) Employment agency practices

It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin.

(c) Labor organization practices

It shall be an unlawful employment practice for a labor organization-

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

(d) Training programs

It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training.

(e) Businesses or enterprises with personnel qualified on basis of religion, sex, or national origin; educational institutions with personnel of particular religion

Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, for an employment agency to classify, or refer for employment any individual, for a labor organization to classify its membership or to classify or refer for employment any individual, or for an employer, labor organization, or joint labor management committee controlling apprenticeship or other training or retraining programs to admit or employ any individual in any such program, on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise, and (2) it shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion.

(f) Members of Communist Party or Communist-action or Communist-front organizations

As used in this subchapter, the phrase "unlawful employment practice" shall not be deemed to include any action or measure taken by an employer, labor organization, joint labor management committee, or employment agency with respect to an individual who is a member of the Communist Party of the United States or of any other organization required to register as a Communist-action or Communist-front organization by final order of the Subversive Activities Control Board pursuant to the Subversive Activities Control Act of 1950 [50 U.S.C. 781 et seq.].

(g) National security

Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to fail or refuse to hire and employ any individual for any position, for an employer to discharge any individual from any position, or for an employment agency to fail or refuse to refer any individual for

employment in any position, or for a labor organization to fail or refuse to refer any individual for employment in any position, if-

(1) the occupancy of such position, or access to the premises in or upon which any part of the duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and

(2) such individual has not fulfilled or has ceased to fulfill that requirement.

(h) Seniority or merit system; quantity or quality of production; ability tests; compensation based on sex and authorized by minimum wage provisions

Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin, nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, color, religion, sex or national origin. It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29 [section 6(d) of the Labor Standards Act of 1938, as amended].

(i) Businesses or enterprises extending preferential treatment to Indians

Nothing contained in this subchapter shall apply to any business or enterprise on or near an Indian reservation with respect to any publicly announced employment practice of such business or enterprise under which a preferential treatment is given to any individual because he is an Indian living on or near a reservation.

(j) Preferential treatment not to be granted on account of existing number or percentage imbalance

Nothing contained in this subchapter shall be interpreted to require any employer, employment agency, labor organization, or joint labor-management committee subject to this subchapter to grant preferential treatment to any individual or to any group because of the race, color, religion, sex, or national origin of such individual or group on account of an imbalance which may exist with respect to the total number or percentage of persons of any race, color, religion, sex, or national origin employed by any employer, referred or classified for employment by any employment agency or labor organization, admitted to membership or classified by any labor organization, or admitted to, or employed in, any apprenticeship or other training program, in comparison with the total number or percentage of persons of such race, color, religion, sex, or national origin in any community, State, section, or other area, or in the available work force in any community, State, section, or other area.

(k) Burden of proof in disparate impact cases

(1) (A) An unlawful employment practice based on disparate impact is established under this subchapter only if-

(i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or

(ii) the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

(B) (i) With respect to demonstrating that a particular employment practice causes a disparate impact as described in subparagraph (A)(i), the complaining party shall demonstrate that each particular challenged employment practice causes a disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice.

(ii) If the respondent demonstrates that a specific employment practice does not cause the disparate impact, the respondent shall not be required to demonstrate that such practice is required by business necessity.

(C) The demonstration referred to by subparagraph (A)(ii) shall be in accordance with the law as it existed on June 4, 1989, with respect to the concept of "alternative employment practice".

(2) A demonstration that an employment practice is required by business necessity may not be used as a defense against a claim of intentional discrimination under this subchapter.

(3) Notwithstanding any other provision of this subchapter, a rule barring the employment of an individual who currently and knowingly uses or possesses a controlled substance, as defined in schedules I and II of section 102(6) of the Controlled Substances Act (21 U.S.C. 802(6)), other than the use or possession of a drug taken under the supervision of a licensed health care professional, or any other use or possession authorized by the Controlled Substances Act [21 U.S.C. 801 et seq.] or any other provision of Federal law, shall be considered an unlawful employment practice under this subchapter only if such rule is adopted or applied with an intent to discriminate because of race, color, religion, sex, or national origin.

(l) Prohibition of discriminatory use of test scores

It shall be an unlawful employment practice for a respondent, in connection with the selection or referral of applicants or candidates for employment or promotion, to adjust the scores of, use different cutoff scores for, or otherwise alter the results of, employment related tests on the basis of race, color, religion, sex, or national origin.

(m) Impermissible consideration of race, color, religion, sex, or national origin in employment practices

Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

(n) Resolution of challenges to employment practices implementing litigated or consent judgments or orders

(1) (A) Notwithstanding any other provision of law, and except as provided in paragraph (2), an employment practice that implements and is within the scope of a litigated or consent judgment or order that resolves a claim of employment discrimination under the Constitution or Federal civil rights laws may not be challenged under the circumstances described in subparagraph (B).

(B) A practice described in subparagraph (A) may not be challenged in a claim under the Constitution or Federal civil rights laws-

(i) by a person who, prior to the entry of the judgment or order described in subparagraph (A), had-

(I) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and

(II) a reasonable opportunity to present objections to such judgment or order; or

(ii) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change in law or fact.

