No. 23-35395

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

TIMOTHY P. BEUCA,

Plaintiff-Appellant,

v.

WASHINGTON STATE UNIVERSITY
and JOHN AND JANE DOES 1-10,

Defendants-Appellees.

On Appeal from the United States District Court
for the Eastern District of Washington
No. 2:23-cv-00069-TOR
Honorable Thomas O. Rice

**BRIEF OF DEFENDANT-APPELLEE
WASHINGTON STATE UNIVERSITY**

Zachary J. Pekelis, WSBA #44557
Special Assistant Attorney General
PACIFICA LAW GROUP LLP
1191 Second Avenue, Suite 2000
Seattle, WA 98101-3404
Telephone: (206) 245.1700
Facsimile: (206) 245.1750
Zach.Pekelis@pacificalawgroup.com

*Counsel for Defendant-Appellee
Washington State University*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... i

TABLE OF AUTHORITIES ....................................................................... ii

I.      INTRODUCTION ......................................................................... 1

II.     STATEMENT OF JURISDICTION ............................................. 4

III.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..... 5

IV.     STATEMENT OF THE CASE .................................................... 6

        A.    The COVID-19 Pandemic and Proclamation 21-14 ........... 6

        B.    Dr. Beuca's Request for an Exemption and Accommodation ........... 11

        C.    Procedural History............................................................. 12

        D.    The District Court's Order Dismissing the Complaint
              with Prejudice ................................................................. 13

V.      STANDARD OF REVIEW ....................................................... 16

VI.     SUMMARY OF THE ARGUMENT .......................................... 17

VII.    ARGUMENT............................................................................ 19

        A.    The District Court Properly Dismissed the Amended Complaint ...... 19

              1.    Dr. Beuca failed to plausibly allege the notice and
                    causation elements.................................................... 20

              2.    Dr. Beuca failed to allege any facts about his religious beliefs..... 25

        B.    The District Court Correctly Declined to Allow Leave to Amend..... 30

              1.    WSU's dispositive undue hardship defense makes
                    amendment futile ..................................................... 30

                    a. The District Court's decision is consistent with *Groff v. DeJoy* . 34

                    b. The District Court's decision follows this Court's precedents ... 37

                    c. The District Court aptly relied on out-of-Circuit cases............... 42

                    d. Dr. Beuca's arguments about Providence are irrelevant ............ 47

                    e. The District Court did not create a healthcare "exception" ........ 48

              2.    Denying leave to amend was not an not abuse of discretion ......... 51

        C.    The District Court Properly Dismissed the WLAD Claim ................ 54

VIII.   CONCLUSION.......................................................................... 55

CERTIFICATE OF RELATED CASES ..................................................... 56

# TABLE OF AUTHORITIES

**Federal Cases**

*Algarin v. NYC Health + Hosps. Corp.*,
  --- F. Supp. 3d ----, No. 1:22-CV-8340 (JLR),
  2023 WL 4157164 (S.D.N.Y. June 23, 2023)......................................................33

*Alvarez v. Hill*,
  518 F.3d 1152 (9th Cir. 2008) ...............................................................................25

*Amadio v. Ford Motor Co.*,
  238 F.3d 919 (7th Cir. 2001) ................................................................................31

*Anderson v. Gen. Dynamics Convair Aerospace Div.*,
  589 F.2d 397 (9th Cir. 1978) ................................................................................38

*ASARCO, LLC v. Union Pac. R. Co.*,
  765 F.3d 999 (9th Cir. 2014) ................................................................................39

*Ashcroft v. Iqbal*,
  556 U.S. 662 ................................................................... 16, 17, 21, 26

*Balint v. Carson City*,
  180 F.3d 1047 (9th Cir. 1999) (en banc)...................................................... passim

*Bartholomew v. Washington*,
  --- F. Supp. 3d ----, No. 3:23-CV-05209-DGE,
  2023 WL 6471627 (W.D. Wash. Sept. 21, 2023) .............................................29

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 ........................................................................... 16, 21, 26

*Bhatia v. Chevron U.S.A., Inc.*,
  734 F.2d 1382 (9th Cir. 1984) ...................................................... 44, 45

*Biden v. Missouri*,
  595 U.S. 87 (2022) (per curiam) ...................................................... 3, 10, 35, 42

*Bing v. Brivo Sys., LLC*,
  959 F.3d 605 (4th Cir. 2020) ................................................................................22

*Bolden-Hardge v. Office of Cal. State Controller*,
    63 F.4th 1215 (9th Cir. 2023) ........................................................ passim

*Borja-Valdes v. City & Cnty. of S.F.*,
    No. 3:14-CV-04168-CRB, 2015 WL 5522287 (N.D. Cal. Sept. 18, 2015).........23

*Brown v. Children's Hosp. of Phila.*,
    794 F. App'x 226 (3d Cir. 2020).........................................................28

*Buckley v. Am. Constitutional Law Found., Inc.*,
    525 U.S. 182 (1999) .......................................................................49

*Burns v. Southern Pacific Transportation Co.*,
    589 F.2d 403 (9th Cir. 1978) ...................................................... 38, 39

*Butner v. Neustadter*,
    324 F.2d 783 (9th Cir. 1963) ...........................................................52

*Callahan v. Woods*,
    658 F.2d 679 (9th Cir. 1981) ...........................................................28

*Chodos v. W. Publ'g Co.*,
    292 F.3d 992 (9th Cir. 2002) ...........................................................51

*Church v. Biden*,
    No. CV 21-2815 (CKK), 2022 WL 1491100 (D.D.C. May 11, 2022) .................7

*Conley v. Gibson*,
    355 U.S. 41 (1957) .......................................................................23

*D'Cunha v. Northwell Health Sys.*,
    No. 1:22-CV-0988 (MKV), 2023 WL 2266520 (S.D.N.Y. Feb. 28, 2023).........33

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ...........................................................41

*Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*,
    No. 22-CV-2929 (CS), 2023 WL 3467143 n.7 (S.D.N.Y. May 15, 2023).........33

*Doe ex rel. United States v. Vratsinas Constr. Co.*,
    853 F. App'x 133 (9th Cir. 2021).......................................................52

*Doe v. San Diego Unified Sch. Dist.*,
    19 F.4th 1173 (9th Cir. 2021) ........................................................ 32, 37

*Does 1-2 v. Hochul*,
    632 F. Supp. 3d 120 (E.D.N.Y. 2022) ........................................... passim

*Does 1-6 v. Mills*,
    16 F.4th 20 (1st Cir. 2021) ............................................................ 8

*Dunbar v. Wells Fargo Bank, N.A.*,
    709 F.3d 1254 (8th Cir. 2013) ....................................................... 55

*EEOC v. GEO Grp., Inc.*,
    616 F.3d 265 (3d Cir. 2010) .......................................................... 45

*EEOC v. Oak-Rite Mfg. Corp.*,
    No. IP 99-1962-C H/G, 2001 WL 1168156 (S.D. Ind. Aug. 27, 2001) ......... 45

*EEOC v. Townley Eng'g & Mfg. Co.*,
    859 F.2d 6105 (9th Cir. 1988) ....................................................... 37

*EEOC v. Union Independiente de la Autoridad de Acueductos y
    Alcantarillados de Puerto Rico*,
    279 F.3d 49 (1st Cir. 2002) .......................................................... 27

*Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*,
    877 F.3d 487 (3d Cir. 2017) .......................................................... 28

*Florida v. Dep't of Health & Hum. Servs.*,
    19 F.4th 1271 (11th Cir. 2021) ...................................................... 6

*Gage v. Mayo Clinic*,
    No. CV-22-02091-PHX-SMM, 2023 WL 3230986 (D. Ariz. May 3, 2023) ...... 30

*Gamon v. Shriners Hosps. for Children*,
    No. 3:23-CV-00216-IM, 2023 WL 7019980 (D. Or. Oct. 25, 2023) ............. 29

*Garrett v. Murphy*,
    17 F.4th 419 (3d Cir. 2021) .......................................................... 41

*Gilligan v. Jamco Development Corp.*,
    108 F.3d 246 (9th Cir. 1997) ................................................... 22, 23, 24

iv

*Groff v. DeJoy*,
600 U.S. 447 (2023) .......................................................... 2, 18, 34, 36

*In re Finjan Holdings, Inc.*,
58 F.4th 1048 (9th Cir. 2023) ...............................................16

*Jackson v. Bank of Haw.*,
902 F.2d 1385 (1990) ..................................................... 51, 52

*Jeffrey v. Foster Wheeler LLC*,
No. 14-CV-05585-WHO, 2015 WL 1004687 (N.D. Cal. Mar. 2, 2015) ............23

*Kather v. Asante Health Sys.*,
No. 1:22-cv-01842-MC, 2023 WL 4865533 (D. Or. July 28, 2023) ..................29

*Khalik v. United Air Lines*,
671 F.3d 1188 (10th Cir. 2012) ................................................22

*Kluge v. Brownsburg Cmty. Sch. Corp.*,
64 F.4th 861 (7th Cir. 2023) ..................................................31

*Lawson v. Washington*,
296 F.3d 799 (9th Cir. 2002) ..................................................25

*Leake v. Raytheon Techs. Corp.*,
No. CV-22-00436-TUC-RM, 2023 WL 2242857 (D. Ariz. Feb. 27, 2023)........30

*Lee v. City of L.A.*,
250 F.3d 668 (9th Cir. 2001) ..................................................50

*Lennon v. Metro. Life Ins. Co.*,
504 F.3d 617 (6th Cir. 2007) ..................................................41

*Lowe v. City of Monrovia*,
775 F.2d 998 (9th Cir. 1985) ..................................................24

*Lowe v. Mills*,
68 F.4th 706 (1st Cir. 2023) ..................................................44

*Lowe v. Mills*,
No. 21-CV-242, 2022 WL 3542187 (D. Me. Aug. 18, 2022)............................42

*MacDonald v. Oregon Health & Sci. Univ.*,
No. 3:22-CV-01942-IM, 2023 WL 5529959 (D. Or. Aug. 28, 2023) ................46

*Mass. Corr. Officers Federated Union v. Baker*,
567 F. Supp. 3d 315 (D. Mass. 2021)....................................................................8

*Michigan v. U.S. Army Corps of Engineers*,
758 F.3d 892 (7th Cir. 2014) ...............................................................................41

*Novak v. United States*,
795 F.3d 1012 (9th Cir. 2015) .............................................................................50

*Nunes v. Ashcroft*,
375 F.3d 805 (9th Cir. 2004) ...............................................................................17

*Opuku-Boateng v. California*,
95 F.3d 1461 (9th Cir. 1996) ................................................................ 37, 38, 40

*Panozzo v. Riverside Healthcare*,
No. 21-CV-2292, 2022 WL 18779991 (C.D. Ill. Jan. 2, 2022) ..........................33

*Passarella v. Aspirus, Inc.*,
No. 22-CV-287-JDP, 2023 WL 2455681 (W.D. Wis. Mar. 10, 2023) ...............28

*Payne v. ST Charles Med. Ctr.*,
No. 6:22-cv-01998-MK, 2023 WL 4711095 (D. Or. July 24, 2023)...................46

*Payne v. St. Charles Health System*,
No. 6:22-cv-01998-MK, 2023 WL 4711431 (D. Or. Jul. 6, 2023).............. 46, 50

*Payton v. Walsh*,
579 F. Supp. 3d 1057 (S.D. Ind. 2022) ...............................................................46

*Pedreira v. Ky. Baptist Homes for Child., Inc.*,
579 F.3d 722 (6th Cir. 2009) ...............................................................................27

*Peterson v. Hewlett Packard Co.*,
358 F.3d 599 (9th Cir. 2004) ...................................................................... passim

*Pettis v. Fitness Int'l, LLC*,
508 F. App'x 565 (7th Cir. 2013).........................................................................26