(2) Nothing in this subsection shall be construed to-

(A) alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure or apply to the rights of parties who have successfully intervened pursuant to such rule in the proceeding in which the parties intervened;

(B) apply to the rights of parties to the action in which a litigated or consent judgment or order was entered, or of members of a class represented or sought to be represented in such action, or of members of a group on whose behalf relief was sought in such action by the Federal Government;

(C) prevent challenges to a litigated or consent judgment or order on the ground that such judgment or order was obtained through collusion or fraud, or is

transparently invalid or was entered by a court lacking subject matter jurisdiction; or

(D) authorize or permit the denial to any person of the due process of law required by the Constitution.

(3) Any action not precluded under this subsection that challenges an employment consent judgment or order described in paragraph (1) shall be brought in the court, and if possible before the judge, that entered such judgment or order. Nothing in this subsection shall preclude a transfer of such action pursuant to section 1404 of Title 28 [United States Code].

OTHER UNLAWFUL EMPLOYMENT PRACTICES
SEC. 2000e-3. [Section 704]

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on—the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

(b) Printing or publication of notices or advertisements indicating prohibited preference, limitation, specification, or discrimination; occupational qualification exception

It shall be an unlawful employment practice for an employer, labor organization, employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer or membership in or any classification or referral for employment by such a labor organization, or relating to any classification or referral for employment by such an employment agency, or relating to admission to, or employment in, any program established to

provide apprenticeship or other training by such a joint labor-management committee, indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin, except that such a notice or advertisement may indicate a preference, limitation, specification, or discrimination based on religion, sex, or national origin when religion, sex, or national origin is a bona fide occupational qualification for employment.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
SEC. 2000e-4. [Section 705]

(a) Creation; composition; political representation; appointment; term; vacancies; Chairman and Vice Chairman; duties of Chairman; appointment of personnel; compensation of personnel

There is hereby created a Commission to be known as the Equal Employment Opportunity Commission, which shall be composed of five members, not more than three of whom shall be members of the same political party. Members of the Commission shall be appointed by the President by and with the advice and consent of the Senate for a term of five years. Any individual chosen to fill a vacancy shall be appointed only for the unexpired term of the member whom he shall succeed, and all members of the Commission shall continue to serve until their successors are appointed and qualified, except that no such member of the Commission shall continue to serve (1) for more than sixty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate, or (2) after the adjournment sine die of the session of the Senate in which such nomination was submitted. The President shall designate one member to serve as Chairman of the Commission, and one member to serve as Vice Chairman. The Chairman shall be responsible on behalf of the Commission for the administrative operations of the Commission, and, except as provided in subsection (b) of this section, shall appoint, in accordance with the provisions of Title 5 [United States Code] governing appointments in the competitive service, such officers, agents, attorneys, administrative law judges [originally, hearing examiners], and employees as he deems necessary to assist it in the performance of its functions and to fix their compensation in accordance with the provisions of chapter 51 and subchapter III of chapter 53 of Title 5 [United States Code], relating to classification and General Schedule pay rates: Provided, That assignment, removal, and compensation of administrative law judges [originally, hearing examiners] shall be in accordance with sections 3105, 3344, 5372, and 7521 of Title 5 [United States Code].

(b) General Counsel; appointment; term; duties; representation by attorneys and Attorney General

(1) There shall be a General Counsel of the Commission appointed by the President, by and with the advice and consent of the Senate, for a term of four years. The General Counsel shall have responsibility for the conduct of litigation as provided in sections 2000e-5 and 2000e-6 of this title [sections 706 and 707]. The General Counsel shall have such other duties as the Commission may prescribe or as may be provided by law and shall concur with the Chairman of the Commission on the appointment and supervision of regional attorneys. The General Counsel of the Commission on the effective date of this Act shall continue in such position and perform the functions specified in this subsection until a successor is appointed and qualified.

(2) Attorneys appointed under this section may, at the direction of the Commission, appear for and represent the Commission in any case in court, provided that the Attorney General shall conduct all litigation to which the Commission is a party in the Supreme Court pursuant to this subchapter.

(c) Exercise of powers during vacancy; quorum

A vacancy in the Commission shall not impair the right of the remaining members to exercise all the powers of the Commission and three members thereof shall constitute a quorum.

(d) Seal; judicial notice

The Commission shall have an official seal which shall be judicially noticed.

(e) Reports to Congress and the President

The Commission shall at the close of each fiscal year report to the Congress and to the President concerning the action it has taken [originally, the names, salaries, and duties of all individuals in its employ] and the moneys it has disbursed. It shall make such further reports on the cause of and means of eliminating discrimination and such recommendations for further legislation as may appear desirable.

(f) Principal and other offices

The principal office of the Commission shall be in or near the District of Columbia, but it may meet or exercise any or all its powers at any other place. The Commission may establish such regional or State offices as it deems necessary to accomplish the purpose of this subchapter.