*Pilz v. Inslee*,
No. 3:21-CV-05735-BJR, 2022 WL 1719172 (W.D. Wash. May 27, 2022) ......47

*Pulsipher v. Clark Cnty.*,
No. 2:08-cv-01374-RCJ-LRL, 2009 WL 10693495 (D. Nev. Mar. 5, 2009)......26

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ..............................................................25

*Reed v. Great Lakes Cos., Inc.*,
330 F.3d 931 (7th Cir. 2003) ...............................................................27

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) .............................................................53

*Saloojas, Inc. v. Aetna Health of Cal., Inc.*,
80 F.4th 1011 (9th Cir. 2023)..............................................................16

*Samper v. Providence St. Vincent Medical Center*,
675 F. 3d 1233 (9th Cir. 2012) ...................................................... 47, 49

*Schnabel v. Lui*,
302 F.3d 1023 (9th Cir. 2002) .............................................................52

*Seshadri v. Kasraian*,
130 F.3d 798 (7th Cir. 1997) ...............................................................29

*Shahar v. Bowers*,
120 F.3d 211 (11th Cir. 1997) .............................................................41

*Shahin v. Del. Dep't of Transp.*,
405 F. App'x 587 (3d Cir. 2010) (per curiam)....................................26

*Shree Shiva, LLC v. City of Redding*,
No. 22-15395, 2023 WL 1775650 (9th Cir. Feb. 6, 2023)...................53

*Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*,
4 F.4th 747 (9th Cir. 2021) ..................................................................6

*Snapp v. United Transp. Union*,
889 F.3d 10885 (9th Cir. 2018)...........................................................37

*Sparks v. S. Kitsap Sch. Dist.*,
No. 3:13-CV-05682-RBL, 2014 WL 1047217 (W.D. Wash. Mar. 18, 2014) .....23

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ................................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...............................................................................39

*Thulin v. Shopko Stores Operating Co., LLC*,
771 F.3d 994 (7th Cir. 2014) ..................................................................40

*Tiano v. Dillard Dep't Stores, Inc.*,
139 F.3d 679 (9th Cir. 1998) ............................................................ 27, 28

*Together Employees v. Mass General Brigham Inc.*,
573 F. Supp. 3d 412 (D. Mass. 2021) ............................................ 33, 36, 43

*Together Emps. v. Mass Gen. Brigham Inc.*,
32 F.4th 82 (1st Cir. 2022) .....................................................................43

*Trans World Airlines, Inc. v. Hardison*,
432 U.S. 63 (1977) ........................................................................... 34, 43

*Turner v. Ass'n of Apt. Owners of Wailea Point Vill.*,
739 F. App'x 874 (9th Cir. 2018) ............................................................29

*United States v. Corinthian Coll.*,
655 F.3d 984 (9th Cir. 2011) ..................................................................51

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ................................................................17

*Vetter v. Farmland Indus., Inc.*,
120 F.3d 749 (8th Cir. 1997) ..................................................................28

*W. Shoshone Nat'l Council v. Molini*,
951 F.2d 200 (9th Cir. 1991) ..................................................................51

*Whitaker v. Panama Joes Invs. LLC*,
840 F. App'x 961 (9th Cir. 2021) ............................................................21

*Williams v. Costco Wholesale Corp.*,
  471 F.3d 975 (9th Cir. 2006) ................................................................54

*Williams v. Emp. Mut. Cas. Co.*,
  845 F.3d 891 (8th Cir. 2017) ...............................................................15

*Wilson v. New York Soc'y for Relief of Ruptured & Crippled,*
  *Maintaining Hosp. for Specia*l *Surgery*,
  No. 22-CV-9207 (AT)(JLC), 2023 WL 5766030 (S.D.N.Y. Sept. 7, 2023) .......31

*Wise v. Inslee*,
  No. 2:21-CV-0288-TOR, 2021 WL 4951571 (E.D. Wash. Oct. 25, 2021) ..........9

**State Cases**

*Colvin v. Inslee*,
  467 P.3d 953 (Wash. 2020) .....................................................................6

*Kumar v. Gate Gourmet Inc.*,
  325 P.3d 193 (Wash. 2014) ...................................................................19

**Federal Statutes**

28 U.S.C. § 1291 ........................................................................................4

28 U.S.C. § 1331 ........................................................................................4

28 U.S.C. § 1332(a) ....................................................................................4

28 U.S.C. § 1367(a) ....................................................................................4

42 U.S.C. § 2000e-2(a) ...............................................................................1

42 U.S.C. §§ 2000cc–2000cc-5 ................................................................25

42 U.S.C. § 3604 .................................................................................22, 23

42 U.S.C. § 12111(10)(A) .........................................................................36

**State Statutes**

Wash. Rev. Code § 43.06.010(12) ........................................................7

Wash. Rev. Code ch. 49.60 ..................................................................1

**Federal Rules**

Fed. R. Civ. P. 4(m) ...........................................................................53

Fed. R. Civ. P. 8 .......................................................................... passim

Fed. R. Civ. P. 12(b)(6) ........................................................ 5, 13, 16, 39

Fed. R. Civ. P. 15(a)(2) .......................................................................53

Fed. R. Evid. 201(b)(1) ......................................................................41

**State Rules**

Washington Civil Rule 12 ...................................................................54

**Other Authorities**

EEOC, *What You Should Know About COVID-19 and the ADA,*
*the Rehabilitation Act, and Other EEO Laws* (Oct. 25, 2021)............................32

Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff
Vaccination, 86 Fed. Reg. 61,555 (Nov. 5, 2021)................................................10

Proclamation 21-14 ............................................................................6, 9

# I.    INTRODUCTION

Faced with an unprecedented surge in COVID-19 cases, hospitalizations, and deaths in summer 2021, Washington's governor adopted an emergency proclamation requiring vaccination of all healthcare workers and state employees. Plaintiff-Appellant Dr. Timothy Beuca, then a resident internal medicine physician with Defendant-Appellee Washington State University (WSU), refused to be vaccinated, purportedly for religious reasons. Dr. Beuca requested a religious exemption and accommodation to remain unvaccinated while still acting as a primary care doctor in close contact with patients, fellow healthcare providers, and others. Because that would have endangered community health and safety by increasing the risk of spreading the virus—and therefore undermine physicians' core ethos to "first, do no harm"—WSU declined Dr. Beuca's request. Dr. Beuca then filed this lawsuit, which accuses WSU of discriminating against him on the basis of his religious beliefs under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2(a), and the Washington Law Against Discrimination (WLAD), Wash. Rev. Code ch. 49.60.

The District Court correctly granted WSU's motion to dismiss Dr. Beuca's Amended Complaint because it omitted basic facts necessary to state his failure-to-accommodate-religion claim. Under both Title VII and the WLAD, Dr. Beuca bears the burden to establish that (1) he has a bona fide religious belief that conflicts with the vaccination policy; (2) he informed WSU of the belief and the conflict; and (3)

he was discharged because of this inability to comply with the policy. ER-7–8. Despite these required elements, the Amended Complaint fails to allege: (1) what Dr. Beuca's religious beliefs are, let alone how they conflicted with the vaccination requirement; (2) when, how, and to whom at WSU he disclosed those beliefs; or (3) any facts linking those beliefs to his discharge. In light of those critical factual omissions, the District Court correctly dismissed the Amended Complaint.

Although Dr. Beuca did not request leave to amend, the District Court considered whether to let him file a second amended complaint, correctly deciding against amendment for multiple reasons. First, even if Dr. Beuca could amend his complaint to plausibly allege a prima facie case of religious discrimination, amendment would be futile because WSU demonstrated an unassailable defense of undue hardship. The undisputed facts alleged in the complaint or subject to judicial notice establish that allowing unvaccinated internal medicine physicians to continue treating patients would have increased the risk of exposing patients and other healthcare workers to COVID-19—particularly during the 2021 surge from the Delta variant. The District Court's determination of undue hardship here was consistent with the Supreme Court's recent decision in *Groff v. DeJoy*, 600 U.S. 447, 468 (2023), which clarified that the standard requires a "substantial" hardship. The health and safety dangers inherent in allowing unvaccinated primary care physicians to treat patients in hospitals during the Delta surge easily satisfy that standard. As the

Supreme Court explained in upholding the federal COVID-19 vaccination requirement for most healthcare facilities, "[i]t would be the very opposite of efficient and effective administration for a facility that is supposed to make people well to make them sick with COVID-19." *Biden v. Missouri*, 595 U.S. 87, 94 (2022) (per curiam) (cleaned up). The District Court's futility determination was correct.

The District Court also found that three other factors weighed against granting leave to amend: prior amendment, undue delay, and prejudice to WSU. Given those factors, even without a determination of futility, the District Court did not abuse its discretion in declining to permit Dr. Beuca to amend his complaint a second time.

Dr. Beuca's final argument—that the District Court should have remanded his WLAD claim to state court instead of dismissing it—makes little sense. The standards governing failure-to-accommodate claims under Title VII and the WLAD are the same, so the District Court's exercise of supplemental jurisdiction of the latter would have been justified even if the only basis for original jurisdiction were the presence of a federal question. And it was not: the District Court also had subject matter jurisdiction based on complete diversity of citizenship, so it did not even have the authority to remand the WLAD claim. Nor did Dr. Beuca ask the District Court to do so in the first place. Therefore, Dr. Beuca's remand argument—like many of the other arguments he raises for the first time on appeal—is forfeited. For those reasons, this Court should affirm the District Court's decision.

## II. STATEMENT OF JURISDICTION

WSU agrees with Dr. Beuca's characterization of the District Court's order and judgment as final and the basis for this Court's appellate jurisdiction under 28 U.S.C. § 1291. *See* Op. Br. at 1–2. However, Dr. Beuca's statement of federal subject matter jurisdiction is incomplete and inaccurate. The Amended Complaint, which was filed in state court, asserted two claims: a federal claim under Title VII and a state-law claim under the WLAD. ER-42–43. The Title VII claim vested the District Court with original, federal question jurisdiction pursuant to 28 U.S.C. § 1331, enabling the District Court to exercise supplemental jurisdiction over the WLAD claim pursuant to 28 U.S.C. § 1367(a).[1] The District Court also had diversity jurisdiction under 28 U.S.C. § 1332(a) as to *both* claims, because the amount in controversy exceeds $75,000.00, Dr. Beuca is a citizen of Florida, and WSU is a public university of the State of Washington. ER-15–16. WSU removed the case pursuant to both the District Court's federal question jurisdiction and its diversity jurisdiction. *Id.*

---

[1] Although Dr. Beuca contends that the District Court had supplemental jurisdiction over his "related state constitutional claims," Op. Br. at 1, the Amended Complaint does not contain any claims under the Washington constitution. *See* ER-42–43.

### III. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. The Amended Complaint fails to allege any facts about (1) what Dr. Beuca's religious beliefs are or how they conflict with COVID-19 vaccination; (2) how he notified WSU of his beliefs and the conflict; or (3) how his discharge was due to those beliefs. Did the District Court correctly hold that Dr. Beuca's conclusory allegations failed to state claims under Rules 8 and 12(b)(6)?

2. Because the facts either pleaded by Dr. Beuca or subject to judicial notice showed that allowing "unvaccinated internal medicine physicians" to continue working in hospitals at the height of the Delta surge "would have increased the risk of exposure to COVID-19 to patients and other healthcare workers," the District Court concluded that accommodating Dr. Beuca "would have imposed an undue hardship" on WSU, so granting him leave to amend would be futile. ER-10. The District Court also found that allowing amendment "would create undue delay and prejudice" WSU. ER-11–12. Where Dr. Beuca did not request leave to amend and had previously amended his complaint, did the District Court properly exercise its discretion in dismissing the Amended Complaint without leave to amend it again?

3. The District Court had original jurisdiction based in part on complete diversity of citizenship. Did the District Court correctly dismiss Dr. Beuca's WLAD claim rather than remanding it?