(g) Powers of Commission

The Commission shall have power-

(1) to cooperate with and, with their consent, utilize regional, State, local, and other agencies, both public and private, and individuals;

(2) to pay to witnesses whose depositions are taken or who are summoned before the Commission or any of its agents the same witness and mileage fees as are paid to witnesses in the courts of the United States;

(3) to furnish to persons subject to this subchapter such technical assistance as they may request to further their compliance with this subchapter or an order issued thereunder;

(4) upon the request of (i) any employer, whose employees or some of them, or (ii) any labor organization, whose members or some of them, refuse or threaten to refuse to cooperate in effectuating the provisions of this subchapter, to assist in such effectuation by conciliation or such other remedial action as is provided by this subchapter;

(5) to make such technical studies as are appropriate to effectuate the purposes and policies of this subchapter and to make the results of such studies available to the public;

(6) to intervene in a civil action brought under section 2000e-5 of this title [section 706] by an aggrieved party against a respondent other than a government, governmental agency or political subdivision.

(h) Cooperation with other departments and agencies in performance of educational or promotional activities; outreach activities

(1) The Commission shall, in any of its educational or promotional activities, cooperate with other departments and agencies in the performance of such educational and promotional activities.

(2) In exercising its powers under this subchapter, the Commission shall carry out educational and outreach activities (including dissemination of information in languages other than English) targeted to-

(A) individuals who historically have been victims of employment discrimination and have not been equitably served by the Commission; and

(B) individuals on whose behalf the Commission has authority to enforce any other law prohibiting employment discrimination, concerning rights and obligations under this subchapter or such law, as the case may be.

(i) Personnel subject to political activity restrictions

All officers, agents, attorneys, and employees of the Commission shall be subject to the provisions of section 7324 of Title 5 [originally, section 9 of the Act of August 2, 1939, as amended (the Hatch Act)], notwithstanding any exemption contained in such section.

(j) Technical Assistance Training Institute

(1) The Commission shall establish a Technical Assistance Training Institute, through which the Commission shall provide technical assistance and training regarding the laws and regulations enforced by the Commission.

(2) An employer or other entity covered under this subchapter shall not be excused from compliance with the requirements of this subchapter because of any failure to receive technical assistance under this subsection.

(3) There are authorized to be appropriated to carry out this subsection such sums as may be necessary for fiscal year 1992.

(k) EEOC Education, Technical Assistance, and Training Revolving Fund

(1) There is hereby established in the Treasury of the United States a revolving fund to be known as the "EEOC Education, Technical Assistance, and Training Revolving Fund" (hereinafter in this subsection referred to as the "Fund") and to

pay the cost (including administrative and personnel expenses) of providing education, technical assistance, and training relating to laws administered by the Commission. Monies in the Fund shall be available without fiscal year limitation to the Commission for such purposes.

(2)(A) The Commission shall charge fees in accordance with the provisions of this paragraph to offset the costs of education, technical assistance, and training provided with monies in the Fund. Such fees for any education, technical assistance, or training--

(i) shall be imposed on a uniform basis on persons and entities receiving such education, assistance, or training,

(ii) shall not exceed the cost of providing such education, assistance, and training, and

(iii) with respect to each person or entity receiving such education, assistance, or training, shall bear a reasonable relationship to the cost of providing such education, assistance, or training to such person or entity.

(B) Fees received under subparagraph (A) shall be deposited in the Fund by the Commission.

(C) The Commission shall include in each report made under subsection (e) of this section information with respect to the operation of the Fund, including information, presented in the aggregate, relating to--

(i) the number of persons and entities to which the Commission provided education, technical assistance, or training with monies in the Fund, in the fiscal year for which such report is prepared,

(ii) the cost to the Commission to provide such education, technical assistance, or training to such persons and entities, and

(iii) the amount of any fees received by the Commission from such persons and entities for such education, technical assistance, or training.

(3) The Secretary of the Treasury shall invest the portion of the Fund not required to satisfy current expenditures from the Fund, as determined by the Commission,

in obligations of the United States or obligations guaranteed as to principal by the United States. Investment proceeds shall be deposited in the Fund.

(4) There is hereby transferred to the Fund $1,000,000 from the Salaries and Expenses appropriation of the Commission.

ENFORCEMENT PROVISIONS
SEC. 2000e-5. [Section 706]

(a) Power of Commission to prevent unlawful employment practices

The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of this title [section 703 or 704].

(b) Charges by persons aggrieved or member of Commission of unlawful employment practices by employers, etc.; filing; allegations; notice to respondent; contents of notice; investigation by Commission; contents of charges; prohibition on disclosure of charges; determination of reasonable cause; conference, conciliation, and persuasion for elimination of unlawful practices; prohibition on disclosure of informal endeavors to end unlawful practices; use of evidence in subsequent proceedings; penalties for disclosure of information; time for determination of reasonable cause

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local

authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d) of this section. If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both. The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d) of this section, from the date upon which the Commission is authorized to take action with respect to the charge.

(c) State or local enforcement proceedings; notification of State or local authority; time for filing charges with Commission; commencement of proceedings

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty- day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

(d) State or local enforcement proceedings; notification of State or local authority; time for action on charges by Commission

In the case of any charge filed by a member of the Commission alleging an unlawful employment practice occurring in a State or political subdivision of a

State which has a State or local law prohibiting the practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, the Commission shall, before taking any action with respect to such charge, notify the appropriate State or local officials and, upon request, afford them a reasonable time, but not less than sixty days (provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective day of such State or local law), unless a shorter period is requested, to act under such State or local law to remedy the practice alleged.