## IV. STATEMENT OF THE CASE

This Statement of the Case is based on the limited allegations in the Amended Complaint as well as judicially noticeable facts contained in reports of governmental public health authorities, including from the U.S. Food and Drug Administration (FDA), the U.S. Centers for Disease Control and Prevention (CDC), and the Washington State Department of Health (DOH). WSU respectfully requests that this Court take judicial notice of these materials, as it asked the District Court. SER-31.

### A. The COVID-19 Pandemic and Proclamation 21-14

The COVID-19 pandemic was the "deadliest" in "American history." *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1275 (11th Cir. 2021). In just two and a half years, the highly contagious respiratory virus caused over six million hospitalizations and 1.1 million deaths in the United States.[2] In response to the public health emergency, "[g]overnments at all levels instituted restrictions to curb the transmission of the virus." *Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*, 4 F.4th 747, 752 (9th Cir. 2021). In Washington State, Governor Jay Inslee proclaimed a state of emergency on February 29, 2020. *Id.* at 753. The Governor's "emergency proclamation unlock[ed]" his "broad" emergency powers in "response to a disaster that threatens 'life, health, property, or the public peace.'" *Colvin v.*

---

[2] CDC, *COVID Data Tracker*, Trends in United States COVID-19 Hospitalizations, Deaths, Emergency Department (ED) Visits, and Test Positivity by Geographic Area, https://bit.ly/460tjY7 (last visited Nov. 3, 2023).

*Inslee*, 467 P.3d 953, 962–63 (Wash. 2020) (quoting Wash. Rev. Code § 43.06.010(12)).

One of the primary tools Washington State used to stem the spread of COVID-19 was vaccination. Between December 2020 and February 2021, the FDA issued Emergency Use Authorizations (EUAs) for three COVID-19 vaccines developed by Pfizer, Moderna, and Johnson & Johnson.[3] FDA gave full approval to Pfizer's vaccine for people 16 and older on August 23, 2021, and to Moderna's for people 18 and older on January 31, 2022. *Church v. Biden*, No. CV 21-2815 (CKK), 2022 WL 1491100, at *2 (D.D.C. May 11, 2022). The CDC considers the vaccines to be safe and effective in reducing the risk of severe illness or death due to COVID-19.[4] And, in a March 2021 report, the CDC found that the "mRNA COVID-19 vaccines" (i.e., the Pfizer and Moderna vaccines) "are highly effective in preventing [COVID-19] infections in real-world conditions among health care personnel, first responders,

_____

[3] FDA, *FDA Authorizes Pfizer-BioNTech COVID-19 Vaccine for Emergency Use in Children 5 through 11 Years of Age* (Oct. 29, 2021), http://bit.ly/3ZSWgmb; FDA, *Janssen COVID-19 Vaccine* (May 11, 2022), http://bit.ly/3l3SnvW; FDA, *FDA Authorizes Booster Dose of Pfizer-BioNTech COVID-19 Vaccine for Certain Populations* (Sept. 22, 2021), http://bit.ly/3l2nEiY. In July 2022, the FDA issued an EUA for the Novavax COVID-19 Vaccine. *See* FDA, *Coronavirus (COVID-19) Update: FDA Authorizes Emergency Use of Novavax COVID-19 Vaccine, Adjuvanted* (July 13, 2022), https://bit.ly/3skp4ce.
[4] CDC, *Overview of COVID-19 Vaccines* (Nov. 1, 2022), http://bit.ly/3FdTjVv.

and other essential workers," who "are more likely than the general population to be exposed to the virus because of their occupations."[5]

In summer 2021, the "Delta variant" emerged—a new, highly infectious COVID-19 strain. *See Does 1-6 v. Mills*, 16 F.4th 20, 26–27 (1st Cir. 2021). Twice as infectious as earlier variants, *id.*, Delta spread like wildfire, causing Washington's weekly COVID-19 hospitalizations to more than quadruple from July 3 to September 4, 2021.[6] While "no vaccine is 100% effective," *Mass. Corr. Officers Federated Union v. Baker*, 567 F. Supp. 3d 315, 319–20 (D. Mass. 2021), the COVID-19 vaccines continued to prove highly effective against the Delta variant: According to a September 2021 CDC report (when Delta was dominant), unvaccinated people were five times more likely to contract, ten times more likely to be hospitalized with, and 11 times more likely to die from COVID-19 than those who were fully vaccinated.[7] And as the CDC explained in August 2021, "[t]he Delta variant causes more infections and spreads faster than earlier forms of the virus that causes COVID-19," but "[v]accines continue to reduce a person's risk of contracting

---

[5] CDC, *CDC Real-World Study Confirms Protective Benefits of mRNA COVID-19 Vaccines*, Mar. 29, 2021, https://bit.ly/3FLUpYt (web archive from Oct. 18, 2021).

[6] CDC, *COVID Data Tracker*, https://bit.ly/462VPbR (last visited Oct. 15, 2023).

[7] CDC, *Monitoring Incidence of COVID-19 Cases, Hospitalizations, and Deaths, by Vaccination Status — 13 U.S. Jurisdictions*, April 4–July 17, 2021 (Sept. 17, 2021), http://bit.ly/3YQ9tMM.

the virus that cause COVID-19, including this variant."[8] Unfortunately, the Delta surge coincided with a steady decline in vaccination rates in Washington State,[9] despite the "consensus of reliable public health authorities that the COVID-19 vaccine prevents the spread of the virus." *Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 127 (E.D.N.Y. 2022), *appeal docketed*, No. 22-2858 (2d Cir.)).

On August 9, 2021, Governor Inslee issued Proclamation 21-14 (together with subsequent iterations, the Proclamation), prohibiting healthcare providers, most state employees, and (later) educators from working after October 18, 2021, without being vaccinated against COVID-19.[10] When it took effect, the Proclamation applied to at least 681,000 workers across those three covered sectors. *Wise v. Inslee*, No. 2:21-CV-0288-TOR, 2021 WL 4951571, at *1 (E.D. Wash. Oct. 25, 2021). The Proclamation required covered employers to evaluate requests for medical and religious exemptions and provide reasonable accommodations consistent with state and federal antidiscrimination statutes.[11] Covered employers were "prohibited from providing accommodations" if "based on false, misleading, or dishonest grounds or information" or "the personal preference of the individual," rather than "an inability

---

[8] CDC, *Benefits of Getting a COVID-19 Vaccine*, Aug. 16, 2021, https://bit.ly/3MuedDB (web archive from Oct. 18, 2021).

[9] DOH, *Respiratory Illness Data Dashboard*, COVID-19 Vaccinations in Washington State, https://bit.ly/3sm3xjq (last visited Nov. 3, 2023).

[10] Office of Wash. Governor Jay Inslee, Procl. 21-14.1 at 4–5 (Aug. 20, 2021), https://bit.ly/470euGn (Procl.).

[11] Procl. at 5–6.

to get vaccinated because of a disability or a conflict with a sincerely held religious belief, practice, or observance."[12]

Independent of the Proclamation, the federal government issued its own COVID-19 vaccination requirement for most U.S. healthcare workers. In November 2021, the U.S. Department of Health and Human Services (HHS) announced that, as a condition of federal Medicare and Medicaid funding, healthcare "facilities must ensure that their staff—unless exempt for medical or religious reasons—are vaccinated against COVID–19." *Biden v. Missouri*, 595 U.S. at 89 (citing Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61,555 (Nov. 5, 2021)). HHS found that "vaccination of healthcare workers against COVID–19 was 'necessary for the health and safety of individuals to whom care and services are furnished.'" *Id.* at 91 (quoting 86 Fed. Reg. at 61,561). This finding was based on "data showing that the COVID–19 virus can spread rapidly among healthcare workers and from them to patients, and that such spread is more likely when healthcare workers are unvaccinated." *Id.* HHS concluded that "unvaccinated [healthcare staff] . . . pose a serious threat to the health and safety of patients." *Id.* The Supreme Court held that the HHS Secretary did not exceed his authority in adopting the vaccination rule, that it was not arbitrary and capricious, and that various other challenges to it failed. *Id.* at 95–97.

---

[12] *Id.* at 6.

## B. Dr. Beuca's Request for an Exemption and Accommodation

At the time the Proclamation was issued, Dr. Beuca was a medical resident with WSU's Elson S. Floyd College of Medicine. *See* ER-38–39. As part of his internal medicine residency, Dr. Beuca was working at Providence Regional Medical Center (Providence) in Everett, Washington. *Id*. Dr. Beuca acknowledges in his Amended Complaint that the Proclamation applied to WSU as a state agency, such that its employees were required to be vaccinated against COVID-19 or receive a religious or medical exemption and accommodation. ER-40.

The Amended Complaint states that Dr. Beuca "holds sincere religious beliefs and convictions that prevent him from taking the CV- 19 vaccination." ER-41. But Dr. Beuca does not allege any facts identifying what his religious beliefs are or how they conflict with COVID-19 vaccination. In similarly conclusory fashion, the Amended Complaint states that, "[u]pon submission of his request for an exemption, [he] was granted an exemption from receiving the vaccination by Providence but not . . . [by] WSU." *Id.* Yet Dr. Beuca says nothing about what information his request contained or when, how, and to whom he submitted it.

The Amended Complaint alleges that WSU denied Dr. Beuca's request for an exemption and accommodation. ER-42. "As a result of the denial," Dr. Beuca states, he was "terminated from his employment" at WSU. *Id.*

## C. Procedural History

Dr. Beuca initially filed, but did not serve, his original complaint in state court on December 2, 2022. ER-27. On February 22, 2023, Dr. Beuca filed and served the Amended Complaint, which named WSU and ten "fictitious" defendants, "John and Jane 1-10," and alleged two causes of action: (1) religious discrimination under Title VII and (2) religious discrimination under the WLAD. ER-38, 42–43. WSU removed the action on the basis of both federal question jurisdiction and diversity jurisdiction. (Dr. Beuca lived in Florida.) ER-14–16. Dr. Beuca neither moved to remand nor otherwise disputed the case's removability or the jurisdictional bases invoked by WSU. Op. Br. at 4.

WSU moved to dismiss the Amended Complaint. SER-24. WSU's primary argument was that the Amended Complaint failed to state a plausible failure-to-accommodate-religion claim because "[a]t no point does Dr. Beuca allege *what* his beliefs are, *how* those beliefs are linked to his religion, or *why* those beliefs precluded him from being vaccinated." SER-39; *see also* SER-37. WSU also argued that the Amended Complaint was deficient because it did not "allege any facts related to how and when he made WSU aware of his religious beliefs." SER-41. Finally, WSU asked the District Court to dismiss the Amended Complaint with prejudice because WSU's undue hardship defense made amendment futile: "Allowing a primary care provider to remain unvaccinated would have increased the risk of exposing others

with whom he came into close contact—including patients and other healthcare workers—to the virus, 'which is obviously a significant hardship.'" SER-42 (quoting *Hochul*, 632 F. Supp. 3d at 145)).

Dr. Beuca failed to respond to the Motion to Dismiss by the deadline and moved for an extension of time to respond, which the District Court granted. SER-13; ER-52–53. In his response, Dr. Beuca argued that he "does not have to identify his religious beliefs to avoid dismissal under rule 12(b)(6)" and that "it is set forth three times in the Plaintiff's complaintif [sic] that the Plaintiff informed the Defendants of his sincerely held religious beliefs by submitting a request for a religious exemption." SER-21, 22. Although Dr. Beuca did not deny that the scientific facts WSU cited in its motion were properly subject to judicial notice, he argued that, "[b]y requesting the Court to take judicial notice of items outside the pleadings and by setting forth the defense of undue hardship, [WSU has] converted this motion to a motion for summary judgment." SER-19. Dr. Beuca did not request leave to file a second amended complaint.