(e) Time for filing charges; time for service of notice of charge on respondent; filing of charge by Commission with State or local agency; seniority system

(1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

(2) For purposes of this section, an unlawful employment practice occurs, with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this subchapter (whether or not that discriminatory purpose is apparent on the face of the seniority provision), when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system.

(3)(A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory

compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

(B) In addition to any relief authorized by section 1977A of the Revised Statutes (42 U.S.C. 1981a), liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

(f) Civil action by Commission, Attorney General, or person aggrieved; preconditions; procedure; appointment of attorney; payment of fees, costs, or security; intervention; stay of Federal proceedings; action for appropriate temporary or preliminary relief pending final disposition of charge; jurisdiction and venue of United States courts; designation of judge to hear and determine case; assignment of case for hearing; expedition of case; appointment of master

(1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the

Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.

(2) Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with rule 65 of the Federal Rules of Civil Procedure. It shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited.

(3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28 [United States

Code], the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

(4) It shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then designate a district or circuit judge of the circuit to hear and determine the case.

(5) It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.

(g) Injunctions; appropriate affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders

(1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

(2) (A) No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e-3(a) of this Title [section 704(a)].

(B) On a claim in which an individual proves a violation under section 2000e-2(m) of this title [section 703(m)] and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court-

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title [section 703(m)]; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

(h) Provisions of chapter 6 of Title 29 not applicable to civil actions for prevention of unlawful practices

The provisions of chapter 6 of title 29 [the Act entitled"An Act to amend the Judicial Code and to define and limit the jurisdiction of courts sitting in equity, and for other purposes," approved March 23, 1932 (29 U.S.C. 105-115)] shall not apply with respect to civil actions brought under this section.

(i) Proceedings by Commission to compel compliance with judicial orders In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under this section, the Commission may commence proceedings to compel compliance with such order.

(j) Appeals

Any civil action brought under this section and any proceedings brought under subsection (i) of this section shall be subject to appeal as provided in sections 1291 and 1292, Title 28 [United States Code].

(k) Attorney's fee; liability of Commission and United States for costs

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

CIVIL ACTIONS BY THE ATTORNEY GENERAL
SEC. 2000e-6. [Section 707]

(a) Complaint

Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described.

(b) Jurisdiction; three-judge district court for cases of general public importance: hearing, determination, expedition of action, review by Supreme Court; single judge district court: hearing, determination, expedition of action

The district courts of the United States shall have and shall exercise jurisdiction of proceedings instituted pursuant to this section, and in any such proceeding the Attorney General may file with the clerk of such court a request that a court of three judges be convened to hear and determine the case. Such request by the Attorney General shall be accompanied by a certificate that, in his opinion, the case is of general public importance. A copy of the certificate and request for a three-judge court shall be immediately furnished by such clerk to the chief judge of the circuit (or in his absence, the presiding circuit judge of the circuit) in which the case is pending. Upon receipt of such request it shall be the duty of the chief judge of the circuit or the presiding circuit judge, as the case may be, to designate immediately three judges in such circuit, of whom at least one shall be a circuit judge and another of whom shall be a district judge of the court in which the proceeding was instituted, to hear and determine such case, and it shall be the duty of the judges so designated to assign the case for hearing at the earliest practicable date, to participate in the hearing and determination thereof, and to cause the case to be in every way expedited. An appeal from the final judgment of such court will lie to the Supreme Court.

In the event the Attorney General fails to file such a request in any such proceeding, it shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then designate a district or circuit judge of the circuit to hear and determine the case.

It shall be the duty of the judge designated pursuant to this section to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited.

(c) Transfer offunctions, etc., to Commission; effective date; prerequisite to transfer; execution of functions by Commission

Effective two years after March 24, 1972 [the date of enactment of the Equal Employment Opportunity Act of 1972], the functions of the Attorney General under this section shall be transferred to the Commission, together with such personnel, property, records, and unexpended balances of appropriations, allocations, and other funds employed, used, held, available, or to be made available in connection with such functions unless the President submits, and neither House of Congress vetoes, a reorganization plan pursuant to chapter 9 of Title 5 [United States Code], inconsistent with the provisions of this subsection. The Commission shall carry out such functions in accordance with subsections (d) and (e) of this section.

(d) Transfer of functions, etc., not to affect suits commenced pursuant to this section prior to date of transfer

Upon the transfer of functions provided for in subsection (c) of this section, in all suits commenced pursuant to this section prior to the date of such transfer, proceedings shall continue without abatement, all court orders and decrees shall remain in effect, and the Commission shall be substituted as a party for the United States of America, the Attorney General, or the Acting Attorney General, as appropriate.

(e) Investigation and action by Commission pursuant to filing of charge of discrimination; procedure

Subsequent to March 24, 1972 [the date of enactment of the Equal Employment Opportunity Act of 1972], the Commission shall have authority to investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission. All such actions shall be conducted in accordance with the procedures set forth in section 2000e-5of this title [section 706].

EFFECT ON STATE LAWS
SEC. 2000e-7. [Section 708]

Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

INVESTIGATIONS
SEC. 2000e-8. [Section 709]

(a) Examination and copying of evidence related to unlawful employment practices

In connection with any investigation of a charge filed under section 2000e-5 of this title [section 706], the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation.