### D. The District Court's Order Dismissing the Complaint with Prejudice

The District Court granted WSU's motion. The District Court first concluded that the Amended Complaint failed to meet the pleading requirements of Rule 8 and Rule 12(b)(6). Specifically, the District Court held that the Amended Complaint lacked facts relevant to the second and third elements of his failure-to-accommodate

claim, which require a plaintiff to plausibly allege that "he informed his employer of the belief and [its] conflict" with an employment duty and that "the employer discharged him because of his inability to fulfill the job requirement." ER-7–8 (citing *Peterson v. Hewlett Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004)). The District Court noted that the Amended Complaint does not allege that "Plaintiff submitted an exemption request to [WSU]," "does not elaborate as to how he informed [WSU]" of his beliefs, and contains only "conclusory allegations" to "connect[] his discharge to his religious beliefs." ER-9. The District Court declined to dismiss the Amended Complaint on the basis of WSU's primary argument—that Dr. Beuca had failed to allege any facts regarding his religious beliefs or their purported conflict with the vaccination requirement. ER-8.

Having concluded that the Amended Complaint failed to plead plausible failure-to-accommodate claims, the District Court then considered whether to allow Dr. Beuca leave to amend. The District Court noted that Dr. Beuca "does not seek leave to amend to clarify his factual assertions or causes of action." ER-9. Nevertheless, to "determine whether [Dr. Beuca] should be granted leave to amend," the District Court first considered WSU's "claim of undue hardship." ER-9. The District Court correctly recognized that "[w]hat constitutes an undue hardship must be determined within the particular factual context of each case," ER-9–10 (quoting *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) (en banc)), and that

"[d]ismissal premised on undue hardship is proper 'only if the defendant shows some obvious bar to securing relief on the face of the complaint or in any judicially noticeable materials,'" *id.* (quoting *Bolden-Hardge v. Office of Cal. State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023)).

Such an "obvious bar" was present here because "having unvaccinated internal medicine physicians would have imposed an undue hardship because it would have increased the risk of exposure to COVID-19 to patients and other healthcare workers." ER-10. That was "particularly" true, the District Court concluded, "given the increased risk of COVID-19 infection during the time of Plaintiff's termination" (that is, at the height of the Delta surge). ER-11.[13] In light of the undue hardship to WSU, the District Court determined that "amendment would be futile." ER-11.

The District Court also found that, with the exception of bad faith, each of the other relevant factors weighed against sua sponte allowing Dr. Beuca to amend. He

---

[13] Although the District Court did not expressly say that it took judicial notice of government data cited by WSU establishing the efficacy of COVID-19 vaccination, its decision leaves little doubt that it did so. In finding undue hardship, the District Court cited the portion of WSU's motion to dismiss making that very argument (which in turn referenced the motion's fact section requesting judicial notice). *See* ER-10 (citing SER-42); *see, e.g.*, *Williams v. Emp. Mut. Cas. Co.*, 845 F.3d 891, 904 (8th Cir. 2017) (noting that, "[a]lthough the court did not use the specific phrase 'judicial notice,'" it "is clear that the district court took judicial notice of the fact that Radium is a solid that emits alpha particles" and holding that it "did not abuse its discretion" in doing so because "there can be no reasonable dispute on those points, upon which numerous widely available sources demonstrate broad consensus").

had amended his complaint once before and, in the nearly six months since he had

filed suit, had "ample opportunity to identify any facts and causes of action that he

could plausibly allege in this matter." ER-11. Thus, the District Court found that

allowing "additional time to amend for a second time would create undue delay and

prejudice to Defendant" WSU. ER-11–12. For those reasons, the District Court

exercised its discretion to disallow further amendment and dismissed the Amended

Complaint with prejudice. ER-12, 13.[14]

## V. STANDARD OF REVIEW

This Court reviews de novo the grant of a motion to dismiss and "may affirm

on any ground supported by the record." *Saloojas, Inc. v. Aetna Health of Cal., Inc.*,

80 F.4th 1011, 1014 (9th Cir. 2023). A "motion to dismiss under Rule 12(b)(6) of

the Federal Rules of Civil Procedure is analyzed using the plausibility pleading

standards of Rule 8(a), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 [] (2007), and

*Ashcroft v. Iqbal*, 556 U.S. 662 [] (2009)." *In re Finjan Holdings, Inc.*, 58 F.4th

1048, 1056–57 (9th Cir. 2023). Under *Twombly* and *Iqbal*, "[t]o survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads

---

[14] The District Court also dismissed claims against the unnamed "John or Jane
Doe" defendants. ER-12. Dr. Beuca does not seek review of that aspect of the
District Court's order. *See* Op. Br. at 2–3.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In general, denial of leave to amend is reviewed for abuse of discretion. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 (9th Cir. 2016). In assessing whether to grant leave, courts consider "five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). Only the "question of futility of amendment" is reviewed de novo, *United Healthcare*, 848 F.3d at 1172, and "[f]utility alone can justify the denial of a motion for leave to amend," *Nunes*, 375 F.3d at 808.

## VI.    SUMMARY OF THE ARGUMENT

This Court should affirm. The District Court correctly dismissed the Amended Complaint because it lacks basic factual information necessary to plausibly allege failure-to-accommodate-religion claims under Title VII and the WLAD. First, as the District Court held, Dr. Beuca failed to allege any facts indicating when, how, or to whom at WSU he communicated his religious beliefs and their conflict with the COVID-19 vaccination requirement, or any facts connecting his discharge to his religious beliefs. The Court of Appeals should also affirm on the additional, alternative ground that the Amended Complaint includes no allegations about what Dr. Beuca's religious beliefs are or how they conflict with COVID-19 vaccination.

Additionally, the District Court acted within its discretion in not offering Dr. Beuca an opportunity to amend his complaint a second time. First, the District Court correctly concluded that amendment would be futile where accommodating Dr. Beuca would cause WSU undue hardship. The District Court properly considered the specific context of Dr. Beuca's employment as an internal medicine physician in concluding that allowing him to continue practicing medicine unvaccinated at the height of the Delta surge would have imposed an undue hardship by increasing the danger he would infect patients and other caregivers with COVID-19. Although decided before *Groff*, 600 U.S. 447, the District Court's analysis comports with the undue hardship standard *Groff* clarified. Second, the District Court did not abuse its discretion in dismissing the action without leave to amend because Dr. Beuca had already amended his complaint once, did not request leave to amend nor make any attempt to show that he would be able to state a claim, and because amendment would cause undue delay and prejudice to WSU.

Finally, the District Court properly addressed and dismissed Dr. Beuca's WLAD claim on the same basis as his Title VII claim. As Dr. Beuca recognizes, the same standards govern failure-to-accommodate-religion claims under Title VII and the WLAD. And where subject matter jurisdiction exists based in part on diversity of citizenship, the District Court had no authority to remand Dr. Beuca's WLAD claim to state court.

# VII. ARGUMENT

## A. The District Court Properly Dismissed the Amended Complaint

Dismissal was warranted because the Amended Complaint's bare, conclusory allegations neither satisfy the minimum pleading standards of Rule 8 nor plausibly state a failure-to-accommodate claim under Title VII or the WLAD. *See* ER-9. To state a failure-to-accommodate-religion claim under either statute, a plaintiff "must first set forth a prima facie case that (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer . . . subjected him to an adverse employment action because of his inability to fulfill the job requirement." *Peterson*, 358 F.3d at 606; *see also Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 203 (Wash. 2014) (adopting same standard under WLAD).

The Amended Complaint is replete with vague and conclusory assertions, lacking basic factual information to support any of the elements of Dr. Beuca's prima facie case. Even after filing an Amended Complaint, Dr. Beuca failed to allege any facts as to what his religious beliefs are, how they conflict with the COVID-19 vaccination requirement, when, how, or whom at WSU he gave notice of his beliefs and the conflict, or any facts linking his termination to his beliefs. Throughout his Opening Brief, Dr. Beuca alludes to other facts he says would support his claims, but at no time has he indicated what those facts may be. *See, e.g.*, Op. Br. at 28

(conceding that "Dr. Beuca's allegations certainly could be significantly expanded to provide much more detail" but making no mention of what such allegations would include). Because the Amended Complaint lacks sufficient facts to state a plausible claim, the District Court correctly dismissed it.

### 1. Dr. Beuca failed to plausibly allege the notice and causation elements

The District Court correctly determined that Dr. Beuca's Amended Complaint was insufficient to state failure-to-accommodate claims because Dr. Beuca did not include any allegations regarding how, when, or whom at WSU he gave notice of his religious beliefs and their conflict with the COVID-19 vaccination requirement (the second prima facie element); or how his religious beliefs were linked to his discharge (the third element). *See* ER-9; *Peterson*, 358 F.3d at 606. The Amended Complaint simply alleges that Dr. Beuca "applied for a religious exemption from the vaccine," ER-39, that he "submitted a request for a religious exemption that was initial [sic] granted by Providence but later withdrawn at the request of the Defendant," ER-40, that "upon submission of his request for an exemption, the plaintiff was granted an exemption . . . by Providence but not the Defendant, WSU," ER 41, and that "Plaintiff apprised the Defendants of his sincerely held religious belief," ER 42. These cryptic allegations do not directly state that Dr. Beuca even submitted a religious exemption request to WSU, much less when or how he did so. Such "naked assertions" that are "devoid of further factual enhancement" cannot

meet the pleading standards required to state a claim under Rule 8. *Iqbal*, 556 U.S. at 678. ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Likewise, with respect to the third element, Dr. Beuca alleges in boilerplate fashion that he "lost this job due to his sincerely held religious beliefs." ER-42. Beyond that, as the District Court noted, Dr. Beuca does "not provide any additional facts connecting his discharge to his religious beliefs." ER-9. As with the notice element, "[s]uch conclusory allegations are insufficient to meet the pleading requirements of Rule 8." ER-9 (citing *Twombly*, 550 U.S. at 555).

Although Dr. Beuca contends that the District Court's decision contravenes Rule 8's "short and plain statement" standard, the opposite is true. To find sufficient Dr. Beuca's bare, conclusory allegations would relieve plaintiffs of even the minimal obligation to assert any plausible facts at all, nullifying the *Iqbal/Twombly* standard altogether. It is axiomatic that a claim cannot survive a motion to dismiss where it fails to include "sufficient allegations of underlying facts" and does not "plausibly suggest an entitlement to relief." *Whitaker v. Panama Joes Invs. LLC*, 840 F. App'x 961, 964 (9th Cir. 2021) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). In the Title VII context, then, "the employee must plead a prima facie case of failure to accommodate religion." *Bolden-Hardge*, 63 F.4th at 1222;

*see, e.g.*, *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (dismissing a Title VII claim for failure to state a claim and noting that "a Title VII plaintiff is required to allege facts to satisfy the elements of a cause of action created by that statute") (cleaned up); *Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) (dismissing Title VII claim for failure to meet the pleading standards under *Twombly* and *Iqbal*; "there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement," such as "when she requested FMLA leave and for what purpose," "who she requested leave from and who denied her," and "generally when she complained about not receiving leave and when she was terminated"). Dr. Beuca's argument—that his "succinct" Amended Complaint is, in effect, good enough—defies these basic principles. Op. Br. at 21.