(b) Cooperation with State and local agencies administering State fair employment practices laws; participation in and contribution to research and other projects; utilization of services; payment in advance or reimbursement; agreements and rescission of agreements

The Commission may cooperate with State and local agencies charged with the administration of State fair employment practices laws and, with the consent of such agencies, may, for the purpose of carrying out its functions and duties under this subchapter and within the limitation of funds appropriated specifically for such purpose, engage in and contribute to the cost of research and other projects of mutual interest undertaken by such agencies, and utilize the services of such agencies and their employees, and, notwithstanding any other provision of law, pay

by advance or reimbursement such agencies and their employees for services rendered to assist the Commission in carrying out this subchapter. In furtherance of such cooperative efforts, the Commission may enter into written agreements with such State or local agencies and such agreements may include provisions under which the Commission shall refrain from processing a charge in any cases or class of cases specified in such agreements or under which the Commission shall relieve any person or class of persons in such State or locality from requirements imposed under this section. The Commission shall rescind any such agreement whenever it determines that the agreement no longer serves the interest of effective enforcement of this subchapter.

(c) Execution, retention, and preservation of records; reports to Commission; training program records; appropriate relief from regulation or order for undue hardship; procedure for exemption; judicial action to compel compliance

Every employer, employment agency, and labor organization subject to this subchapter shall (1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods, and (3) make such reports therefrom as the Commission shall prescribe by regulation or order, after public hearing, as reasonable, necessary, or appropriate for the enforcement of this subchapter or the regulations or orders thereunder. The Commission shall, by regulation, require each employer, labor organization, and joint labor-management committee subject to this subchapter which controls an apprenticeship or other training program to maintain such records as are reasonably necessary to carry out the purposes of this subchapter, including, but not limited to, a list of applicants who wish to participate in such program, including the chronological order in which applications were received, and to furnish to the Commission upon request, a detailed description of the manner in which persons are selected to participate in the apprenticeship or other training program. Any employer, employment agency, labor organization, or joint labor-management committee which believes that the application to it of any regulation or order issued under this section would result in undue hardship may apply to the Commission for an exemption from the application of such regulation or order, and, if such application for an exemption is denied, bring a civil action in the United States district court for the district where such records are kept. If the Commission or the court, as the case may be, finds that the application of the regulation or order to the employer, employment agency, or labor organization in question would impose an undue hardship, the Commission or the court, as the case may be, may grant appropriate relief. If any person required to comply with the provisions of this subsection fails or refuses to

do so, the United States district court for the district in which such person is found, resides, or transacts business, shall, upon application of the Commission, or the Attorney General in a case involving a government, governmental agency or political subdivision, have jurisdiction to issue to such person an order requiring him to comply.

(d) Consultation and coordination between Commission and interested State and Federal agencies in prescribing recordkeeping and reporting requirements; availability of information furnished pursuant to recordkeeping and reporting requirements; conditions on availability

In prescribing requirements pursuant to subsection (c) of this section, the Commission shall consult with other interested State and Federal agencies and shall endeavor to coordinate its requirements with those adopted by such agencies. The Commission shall furnish upon request and without cost to any State or local agency charged with the administration of a fair employment practice law information obtained pursuant to subsection (c) of this section from any employer, employment agency, labor organization, or joint labor-management committee subject to the jurisdiction of such agency. Such information shall be furnished on condition that it not be made public by the recipient agency prior to the institution of a proceeding under State or local law involving such information. If this condition is violated by a recipient agency, the Commission may decline to honor subsequent requests pursuant to this subsection.

(e) Prohibited disclosures; penalties

It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year.

CONDUCT OF HEARINGS AND INVESTIGATIONS PURSUANT TO
SECTION 161 OF Title 29
SEC. 2000e-9. [Section 710]

For the purpose of all hearings and investigations conducted by the Commission or
its duly authorized agents or agencies, section 161 of Title 29 [section 11 of the
National Labor Relations Act] shall apply.

POSTING OF NOTICES; PENALTIES
SEC. 2000e-10. [Section 711]

(a) Every employer, employment agency, and labor organization, as the case may
be, shall post and keep posted in conspicuous places upon its premises where
notices to employees, applicants for employment, and members are customarily
posted a notice to be prepared or approved by the Commission setting forth
excerpts from or, summaries of, the pertinent provisions of this subchapter and
information pertinent to the filing of a complaint.

(b) A willful violation of this section shall be punishable by a fine of not more than
$100 for each separate offense.

VETERANS' SPECIAL RIGHTS OR PREFERENCE
SEC. 2000e-11. [Section 712]

Nothing contained in this subchapter shall be construed to repeal or modify any
Federal, State, territorial, or local law creating special rights or preference for
veterans.

REGULATIONS; CONFORMITY OF REGULATIONS WITH
ADMINISTRATIVE PROCEDURE PROVISIONS; RELIANCE ON
INTERPRETATIONS AND INSTRUCTIONS OF COMMISSION
SEC. 2000e-12. [Section 713]

(a) The Commission shall have authority from time to time to issue, amend, or
rescind suitable procedural regulations to carry out the provisions of this
subchapter. Regulations issued under this section shall be in conformity with the
standards and limitations of subchapter II of chapter 5 of Title 5 [originally, the
Administrative Procedure Act].