To the extent Dr. Beuca suggests that a relaxed pleading standard applies in Title VII cases, he is mistaken. Citing a pre-*Twombly* case, *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 250 (9th Cir. 1997), Dr. Beuca argues that the Amended Complaint's boilerplate allegations should be sufficient because his "claims need to be allowed development" through discovery. Op. Br. at 22. *Gilligan* held that plaintiffs claiming housing discrimination under the Fair Housing Act (FHA), 42 U.S.C. § 3604, need not specifically allege "financial qualification in their pleadings," which is a prima facie element of an FHA disparate treatment claim. 108 F.3d at 249. In reaching that conclusion, however, *Gilligan* relied on general

Rule 8 principles that were specifically abrogated by *Twombly* and *Iqbal*. *See, e.g.*, *Gilligan*, 108 F.3d at 248 ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957), *abrogated by Twombly*, 550 U.S. at 561). *Gilligan* also invoked "two practical considerations" for its decision: First, "without any responsive pleadings or record evidence, the Gilligans do not have the facts that they need to allege each of the elements of a prima facie case," including the "information the district court demanded about the rent" and whether they could have afforded it. *Id.* at 250. Second, the financial qualification element would "be irrelevant if the Gilligans are able to advance direct evidence of discrimination." *Id.*

*Gilligan* provides no help to Dr. Beuca. As numerous district courts in this circuit have recognized, "*Gilligan* was decided years before *Iqbal* and *Twombly* and does not control over the pleading standards articulated in those cases." *Jeffrey v. Foster Wheeler LLC*, No. 14-CV-05585-WHO, 2015 WL 1004687, at *1 n.2 (N.D. Cal. Mar. 2, 2015); *see also Borja-Valdes v. City & Cnty. of S.F.*, No. 3:14-CV-04168-CRB, 2015 WL 5522287, at *8 n.5 (N.D. Cal. Sept. 18, 2015) (treating *Gilligan* as "implicitly overruled") (collecting cases); *Sparks v. S. Kitsap Sch. Dist.*, No. 3:13-CV-05682-RBL, 2014 WL 1047217, at *3 (W.D. Wash. Mar. 18, 2014) (calling *Gilligan* "entirely inapplicable now" post-*Twombly*).

Even if *Gilligan* were still good law, its two "practical considerations" mentioned above distinguish it from this case. First, unlike in *Gilligan*, Dr. Beuca cannot claim he "do[es] not have the facts [he] need[s] to allege each of the elements of a prima facie case." 108 F.3d at 250. Dr. Beuca should certainly know what his religious beliefs are, how they conflict with COVID-19 vaccination, and how he informed WSU of the beliefs and conflict. As Dr. Beuca appears to recognize, he could have easily alleged all this information in his Amended Complaint. *See* Op. Br. at 22 (conceding that "Dr. Beuca's allegations certainly could be significantly expanded to provide much more detail"). And, under *Iqbal* and *Twombly*, such information *should* have been alleged. Because Dr. Beuca failed to plead these basic facts in his Amended Complaint (or his opposition to WSU's motion to dismiss), the District Court correctly dismissed it.

Second, unlike the "financially qualified" element of an FHA disparate treatment claim, the elements of Dr. Beuca's prima facie case here *are* "required elements" of his failure-to-accommodate claim. *Gilligan*, 108 F.3d at 249. *Compare Peterson*, 358 F.3d at 606 ("To establish religious discrimination on the basis of a failure-to-accommodate theory, [plaintiff] *must first set forth a prima facie case* . . . .") (emphasis added), *with Lowe v. City of Monrovia,* 775 F.2d 998, 1006 (9th Cir. 1985) ("[A] plaintiff can establish a prima facie case of disparate treatment without satisfying the *McDonnell Douglas* test."). That is, Dr. Beuca cannot prevail

on his failure-to-accommodate claim without establishing each factor in the prima facie case. *See, e.g.*, *Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002) (affirming grant of summary judgment to employer where plaintiff could not establish causation element without any evidence he was threatened with or subjected to discriminatory treatment because of inability to fulfill job requirement).

Dr. Beuca's reliance on *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008), is also misplaced. Op. Br. at 22. *Alvarez* held that a pro se plaintiff was not required to specifically cite the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc–2000cc-5, to survive a motion to dismiss, because pro se plaintiffs are held to a "less stringent standard" and he had "pled with commendable . . . particularity how prison officials were [violating his rights]." *Id.* Dr. Beuca has been represented by counsel throughout the litigation, yet has failed to allege the basic facts underlying his claims.

## 2. Dr. Beuca failed to allege any facts about his religious beliefs

Additionally, dismissal should be affirmed because Dr. Beuca alleged no facts supporting the first element of his prima facie case: he does not identify any "bona fide religious belief, the practice of which conflicts with [the] employment duty" to be vaccinated against COVID-19. *Peterson*, 358 F.3d at 606. Although the District Court declined to dismiss on this basis, this Court may affirm "on any ground raised below and fairly supported by the record." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076

(9th Cir. 2015). The District Court rightly expressed concern with evaluating the "reasonableness of an individual's asserted religious beliefs." ER-8. However, here the issue is not the reasonableness of Dr. Beuca's religious beliefs, but rather the absence of *any* allegations as to what those beliefs even are.

The only paragraph in the Amended Complaint related to Dr. Beuca's religious beliefs states: "Plaintiff holds sincere religious beliefs and convictions that prevent him from taking the CV-19 vaccination. His beliefs are sincere." ER-41. This conclusory assertion does no more than recite an element of his claims, providing no facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. This is insufficient to state a plausible claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). An employment discrimination plaintiff must, at minimum, "identify the protected class to which he belongs." *Pulsipher v. Clark Cnty.*, No. 2:08-cv-01374-RCJ-LRL, 2009 WL 10693495, at *3 (D. Nev. Mar. 5, 2009); *see, e.g.*, *Pettis v. Fitness Int'l, LLC*, 508 F. App'x 565, 566 (7th Cir. 2013) (affirming dismissal of Title VII claim where plaintiff failed to allege that he was a member of a protected class); *Shahin v. Del. Dep't of Transp.*, 405 F. App'x 587, 588–89 (3d Cir. 2010) (per curiam) (dismissing claims for "discrimination related to national origin and age" where plaintiff "[c]learly" did "not allege the necessary

elements for a discrimination claim" because she "did not identify her membership in a protected class").

The requirement that plaintiffs alleging religious discrimination provide *some* facts regarding their beliefs is not an empty formalism. While courts do not "second-guess[] the *reasonableness*" of a plaintiff's professed beliefs, they routinely question whether such beliefs are *religious* in nature. *Bolden-Hardge*, 63 F.4th at 1224 (emphasis added). This Court and others have warned against "tak[ing] plaintiffs' conclusory assertions of violations of their religious beliefs at face value." *Id.*; *see also Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681–82 (9th Cir. 1998) (noting that "Title VII does not protect secular preferences" and reversing district court's conclusion that plaintiff had established a "bona fide religious belief" that conflicted with job requirement); *Pedreira v. Ky. Baptist Homes for Child., Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (affirming dismissal where plaintiff had "not alleged any particulars about her religion that would even allow an inference that she was discriminated against on account of her religion"); *Reed v. Great Lakes Cos., Inc.*, 330 F.3d 931, 935 (7th Cir. 2003) ("[A]n employee is not permitted to redefine a purely personal preference or aversion as a religious belief."); *EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("In order to satisfy this element, the plaintiff must demonstrate both that the belief or practice is religious and that it is sincerely held.");

*Vetter v. Farmland Indus., Inc.*, 120 F.3d 749 (8th Cir. 1997) ("An employer need not accommodate a purely personal preference.") (cleaned up); *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981) (noting in free exercise context that "[t]he remaining question, then, is whether Callahan's objections are 'rooted in' a belief that is religious in nature") (cleaned up).

Accordingly, in the vaccination context, numerous courts have held that Title VII plaintiffs failed to plead plausible claims because their stated objections to employment practices, which were couched in religious terms, were in fact secular. *See, e.g.*, *Brown v. Children's Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) (per curiam) (affirming dismissal of Title VII failure-to-accommodate-religion claim where plaintiff's objection to vaccination was not religious); *Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017) (same); *Passarella v. Aspirus, Inc.*, No. 22-CV-287-JDP, 2023 WL 2455681, at *6 (W.D. Wis. Mar. 10, 2023) (same), *appeal docketed sub nom. Dottenwhy v. Aspirus, Inc.*, No. 23-1661 (7th Cir.).

Here, no such religiosity inquiry is necessary—or even possible—because the Amended Complaint says *nothing* about Dr. Beuca's beliefs. The omission of such central information is fatal to his claims because he cannot "satisfy one crucial element of [his] prima facie case: conflict between [his] religious belief and employment duties." *Tiano*, 139 F.3d at 683; *see also Turner v. Ass'n of Apt. Owners*

*of Wailea Point Vill.*, 739 F. App'x 874, 877 (9th Cir. 2018) (affirming summary judgment on Title VII claim because plaintiff could not establish actual conflict between religious belief and work requirement); *Seshadri v. Kasraian*, 130 F.3d 798, 800 (7th Cir. 1997) (same where plaintiff "refuse[d] . . . to identify [his] religion"; "a person who seeks to obtain a privileged legal status by virtue of his religion cannot preclude inquiry designed to determine whether he has in fact a religion").

Applying this common-sense principle to the COVID-19 context, numerous district courts in this circuit have held that Title VII plaintiffs' failure to describe their religious beliefs in conflict with vaccination warrants dismissal on the pleadings. *See, e.g.*, *Gamon v. Shriners Hosps. for Children*, No. 3:23-CV-00216-IM, 2023 WL 7019980, at *3 (D. Or. Oct. 25, 2023) ("Plaintiff's Complaint must do more than state that her religious beliefs conflict with Defendant's policy. Her Complaint must describe the conflict with factual specificity, which it failed to do."); *Bartholomew v. Washington*, --- F. Supp. 3d ----, No. 3:23-CV-05209-DGE, 2023 WL 6471627, at *3 (W.D. Wash. Sept. 21, 2023) (plaintiff "failed to meet this basic requirement" of the first prima facie element; "[n]owhere in Plaintiff's complaint does he specifically state what religious beliefs he holds or why his religious beliefs conflict with DSHS's vaccine requirement"); *Kather v. Asante Health Sys.*, No. 1:22-cv-01842-MC, 2023 WL 4865533, at *5 (D. Or. July 28, 2023) ("[V]ague expressions of sincerely held Christian beliefs alone cannot serve as a blanket excuse

for avoiding all unwanted employment obligations."); *Gage v. Mayo Clinic*, No. CV-22-02091-PHX-SMM, 2023 WL 3230986, at \*3 (D. Ariz. May 3, 2023) ("Plaintiff does not explain her religious beliefs. Nor does she explain how practicing them conflicted with her employment duties at the Mayo Clinic. A threadbare reference to her 'religious beliefs' cannot suffice to meet this element at the motion to dismiss stage.") (cleaned up); *Leake v. Raytheon Techs. Corp.*, No. CV-22-00436-TUC-RM, 2023 WL 2242857, at \*5 (D. Ariz. Feb. 27, 2023) (dismissing Title VII challenge to COVID-19 vaccination policy where "Plaintiffs never alleged they were members of any protected class, or what their religious beliefs were"). The Court should affirm the District Court's dismissal on this additional, alternative ground.

## B. The District Court Correctly Declined to Allow Leave to Amend

After rightly concluding that the Amended Complaint failed to state a plausible claim, the District Court considered whether to allow Dr. Beuca to amend his complaint a second time (though he had not asked to do so). The District Court correctly held that amendment would be futile and did not abuse its discretion in determining that amendment would cause undue delay and prejudice WSU.

### 1. WSU's dispositive undue hardship defense makes amendment futile

In determining that amendment would be futile, the District Court held that allowing unvaccinated resident physicians to continue treating patients during the Delta surge of the deadliest pandemic in U.S. history would have posed an undue

hardship to WSU by increasing the risk of transmitting COVID-19 to patients and other healthcare workers. This decision was correct in every particular.