(b) In any action or proceeding based on any alleged unlawful employment practice, no person shall be subject to any liability or punishment for or on account of (1) the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission, or (2) the failure of such person to publish and file any information required by any provision of this subchapter if he pleads and proves that he failed to publish and file such information in good faith, in conformity with the instructions of the Commission issued under this subchapter regarding the filing of such information. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that (A) after such act or omission, such interpretation or opinion is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect, or (B) after publishing or filing the description and annual reports, such publication or filing is determined by judicial authority not to be in conformity with the requirements of this subchapter.

## APPLICATION TO PERSONNEL OF COMMISSION OF SECTIONS 111 AND 1114 OF TITLE 18; PUNISHMENT FOR VIOLATION OF SECTION 1114 OF TITLE 18
SEC. 2000e-13. [Section 714]

The provisions of sections 111 and 1114, Title 18 [United States Code], shall apply to officers, agents, and employees of the Commission in the performance of their official duties. Notwithstanding the provisions of sections 111 and 1114 of Title 18 [United States Code], whoever in violation of the provisions of section 1114 of such title kills a person while engaged in or on account of the performance of his official functions under this Act shall be punished by imprisonment for any term of years or for life.

## TRANSFER OF AUTHORITY
[Administration of the duties of the Equal Employment Opportunity Coordinating Council was transferred to the Equal Employment Opportunity Commission effective July 1, 1978, under the President's Reorganization Plan of 1978.]

## EQUAL EMPLOYMENT OPPORTUNITY COORDINATING COUNCIL; ESTABLISHMENT; COMPOSITION; DUTIES; REPORT TO PRESIDENT AND CONGRESS
SEC. 2000e-14. [Section 715]

[Original introductory text: There shall be established an Equal Employment Opportunity Coordinating Council (hereinafter referred to in this section as the Council) composed of the Secretary of Labor, the Chairman of the Equal Employment Opportunity Commission, the Attorney General, the Chairman of the United States Civil Service Commission, and the Chairman of the United States Civil Rights Commission, or their respective delegates.]

The Equal Employment Opportunity Commission [originally, Council] shall have the responsibility for developing and implementing agreements, policies and practices designed to maximize effort, promote efficiency, and eliminate conflict, competition, duplication and inconsistency among the operations, functions and jurisdictions of the various departments, agencies and branches of the Federal Government responsible for the implementation and enforcement of equal employment opportunity legislation, orders, and policies. On or before October 1 [originally, July 1] of each year, the Equal Employment Opportunity Commission [originally, Council] shall transmit to the President and to the Congress a report of its activities, together with such recommendations for legislative or administrative changes as it concludes are desirable to further promote the purposes of this section.

PRESIDENTIAL CONFERENCES; ACQUAINTANCE OF LEADERSHIP WITH PROVISIONS FOR EMPLOYMENT RIGHTS AND OBLIGATIONS; PLANS FOR FAIR ADMINISTRATION; MEMBERSHIP
SEC. 2000e-15. [Section 716]

[Original text: (a) This title shall become effective one year after the date of its enactment.

(b) Notwithstanding subsection (a), sections of this title other than sections 703, 704, 706, and 707 shall become effective immediately.

(c)] The President shall, as soon as feasible after July 2, 1964 [the date of enactment of this title], convene one or more conferences for the purpose of enabling the leaders of groups whose members will be affected by this subchapter to become familiar with the rights afforded and obligations imposed by its provisions, and for the purpose of making plans which will result in the fair and effective administration of this subchapter when all of its provisions become effective. The President shall invite the participation in such conference or conferences of (1) the members of the President's Committee on Equal Employment Opportunity, (2) the members of the Commission on Civil Rights, (3)

representatives of State and local agencies engaged in furthering equal employment opportunity, (4) representatives of private agencies engaged in furthering equal employment opportunity, and (5) representatives of employers, labor organizations, and employment agencies who will be subject to this subchapter.

TRANSFER OF AUTHORITY
[Enforcement of Section 717 was transferred to the Equal Employment Opportunity Commission from the Civil Service Commission (Office of Personnel Management) effective January 1, 1979 under the President's Reorganization Plan No. 1 of 1978.]

EMPLOYMENT BY FEDERAL GOVERNMENT
SEC. 2000e-16. [Section 717]

(a) Discriminatory practices prohibited; employees or applicants for employment subject to coverage

All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5 [United States Code], in executive agencies [originally, other than the General Accounting Office] as defined in section 105 of Title 5 [United States Code] (including employees and applicants for employment who are paid from non-appropriated funds), in the United States Postal Service and the Postal Regulatory Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the Government Accountability Office, and the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

(b) Equal Employment Opportunity Commission; enforcement powers; issuance of rules, regulations, etc.; annual review and approval of national and regional equal employment opportunity plans; review and evaluation of equal employment opportunity programs and publication of progress reports; consultations with interested parties; compliance with rules, regulations, etc.; contents of national and regional equal employment opportunity plans; authority of Librarian of Congress

Except as otherwise provided in this subsection, the Equal Employment Opportunity Commission [originally, Civil Service Commission] shall have authority to enforce the provisions of subsection (a) of this section through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section, and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section. The Equal Employment Opportunity Commission [originally, Civil Service Commission] shall-

(1) be responsible for the annual review and approval of a national and regional equal employment opportunity plan which each department and agency and each appropriate unit referred to in subsection (a) of this section shall submit in order to maintain an affirmative program of equal employment opportunity for all such employees and applicants for employment;

(2) be responsible for the review and evaluation of the operation of all agency equal employment opportunity programs, periodically obtaining and publishing (on at least a semiannual basis) progress reports from each such department, agency, or unit; and

(3) consult with and solicit the recommendations of interested individuals, groups, and organizations relating to equal employment opportunity.