First, the District Court focused on "the particular factual context of [Dr. Beuca's] case,"—namely, an "unvaccinated internal medicine physician[ ]" working in a hospital during the COVID-19 pandemic. ER-10 (quoting *Balint*, 180 F. 3d at 1054). The District Court properly focused on the specific "time [period] of [Dr. Beuca's] termination" (the Delta surge of 2021), when there was an "increased risk of COVID-19 infection." ER-11; *see, e.g.*, *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 888 (7th Cir. 2023), *vacated and remanded on other grounds in light of* Groff, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023) (undue hardship question must be determined from what "the employer knew at the time of the decision [on the] accommodation"; otherwise it would "hold[ ] employers to an impossible 'crystal ball' standard"); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 928 (7th Cir. 2001) (noting in ADA context that "[t]he facts relevant to a determination of whether a medical leave is a reasonable accommodation are the facts available to the decision-maker at the time of the employment decision"); *Wilson v. New York Soc'y for Relief of Ruptured & Crippled, Maintaining Hosp. for Special Surgery*, No. 22-CV-9207 (AT)(JLC), 2023 WL 5766030, at *5 (S.D.N.Y. Sept. 7, 2023) ("[T]he regulation was in effect at the time of [the] request for a religious exemption,

and it therefore would have been an undue hardship for Defendant to comply with his request.").

Second, the District Court correctly recognized that "[d]ismissal premised on undue hardship is proper 'only if the defendant shows some obvious bar to securing relief on the face of the complaint or in any judicially noticeable materials.'" ER-10 (quoting *Bolden-Hardge*, 63 F.4th at 1224). Here, the "obvious bar" was the undisputed fact that an unvaccinated internist "working in a hospital . . . would have increased the risk of exposure to COVID-19 to patients and other healthcare workers." ER-11. This is consistent with EEOC guidance relied on by this Court, which provides that "an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground that . . . [it] would pose an 'undue hardship' by burdening the 'conduct of the employer's business' through increasing 'the risk of the spread of COVID-19 to other employees or to the public.'" *Doe v. San Diego Unified Sch. Dist.* (*San Diego USD*), 19 F.4th 1173, 1180 (9th Cir. 2021), *reconsideration en banc denied*, 22 F.4th 1099 (9th Cir. 2022) (quoting EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* §§ L.2–L.3 (Oct. 25, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (*EEOC COVID-19 Guidance*)). The District Court's decision is also consistent with

the decisions of many other courts finding undue hardship based on the increased risk of COVID-19 transmission by unvaccinated workers in healthcare facilities.[15]

Although Dr. Beuca did not ask the District Court for leave to amend, on appeal he asserts that the District Court erred in not granting him leave sua sponte. Dr. Beuca devotes the vast majority of his brief to this issue, making five different arguments for why he should have been permitted to amend his complaint a second time. Some of these arguments are forfeited because he raises them for the first time

---

[15] *Algarin v. NYC Health + Hosps. Corp.*, --- F. Supp. 3d ----, No. 1:22-CV-8340 (JLR), 2023 WL 4157164, at *8 (S.D.N.Y. June 23, 2023) (dismissing complaint with prejudice where "permitting Plaintiff to potentially expose other workers at [hospital] to the COVID-19 virus, and facing legal consequences if someone should be infected with COVID-19 due to exposure from Plaintiff, are all significant hardships that create an undue burden on Defendant"); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929 (CS), 2023 WL 3467143, at *6 n.7 (S.D.N.Y. May 15, 2023) (dismissing complaint with prejudice based on the "obvious hardship associated with the increased health and safety risk posed to other employees and patients by allowing Plaintiffs to remain unvaccinated while working at their respective facilities"); *D'Cunha v. Northwell Health Sys.*, No. 1:22-CV-0988 (MKV), 2023 WL 2266520, at *3 (S.D.N.Y. Feb. 28, 2023) (dismissing failure-to-accommodate claim where "[plaintiff's] request would have posed 'an undue hardship' for [hospital] defendant" because plaintiff's "reporting unvaccinated to a worksite providing direct patient care posed an unacceptable health and safety threat to patients, co-workers, and visitors") (cleaned up); *Panozzo v. Riverside Healthcare*, No. 21-CV-2292, 2022 WL 18779991, at *7–8 (C.D. Ill. Jan. 2, 2022) (denying motion for temporary restraining order where hospital defendants established that accommodating patient-facing employees would impose undue hardship because vaccination was "necessary to protect patient, staff, and community health and safety"); *Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 441 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022) (denying motion for preliminary injunction where "permitting the named plaintiffs to continue to work at [hospital] without being vaccinated would materially increase the risk of spreading [COVID-19]").

on appeal. And none of them undercuts the District Court's conclusion that WSU successfully established its undue hardship defense based on the pleadings and judicially noticeable facts.

### a. The District Court's decision is consistent with *Groff v. DeJoy*

First, Dr. Beuca boldly asserts that "summary reversal is appropriate" because the District Court's decision is supposedly inconsistent with *Groff*. Op. Br. at 10. Although the District Court's decision predated *Groff*, its reasoning fits squarely within the undue hardship standard the Supreme Court clarified. For nearly five decades, the *Groff* Court noted, "many lower courts . . . [had] interpreted 'undue hardship' to mean any effort or cost that is 'more than . . . *de minimis*.'" 600 U.S. at 454 (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977)). Because "*de minimis* cost" suggests "something that is 'very small or trifling,'" *id.* at 469 (quoting Black's Law Dictionary at 388 (5th ed. 1979)), *Groff* held that "showing 'more than a *de minimis* cost,' as that phrase is used in common parlance, does not suffice to establish 'undue hardship' under Title VII," *id.* at 468. Instead, "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Id. Groff* instructed that "courts should resolve whether a hardship would be substantial in the context of an employer's business in the common-sense manner that it would use in applying any such test." *Id.* at 471.

Dr. Beuca ignores the District Court's analysis in arguing that it "erroneously applied a de minimis standard which is now obsolete." Op. Br. at 10. The District Court used the phrase "de minimis" exactly once—when reciting this Court's then-standard formulation of undue hardship. ER-10 (quoting *Balint*, 180 F.3d at 1054). But in its actual reasoning, the District Court made clear that the hardship to WSU— the increased risk of Dr. Beuca transmitting a deadly virus to his patients and fellow healthcare providers—is far more than non-trivial, but rather a matter of life and death. *See* ER 11 (concluding that "[n]o accommodation was possible" because Dr. Beuca "was working in a hospital and would have increased the risk of exposure to COVID-19 to patients and other healthcare workers"). As the Supreme Court held in upholding HHS's vaccination requirement, "ensuring that providers take steps to avoid transmitting a dangerous virus to their patients is consistent with the fundamental principle of the medical profession: first, do no harm." *Biden v. Missouri*, 595 U.S. at 93 (upholding HHS's conclusion "that a vaccine mandate is necessary to promote and protect patient health and safety in the face of the ongoing pandemic") (cleaned up). Accommodating Dr. Beuca would have contravened the core ethos of the medical profession itself.

The substantiality of the hardship found by the District Court is clear from the two cases it cited—both of which found that an increased risk of COVID-19 infection was a "significant" hardship. In one, the court held that "exempting the

plaintiffs from the vaccine requirement would expose vulnerable patients and nursing home residents, as well as other healthcare workers, to the COVID-19 virus, which is obviously a *significant* hardship." *Hochul*, 632 F. Supp. 3d at 145 (emphasis added). In the other, *Together Employees*, 573 F. Supp. 3d at 435–37, 441, the court held that the defendant had satisfied the undue hardship standard under both Title VII and the Americans With Disabilities Act (ADA), which has long defined "undue hardship" as "an action requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(A). Relying on these cases, the District Court determined that "the increased risk of COVID-19 infection during the time of Plaintiff's termination" and the "increased risk of exposure to COVID-19 to patients and other healthcare workers" would pose an undue hardship to WSU. ER-11. These burdens are not "something that is very small or trifling," *Groff*, 600 U.S. at 469 (cleaned up), but are substantial "in the context of [Dr. Beuca's] employment setting," ER-11. Nothing in the District Court's decision suggests it turned on the application of the "de minimis" standard.

Finally, the *Groff* Court was careful to note that it was "clarifying" *Hardison*, not overruling it, and that its decision did not cast doubt over the EEOC's longstanding guidance on undue hardship. *See Groff*, 600 U.S. at 471 ("We have no reservations in saying that a good deal of the EEOC's guidance in this area is sensible and will, in all likelihood, be unaffected by our clarifying decision today."). And, as

noted above, EEOC guidance provides that "an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground that . . . [it] would pose an 'undue hardship' by burdening the 'conduct of the employer's business' through increasing 'the risk of the spread of COVID-19 to other employees or to the public.'" *San Diego USD*, 19 F.4th at 1180 (quoting *EEOC COVID-19 Guidance* §§ L.2–L.3). That guidance—like the District Court's decision—is perfectly consistent with *Groff*.

### b. The District Court's decision follows this Court's precedents

Dr. Beuca also argues that pre-*Groff* Ninth Circuit cases foreclose WSU's undue hardship defense in two respects (neither of which he raised below): First, Dr. Beuca appears to contend that the Amended Complaint may not be dismissed because it alleges WSU failed to engage in the interactive process regarding possible accommodations. *See* Op. Br. at 12 (citing *Opuku-Boateng v. California*, 95 F.3d 1461, 1468–69 (9th Cir. 1996), *cert. denied*, 520 U.S. 1228 (1997)). Dr. Beuca is mistaken. This Court has expressly rejected the notion that "an employer cannot bring up 'undue hardship' unless it first proves that it made good faith efforts to accommodate the employee's practice." *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 614–15 (9th Cir. 1988) ("If an employer can show that no accommodation was possible without undue hardship, it makes no sense to require that he engage in a futile act."); *see also Snapp v. United Transp. Union*, 889 F.3d

37

1088, 1095 (9th Cir. 2018) (holding in ADA context that "there exists no stand-alone claim for failing to engage in the interactive process"; "discrimination results from denying an available and reasonable accommodation"). Moreover, as demonstrated by the very case Dr. Beuca cites, an employer's duty to "negotiate with the employee in an effort reasonably to accommodate the employee's religious beliefs" only applies *after* the employee "establish[es] a prima facie case of religious discrimination." *Opuku-Boateng*, 95 F.3d at 1468 (cleaned up). Because Dr. Beuca has not plausibly pleaded a prima facie case, he cannot defeat WSU's undue hardship defense with the bare allegation that WSU did not engage in the interactive process.

Second, Dr. Beuca suggests that the District Court decided undue hardship "based on hypothetical facts." Op Br. at 11 (quoting *Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397, 402 (9th Cir. 1978)).[16] Again, this mischaracterizes the District Court's decision. Recognizing that "[d]ismissal premised on undue hardship is proper 'only if the defendant shows some obvious

---

[16] In *Anderson*, this Court held that the plaintiff's refusal to pay union fees due to his religious beliefs did not create undue hardship for the union as a matter of law. 589 F.2d at 402. The union's "general sentiment" regarding "free riders" relied on "assumptions" about other employees' possible reactions to an accommodation. *Id.* Similarly, in *Burns v. Southern Pacific Transportation Co.*, 589 F.2d 403, 406 (9th Cir. 1978), this Court determined that substitution of union dues for charity contributions was not an undue hardship "as a matter of law" and rejected the employer's hypothetical hardship of employee dissension. These cases are inapplicable here where the District Court identified an undue hardship based on the undisputed dangers of unvaccinated primary care physicians treating patients in a hospital during the pandemic's Delta surge.

bar to securing relief on the face of the complaint or in any judicially noticeable materials,'" ER-10 (quoting *Bolden-Hardge*, 63 F.4th at 1224), the District Court based its ruling on those very sources—"the facts, as plead[ed] by [Dr. Beuca]" and scientific data from reliable public health authorities properly subject to judicial notice, *id.* In doing so, the District Court's decision was perfectly consistent with Rule 12 and Title VII.

Notably, Dr. Beuca has not questioned—either in this Court or below—the noticeability of scientific data finding an increased risk of COVID-19 transmission among unvaccinated persons. In his Opening Brief, Dr. Beuca does not mention judicial notice at all. In the District Court, Dr. Beuca did not oppose WSU's request to take judicial notice, but argued that courts may not consider judicially noticeable facts without converting the Rule 12(b)(6) motion to one for summary judgment. *See* SER-19. That simply misstated the law, which allows courts to consider judicially noticeable facts when ruling on Rule 12(b)(6) motions generally, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and when dismissing a Title VII claim based on undue hardship specifically, *see Bolden-Hardge*, 63 F.4th at 1224–25.