The head of each such department, agency, or unit shall comply with such rules, regulations, orders, and instructions which shall include a provision that an employee or applicant for employment shall be notified of any final action taken on any complaint of discrimination filed by him thereunder. The plan submitted by each department, agency, and unit shall include, but not be limited to-

(1) provision for the establishment of training and education programs designed to provide a maximum opportunity for employees to advance so as to perform at their highest potential; and

(2) a description of the qualifications in terms of training and experience relating to equal employment opportunity for the principal and operating officials of each such department, agency, or unit responsible for carrying out the equal employment opportunity program and of the allocation of personnel and resources proposed by such department, agency, or unit to carry out its equal employment opportunity program.

With respect to employment in the Library of Congress, authorities granted in this subsection to the Equal Employment Opportunity Commission [originally, Civil Service Commission] shall be exercised by the Librarian of Congress.

(c) Civil action by employee or applicant for employment for redress of grievances; time for bringing of action; head of department, agency, or unit as defendant

Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission [originally, Civil Service Commission] upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission [originally, Civil Service Commission] on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title [section 706], in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

(d) Section 2000e-5(f) through (k) of this title applicable to civil actions

The provisions of section 2000e-5(f) through (k) of this title [section 706(f) through (k)], as applicable, shall govern civil actions brought hereunder, and the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties.

(e) Government agency or official not relieved of responsibility to assure nondiscrimination in employment or equal employment opportunity

Nothing contained in this Act shall relieve any Government agency or official of its or his primary responsibility to assure nondiscrimination in employment as required by the Constitution and statutes or of its or his responsibilities under Executive Order 11478 relating to equal employment opportunity in the Federal Government.

(f) Section 2000e-5(e)(3) [Section 706(e)(3)] shall apply to complaints of discrimination in compensation under this section.

PROCEDURE FOR DENIAL, WITHHOLDING, TERMINATION, OR SUSPENSION OF GOVERNMENT CONTRACT SUBSEQUENT TO ACCEPTANCE BY GOVERNMENT OF AFFIRMATIVE ACTION PLAN OF EMPLOYER; TIME OF ACCEPTANCE OF PLAN
SEC. 2000e-17. [Section 718]

No Government contract, or portion thereof, with any employer, shall be denied, withheld, terminated, or suspended, by any agency or officer of the United States under any equal employment opportunity law or order, where such employer has an affirmative action plan which has previously been accepted by the Government for the same facility within the past twelve months without first according such employer full hearing and adjudication under the provisions of section 554 of Title 5 [United States Code], and the following pertinent sections: Provided, That if such employer has deviated substantially from such previously agreed to affirmative action plan, this section shall not apply: Provided further, That for the purposes of this section an affirmative action plan shall be deemed to have been accepted by the Government at the time the appropriate compliance agency has accepted such plan unless within forty-five days thereafter the Office of Federal Contract Compliance has disapproved such plan.

**Rules**

Fed. R. Civ. P. 8

(a) Claim for Relief. A pleading that states a claim for relief must contain:
(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.
(b) Defenses; Admissions and Denials.
(1) *In General.* In responding to a pleading, a party must:
(A) state in short and plain terms its defenses to each claim asserted against it; and
(B) admit or deny the allegations asserted against it by an opposing party.

(2) *Denials—Responding to the Substance.* A denial must fairly respond to the substance of the allegation.

(3) *General and Specific Denials.* A party that intends in good faith to deny all the allegations of a pleading—including the jurisdictional grounds—may do so by a general denial. A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted.

(4) *Denying Part of an Allegation.* A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.

(5) *Lacking Knowledge or Information.* A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.

(6) *Effect of Failing to Deny.* An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.

(c) Affirmative Defenses.

(1) *In General.* In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:

• accord and satisfaction;
• arbitration and award;
• assumption of risk;
• contributory negligence;
• duress;
• estoppel;
• failure of consideration;
• fraud;
• illegality;
• injury by fellow servant;
• laches;
• license;
• payment;
• release;
• res judicata;
• statute of frauds;
• statute of limitations; and
• waiver.

(2) *Mistaken Designation.* If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice

requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.

(d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.

(1) *In General.* Each allegation must be simple, concise, and direct. No technical form is required.

(2) *Alternative Statements of a Claim or Defense.* A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

(3) *Inconsistent Claims or Defenses.* A party may state as many separate claims or defenses as it has, regardless of consistency.

(e) Construing Pleadings. Pleadings must be construed so as to do justice.

## Fed. R. Civ. P. 12

(a) Time to Serve a Responsive Pleading.

(1) *In General.* Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

(A) A defendant must serve an answer:

(i) within 21 days after being served with the summons and complaint; or

(ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

(B) A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

(C) A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

## Fed. R. Civ. P. 12(b)(6)

(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

(6) failure to state a claim upon which relief can be granted; and

(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) Time to File a Motion. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) Procedures.