To be sure, "dismissal under Rule 12(b)(6)" may be "improper" if an affirmative defense relying on "judicially noticeable materials . . . raises disputed issues of fact." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir.

2014). But that is not the case here. Again, Dr. Beuca has never disputed the premise of the District Court's decision—supported by judicially noticeable scientific data— that an unvaccinated primary care physician "would have increased the risk of exposure to COVID-19 to patients and other healthcare workers." ER-11. Neither in Dr. Beuca's Amended Complaint, nor in his briefing in the District Court, nor in his Opening Brief has Dr. Beuca disputed that simple and incontrovertible scientific fact. While Dr. Beuca vaguely suggests that "material facts [are] in dispute" as to WSU's "proffered undue hardship," he fails to identify a single disputed fact of which the District Court took judicial notice. Op. Br. at 12 (discussing *Balint*, 180 F.3d at 1054).[17] For those reasons, Dr. Beuca has forfeited any argument that judicial notice was improper. *See, e.g.*, *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997–98 (7th Cir. 2014) (finding no error in district court's taking of judicial notice where plaintiff "does not challenge" it "nor [] clarify which, if any, . . . documents improperly were considered on this basis").

---

[17] Neither of the cases Dr. Beuca cites involved judicially noticeable facts—let alone the risk of exposing patients and other healthcare workers to a deadly virus. In *Balint*, this Court determined that a statute permitting seniority systems for scheduling shifts did not create a complete defense to religious accommodation claims. 180 F.3d at 1052. Rather, courts still must consider the context of the employer and the accommodation request. *Id.* Similarly, in *Opuku-Boateng*, 95 F.3d at 1470, this Court held that such a seniority system did not, in itself, create undue hardship absent evidence an accommodation would result in preferential treatment. It is unclear how Dr. Beuca thinks either case is remotely relevant to this one.

Even if not forfeited, any objection to judicial notice here would fail. Courts may take judicial notice of any fact "not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of information on governmental website where "neither party disputes [its] authenticity"). Courts regularly take judicial notice of scientific facts and data, particularly when contained in the publicly available records of government agencies. *See, e.g.*, *Michigan v. U.S. Army Corps of Engineers*, 758 F.3d 892, 899 (7th Cir. 2014) (taking judicial notice of government studies related to stemming spread of aquatic nuisance species); *Lennon v. Metro. Life Ins. Co.*, 504 F.3d 617, 623 (6th Cir. 2007) ("We can take judicial notice of the fairly obvious scientific fact that as blood-alcohol levels rise, 'so does the risk of being involved in a fatal crash.'") (quoting federal government report); *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) (en banc) (noting that "scientific facts" are among "the kinds of things about which courts ordinarily take judicial notice").

And numerous courts have taken judicial notice of scientific facts regarding the COVID-19 pandemic, including some of the very government data WSU presented to the District Court. *See, e.g.*, *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021) (taking judicial notice of the fact that "effective COVID-19 vaccines are

widely available"); *Hochul*, 632 F. Supp. 3d at 127 n.1 (taking judicial notice of "reports and other information from [the CDC] and other reliable public health authorities" and "facts regarding COVID-19"); *Lowe v. Mills*, No. 21-CV-242, 2022 WL 3542187, at *2 (D. Me. Aug. 18, 2022), *aff'd in part and rev'd in part on other grounds*, 68 F. 4th 706 (1st Cir. 2023) (taking judicial notice of "information from the official [CDC] and [Maine CDC] government websites that is not subject to reasonable dispute") (cleaned up). The District Court, too, properly took judicial notice of unassailable (and unchallenged) scientific reports demonstrating a heightened risk of COVID-19 transmission among unvaccinated people. *Cf. Biden v. Missouri*, 595 U.S. at 91 (upholding HHS vaccination requirement based on findings that "vaccination of healthcare workers against COVID-19 was necessary for the health and safety of individuals to whom care and services are furnished" and "data showing that the COVID-19 virus can spread rapidly among healthcare workers and from them to patients, and that such spread is more likely when healthcare workers are unvaccinated") (cleaned up).

### c. The District Court aptly relied on out-of-Circuit cases

Next, Dr. Beuca criticizes the District Court for supposedly "misread[ing]" the decisions of other federal courts that rejected failure-to-accommodate claims in the COVID-19 vaccination context based on the same undue hardship rationale. Op. Br. at 13. Once again, however, it is Dr. Beuca who misreads the case law. In

fact, Dr. Beuca does not even address the specific decisions the District Court cited. *See* ER-10–11 (citing *Together Employees*, 573 F. Supp. 3d at 441, and *Hochul*, 632 F. Supp. 3d at 145).

In *Together Employees*, 573 F. Supp. 3d at 423, the court denied hospital employees' motion to preliminarily enjoin the hospital's vaccination policy adopted during the Delta surge in the COVID-19 pandemic. The court held that the employees were unlikely to prevail on their ADA and Title VII failure-to-accommodate claims because, inter alia, the hospital had successfully asserted an undue hardship defense: "the hospital is essentially in the business of providing medical care to patients, many of whom are medically vulnerable to COVID-19 infection," and unvaccinated caregivers "would create a greater risk of COVID-19 infection in its facilities"—a hardship that was "far from hypothetical." *Id.* at 435.[18] Dr. Beuca fails to address this decision, citing only the First Circuit's brief order affirming the district court on the basis of the plaintiffs' failure to demonstrate irreparable harm. Op. Br. at 14 (citing *Together Emps. v. Mass Gen. Brigham Inc.*,

---

[18] Because "in determining undue hardship, it is appropriate to consider aggregate effects when multiple employees are granted the same accommodation," the *Together Employees* court correctly observed that the hospital's "undue hardship is not just accommodating one unvaccinated employee with a higher risk of spreading COVID-19, but potentially hundreds." 573 F. Supp. 3d at 437 (citing *Hardison*, 432 U.S. at 84 n.15; *EEOC COVID-19 Guidance* § L).

32 F.4th 82, 86 (1st Cir. 2022)). The First Circuit neither reached the merits nor cast

any doubt on the district court's undue hardship analysis.[19]

Dr. Beuca does not even mention the second case cited by the District Court,

*Hochul*, 632 F. Supp. 3d 120, which is on all fours with this case. The *Hochul* court

dismissed a Title VII claim in a similar context—healthcare professionals who

worked directly with vulnerable patients during the Delta surge of the COVID-19

pandemic—and concluded that "exempting the plaintiffs from the vaccine

requirement would expose vulnerable patients and nursing home residents, as well

as other healthcare workers, to the COVID-19 virus, which is obviously a significant

hardship." *Hochul*, 632 F. Supp. 3d at 145.[20] Here, the District Court considered a

---

[19] Dr. Beuca also discusses another related First Circuit case, *Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023), in which the court affirmed dismissal of failure-to-accommodate claims on undue hardship grounds because, by allowing the healthcare workers to continue working unvaccinated, the employers would "have risked onerous penalties, including license suspension." While Dr. Beuca suggests that *Lowe* "appears to be at odds with this Circuit's recent decision in *Bolden-Hardge*, [63 F.4th 1215]," Op. Br. at 14, the two are easily reconcilable. The Ninth Circuit has "held that accommodations that would force private employers to 'risk liability for violating' state law constitute undue hardships under Title VII." *Lowe*, 68 F.4th at 722 (quoting *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1384 (9th Cir. 1984)). In *Bolden-Hardge*, this Court simply "declined to extend this rule to a state agency acting as an employer." *Lowe*, 68 F.4th at 722 n.20. The *Lowe* providers were private employers, not state agencies, *id.*, so, contrary to Dr. Beuca's assertion, there is no risk of a "split with the First Circuit on this point." *See* Op. Br. at 14.

[20] The *Hochul* court also rested its undue hardship conclusion on a separate, if related, ground: "Aside from the obvious hardship associated with an increase in infections and its deleterious effect on staff and patients, the Private Defendants could also face legal liability if a patient or resident treated by an unvaccinated employee were to contract COVID-19." 632 F. Supp. 3d at 145 n.28.

religious accommodation claim in the very same context and determined that, given Dr. Beuca's role as an internal medicine resident physician, WSU had shown undue hardship, "particularly given the increased risk of COVID-19 infection during the time of [Dr. Beuca's employment] termination." ER-11.

The cases cited by the District Court are not outliers. Rather, they are among many federal district court decisions finding that, in the context of the COVID-19 pandemic, the health and safety risk of allowing physicians and other healthcare professionals to remain unvaccinated while treating patients constitutes an undue hardship. *See supra* note 15; *cf. EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 273 (3d Cir. 2010) ("A religious accommodation that creates a genuine safety or security risk can undoubtedly constitute an undue hardship . . . ."); *EEOC v. Oak-Rite Mfg. Corp.*, No. IP 99-1962-C H/G, 2001 WL 1168156, at *10 (S.D. Ind. Aug. 27, 2001) (Hamilton, J.) ("The issue of undue hardship generally is a question of fact, but questions of undue hardship have been resolved as a matter of law, especially where the employer showed that the proposed accommodation would either cause or increase safety risks . . . .") (citing, inter alia, *Bhatia*, 734 F.2d 1382 at 1383–84).

WSU acknowledges that not all district courts have reached the same conclusion, even in the context of healthcare employees' opposition to COVID-19 vaccination, but Dr. Beuca's examples are readily distinguishable. He cites one decision that denied the hospital defendant's motion to dismiss a Title VII failure-

to-accommodate claim on the basis of the undue hardship caused by an increased risk of COVID-19 exposure. *See* Op. Br. at 15–16 (citing *MacDonald v. Or. Health & Sci. Univ.*, No. 3:22-CV-01942-IM, 2023 WL 5529959, at *7 (D. Or. Aug. 28, 2023)). In *MacDonald*, like this case, the defendant had asked the court to take judicial notice of data showing that "COVID-19 vaccines work and decrease the prevalence and spread of COVID-19." 2023 WL 5529959, at *6. The court declined because, *unlike* this case, the "Plaintiff, in her response to Defendants' Motion to Dismiss, dispute[d] the accuracy of the statement that COVID-19 vaccines are effective at preventing transmission and infection." *Id.* As discussed above, Dr. Beuca has never disputed the COVID-19 vaccines' efficacy. Here, then, the District Court was justified in taking judicial notice in this case and accepting WSU's undue hardship defense based on undisputed, judicially noticeable facts.[21]

---

[21] Dr. Beuca also cites an even less analogous District of Oregon decision. *See* Op. Br. at 16 (citing *Payne v. St. Charles Health Sys.*, No. 6:22-CV-01998-MK, 2023 WL 4711431 (D. Or. July 6, 2023), *R&R adopted sub nom. Payne v. ST Charles Med. Ctr.*, 2023 WL 4711095 (July 24, 2023)). In *Payne*, a magistrate judge determined that the defendant hospital had not established that accommodating an unvaccinated facilities worker would cause it undue hardship. 2023 WL 4711431, at *3. The hospital's undue hardship defense was not based on health and safety risks, but rather that "adopting [certain] measures to monitor Plaintiff's compliance with his suggested accommodations,"—namely, masking and testing—"would have posed more than a de minimus [sic] hardship as a matter of law." *Id.* (cleaned up). *Groff* was decided a week before the magistrate judge issued his report and recommendation, to which no objection was filed. *Payne*, 2023 WL 4711431, at *1. Equally misplaced is Dr. Beuca's reliance on *Payton v. Walsh*, 579 F. Supp. 3d 1057, 1065 (S.D. Ind. 2022), where the court denied an employee's preliminary injunction request without even considering undue hardship. *See* Op. Br. at 16–17.