(1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(c) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

(f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:

(1) grant summary judgment for a nonmovant;

(2) grant the motion on grounds not raised by a party; or

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) Failing to Grant All the Requested Relief. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.

(h) Affidavit or Declaration Submitted in Bad Faith. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

RCW 49.60.180 (Washington Law Against Discrimination)

It is an unfair practice for any employer:

(1) To refuse to hire any person because of age, sex, marital status, sexual orientation, race, creed, color, national origin, citizenship or immigration status, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability, unless based upon a bona fide occupational qualification: PROVIDED, That the prohibition against discrimination because of such disability shall not apply if the particular disability prevents the proper performance of the particular worker involved:

PROVIDED, That this section shall not be construed to require an employer to establish employment goals or quotas based on sexual orientation.

(2) To discharge or bar any person from employment because of age, sex, marital status, sexual orientation, race, creed, color, national origin, citizenship or immigration status, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability.

(3) To discriminate against any person in compensation or in other terms or conditions of employment because of age, sex, marital status, sexual orientation, race, creed, color, national origin, citizenship or immigration status, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability: PROVIDED, That it shall not be an unfair practice for an employer to segregate washrooms or locker facilities on the basis of sex, or to base other terms and conditions of employment on the sex of employees where the commission by regulation or ruling in a particular instance has found the employment practice to be appropriate for the practical realization of equality of opportunity between the sexes.

(4) To print, or circulate, or cause to be printed or circulated any statement, advertisement, or publication, or to use any form of application for employment, or to make any inquiry in connection with prospective employment, which expresses any limitation, specification, or discrimination as to age, sex, marital status, sexual orientation, race, creed, color, national origin, citizenship or immigration status, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability, or any intent to make any such limitation, specification, or discrimination, unless based upon a bona fide occupational qualification: PROVIDED, Nothing contained herein shall prohibit advertising in a foreign language.

Wash. Super Ct. Civ. R. 7

(a) *Pleadings.* There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross claim, if the answer contains a cross claim; a third party complaint, if a person who was not an original party is summoned under the provisions of rule 14; and a third party answer, if a third party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third party answer.

(b) *Motions and other papers.*

(1) *How made.* An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

(2) *Form.* The rules applicable to captions and other matters of form of pleadings apply to all motions and other papers provided for by these rules.

(3) *Signing.* All motions shall be signed in accordance with rule 11.

(4) *Identification of evidence.* When a motion is supported by affidavits or other papers, it shall specify the papers to be used by the moving party.

(5) *Telephonic argument.* Oral argument on civil motions, including family law motions, may be heard by conference telephone call in the discretion of the court. The expense of the call shall be shared equally by the parties unless the court directs otherwise in the ruling or decision on the motion.

Wash. Super Ct. Civ. R. 7(c)

(c) *Demurrers, pleas, etc., abolished.* Demurrers, pleas and exceptions for insufficiency of a pleading shall not be used.

Wash. Super Ct. Civ. R. 12

(a) *When presented.* A defendant shall serve an answer within the following periods:

(1) Within 20 days, exclusive of the day of service, after the service of the summons and complaint upon the defendant pursuant to rule 4;

(2) Within 60 days from the date of the first publication of the summons if the summons is served by publication in accordance with rule 4(d)(3);

(3) Within 60 days after the service of the summons upon the defendant if the summons is served upon the defendant personally out of the state in

accordance with RCW 4.28.180 and 4.28.185 or on the Secretary of State as provided by RCW 46.64.040;

(4) Within the period fixed by any other applicable statutes or rules. A party served with a pleading stating a cross claim against another party shall serve an answer thereto within 20 days after the service upon that other party. The plaintiff shall serve a reply to a counterclaim in the answer within 20 days after service of the answer or, if a reply is ordered by the court, within 20 days after service of the order, unless the order otherwise directs. The service of a motion permitted under this rule alters these periods of time as follows, unless a different time is fixed by order of the court.

(A) If the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action.

(B) If the court grants a motion for a more definite statement, the responsive pleading shall be served within 10 days after the service of the more definite statement.

(b) *How presented.* Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the pleader may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56.

(c) *Motion for judgment on the pleadings.* After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the

motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56.

(d) *Preliminary hearings.* The defenses specifically enumerated (1)-(7) in section (b) of this rule, whether made in a pleading or by motion, and the motion for judgment mentioned in section (c) of this rule shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial.

(e) *Motion for more definite statement.* If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, or if more particularity in that pleading will further the efficient economical disposition of the action, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after the notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

(f) *Motion to strike.* Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

(g) *Consolidation of defenses in motion.* A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subsection (h)(2) hereof on any of the grounds there stated.

(h) *Waiver or preservation of certain defenses.*

(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in section (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by rule 15(a) to be made as a matter of course.

(2) A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under rule 19, and an

objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.

(3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

(i) *Nonparty at fault.* Whenever a defendant or a third party defendant intends to claim for purposes of RCW 4.22.070(1) that a nonparty is at fault, such claim is an affirmative defense which shall be affirmatively pleaded by the party making the claim. The identity of any nonparty claimed to be at fault, if known to the party making the claim, shall also be affirmatively pleaded.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: September 6, 2023

/s/ Kirstin E. Largent