### d. Dr. Beuca's arguments about Providence are irrelevant

Next, Dr. Beuca argues that accommodating him would not have caused undue hardship because Providence "initially granted his request" and that "rescission of an accommodation may make [a] Plaintiff worse off." Op. Br. at 15. This contention overlooks the actual allegations in the Amended Complaint, which asserts that Dr. Beuca "was granted an *exemption* from . . . Providence" that was later withdrawn. ER-41 (emphasis added). However, while Providence may have determined that Dr. Beuca qualified for a religious exemption, Dr. Beuca does not allege that Providence offered him an *accommodation*. Whether an employee qualifies for a medical or religious exemption—by identifying a religious belief or medical condition precluding vaccination—and whether a reasonable accommodation is available without undue hardship to the employer, are separate questions. *See generally Pilz v. Inslee*, No. 3:21-CV-05735-BJR, 2022 WL 1719172, at *2 (W.D. Wash. May 27, 2022) (explaining that, under the Proclamation, "[o]nce an exemption is granted, the agency decides whether an accommodation can be made without imposing 'undue hardship' on the agency").

Dr. Beuca also attempts to show that Providence granted medical accommodations in a completely different context by citing *Samper v. Providence St. Vincent Medical Center*, 675 F. 3d 1233, 1236, 1240 (9th Cir. 2012). Op. Br. at 15. *Samper*, however, arose years before the COVID-19 pandemic, involved a NICU

nurse whose anxiety disorder contributed to unpredictable attendance, and this Court

ultimately held that Providence had not violated the ADA. As the District Court did

here, the *Samper* court considered the plaintiff's specific role in the context of her

employment with Providence and determined that no accommodation was possible.

*Id.* Other than the coincidental presence of Providence (which is not even a party

here), *Samper* has nothing to do with this case.

### e. The District Court did not create a healthcare "exception"

Finally, Dr. Beuca misreads the District Court's decision to hold categorically

that all "vaccine accommodations would pose an inherent undue hardship in

healthcare settings." Op. Br. at 13; *see also id.* at 4 (asserting that the decision below

gives "not only hospitals, but a larger swath of healthcare-related employers as well,

an extraordinary ability to deny religious accommodation requests across the

board"). Similarly, proposed amicus curiae Church State Council argues that the

District Court determined that "all requests for religious accommodation to a health

care's [sic] vaccine mandate is a 'per se' undue hardship." ECF No. 17-2 at 4.[22] The

District Court did no such thing.

Dr. Beuca's and proposed amicus's "floodgates" arguments grossly

exaggerate the District Court's narrow decision, which did not remotely proclaim a

---

[22] Church State Council did not contact WSU regarding its position on its motion
to participate as amicus curiae. ECF No. 17. WSU does not oppose its motion.

"per se" rule categorically applicable to all healthcare employees. Instead, the District Court considered (1) Dr. Beuca's specific position (an "internal medicine physician," ER-10); (2) his specific "employment setting" (he was "working in a hospital," ER-11); (3) the timing of his accommodation request (a time of "increased risk of COVID-19 infection," i.e., during the Delta surge, *id.*); and (4) the particular health and safety threat invoked by WSU (Dr. Beuca "would have increased the risk of exposure to COVID-19 to [his] patients and other healthcare workers," *id.*). Far from creating an "inherent exception for . . . healthcare settings," Op. Br. at 15, the District Court limited its holding to "the particular factual context of [this] case," ER-10 (quoting *Balint*, 180 F.3d at 1054). Dr. Beuca's and proposed amicus's hyperbolic arguments ski the slippery slope all the way to the bottom. *See Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 195 n.16 (1999) ("This familiar parade of dreadfuls calls to mind wise counsel: 'Judges and lawyers live on the slippery slope of analogies; they are not supposed to ski it to the bottom.'") (quoting R. Bork, *The Tempting of America: The Political Seduction of the Law* 169 (1990)).

Because the District Court's decision cannot fairly be read to create a categorical healthcare exemption to Title VII accommodation law, Dr. Beuca's and proposed amicus's various examples of other healthcare employers purportedly accommodating some employees' vaccine objections are irrelevant. *See* Op. Br. at

17; ECF No. 17-2 at 6–9. For all these examples tell us, perhaps the other providers decided to accommodate non-patient-facing employees like "facilities workers," *see e.g.*, *Payne*, 2023 WL 4711431, at *2, while requiring vaccination of physicians and other direct caregivers. In all the extraneous news articles, pleadings and discovery in other cases, and administrative documents they cite, neither Dr. Beuca nor proposed amicus identifies a single example of an accommodation even facially in tension with the District Court's decision.[23] And even if they had, it would not undermine the District Court's decision, which is limited to the facts alleged in the Amended Complaint or subject to judicial notice. As such, the District Court held only that, in the specific context of Dr. Beuca's employment and this litigation, the health and safety risks in accommodating him would have imposed an undue hardship.

For those reasons, the District Court correctly determined that amendment would be futile. On that basis alone, the District Court's denial of leave to amend was correct. *See, e.g.*, *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) ("Futility alone can justify a court's refusal to grant leave to amend.").

---

[23] WSU does not oppose proposed amicus's request that the Court take judicial notice of various court and agency documents, although they are immaterial to the resolution of this appeal. *See* ECF No. 17-2 at 6. And "when a court takes judicial notice of another court's [filing], it may do so not for the truth of the facts recited therein, but for the existence of the [filing], which is not subject to reasonable dispute over its authenticity." *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001).

## 2. Denying leave to amend was not an not abuse of discretion

Even if the District Court had erred in its futility determination (and it did not), it correctly declined to allow Dr. Beuca to "amend [his complaint] for a second time" on the independent grounds that it "would create undue delay and prejudice to Defendant" WSU. ER-11–12. Courts consider "five factors in assessing the propriety of leave to amend" (often called the *Foman* factors)—"bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Coll.*, 655 F.3d 984, 995 (9th Cir. 2011). Thus, even setting futility aside, the District Court found that three of the four remaining factors weighed against permitting amendment (all but bad faith). Under these circumstances, denial of leave was not an abuse of discretion. *See, e.g.*, *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 & n.4 (1990) (undue delay combined with prejudice was sufficient to deny leave to amend); *W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991) (same, plus prior amendment).

Dr. Beuca argues that the District Court "zeroed in on futility" without considering "evidence as to four of the [*Foman*] factors." Op. Br. at 19. Once again, Dr. Beuca ignores the plain language of the District Court's decision. The District Court noted that Dr. Beuca had "amended the complaint once already," giving it broad discretion to disallow a second amendment. ER-11; *see, e.g.*, *Chodos v. W.*

*Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad.") (cleaned up).[24] And the District Court expressly found both "undue delay and prejudice to [WSU]," noting that Dr. Beuca had "initiated this action in December 2022" and "had ample opportunity to identify any facts and causes of action that he could plausibly allege," but had failed to do so. ER-11. The District Court explained the reasoning behind its decision, which should therefore not be "disturb[ed] . . . absent 'a definite and firm conviction that the district court committed a clear error of judgment.'" *Doe ex rel. United States v. Vratsinas Constr. Co.*, 853 F. App'x 133, 134 (9th Cir. 2021) (quoting *Jackson*, 902 F.2d at 1387).

Dr. Beuca claims the District Court took an overly strict view of the "timeline" in finding undue delay and prejudice, noting that "barely six months had elapsed" in the lawsuit "by the time it was dismissed with prejudice" and "[j]ust one week transpired between the time WSU removed . . . and the time it filed the Motion to Dismiss." Op. Br. at 24. But Dr. Beuca overlooks that he waited 82 days to perfect service before filing suit—a delay that, by itself, would nearly provide grounds for

---

[24] Dr. Beuca appears to argue that his first amendment should not count because it happened "in state court." Op. Br. at 24. He offers no support for this novel interpretation of Rule 15(a), which defies the fundamental principle that "[t]he federal court takes the case as it finds it on removal and treats everything that occurred in the state court as if it had taken place in federal court." *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963); *accord Schnabel v. Lui*, 302 F.3d 1023, 1037 (9th Cir. 2002).

dismissal. *See* Fed. R. Civ. P. 4(m). And even after WSU moved to dismiss, he could have sought leave to file an amended complaint if he believed he could cure the deficiencies WSU's motion identified. *See* Fed. R. Civ. P. 15(a)(2). Not only did he fail to do so, Dr. Beuca did not even file a timely response to the motion, waiting 47 days to oppose dismissal. SER-13. And in that response, Dr. Beuca neither hinted at any salvaging amendment nor asked the District Court for permission to amend. Indeed, it was not until he filed his opening brief on appeal on September 6, 2023— more than ten months after he filed suit—that he asked *any* court for leave to amend his complaint. And even now, he fails to specify how he would amend it. *See* Op. Br. at 21.

Given all that, Dr. Beuca cannot deny that he was unduly dilatory in seeking leave to amend, nor can he claim that the District Court abused its discretion in not divining his desire to do so. *See Shree Shiva, LLC v. City of Redding*, No. 22-15395, 2023 WL 1775650, at *1 (9th Cir. Feb. 6, 2023) (finding no abuse of discretion where plaintiff "has not suggested additional facts that could cure the complaint's deficiencies"); *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1129 (9th Cir. 2013) (no abuse of discretion where plaintiff "represented to the district court that he knew additional facts that could solve the deficiencies in the complaint, but counsel never proffered these facts to the court").

## C. The District Court Properly Dismissed the WLAD Claim

In his final argument, Dr. Beuca claims that the District Court did not "meaningfully address" his WLAD claim, asserting that it should have "remand[ed] the WLAD claim[] to state court" in lieu of dismissing it. Op. Br. at 26–27. This argument is doubly flawed.

First, Dr. Beuca overlooks that the District Court adjudicated the WLAD claim and the Title VII claim together because the elements of a failure-to-accommodate claim under each statute are identical. ER-7, 13. Dr. Beuca himself made this very point in his Amended Complaint. *See* ER-43.

Second, Dr. Beuca's suggestion that the District Court should have "remand[ed] the WLAD claim[]" to state court after dismissing the federal claims, Op. Br. at 27, ignores that subject matter jurisdiction rests in part on diversity of citizenship. Where the District Court had "an independent jurisdictional basis for the state law claims, namely diversity," it "had no discretion to remand these claims to state court." *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 977 (9th Cir. 2006). Nor did Dr. Beuca ever ask the District Court to do so.

Finally, Dr. Beuca suggests that the District Court erred in applying the federal "plausibility" pleading standard under *Twombly* and *Iqbal* rather than the "'possibility' standard of [Washington Civil Rule] 12." Op. Br. at 27. But "in a diversity suit such as this one, [federal courts] apply federal pleading standards—

Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." *Dunbar v. Wells Fargo Bank, N.A.*, 709 F.3d 1254, 1257 (8th Cir. 2013) (cleaned up). Once again, Dr. Beuca asks this Court to cast aside established procedural rules in an attempt to resurrect his lawsuit. The Court should decline.

## VIII. CONCLUSION

WSU respectfully requests that the Court affirm the District Court.

RESPECTFULLY SUBMITTED this 6th day of November, 2023.

*s/Zachary J. Pekelis*
Zachary J. Pekelis
Special Assistant Attorney General
PACIFICA LAW GROUP LLP
1191 Second Avenue, Suite 2000
Seattle, Washington 98101-3404
Telephone: 206-245-1700

## CERTIFICATE OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Defendant-Appellee WSU represents

that it is unaware of any related case pending in this Court.

                     *s/Zachary J. Pekelis*
                     Zachary J. Pekelis
                     Special Assistant Attorney General
                     PACIFICA LAW GROUP LLP
                     1191 Second Avenue, Suite 2000
                     Seattle, Washington 98101-3404
                     Telephone:  206-245-1700

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-35395

I am the attorney or self-represented party.

**This brief contains** 13,885 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   ☐ it is a joint brief submitted by separately represented parties.
   ☐ a party or parties are filing a single brief in response to multiple briefs.
   ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Zachary J. Pekelis **Date** November 6, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*