*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

---

TIMOTHY P. BEUCA,

*Plaintiff-Appellant,*

v.

WASHINGTON STATE UNIVERSITY
and JOHN AND JANE 1-10,

*Defendants-Appellees.*

---

*Appeal from a Decision of the United States District Court for the Eastern District of Washington,*
*No. 2:23-cv-00069-TOR · Honorable Thomas O. Rice*

## APPELLANT'S REPLY BRIEF

HAROLD H. FRANKLIN JR., ESQ.
HAROLD H. FRANKLIN, JR.,
ATTORNEY AT LAW
459 Seneca Avenue NW
Renton, Washington 98057
(206) 617-7031 Telephone
haroldfranklin1@comcast.net

MATTHEW B. MCREYNOLDS, ESQ.
PACIFIC JUSTICE INSTITUTE
9851 Horn Road, Suite 115
Sacramento, California 95827-6600
(916) 857-6900 Telephone
mattmcreynolds@pji.org

*Attorneys for Appellant Timothy P. Beuca*




# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ........................................................................1

ARGUMENT ..............................................................................2

I.     WSU fails to distinguish *Groff v. DeJoy*...............................2

      A.     The difference between de minimis and substantial
           is not slight ..................................................................2

      B.     *Biden v. Missouri* underscores, rather than undermines,
           the essentiality of accommodation...............................5

II.    Basing undue hardship on judicially noticed facts would be
      manifestly unjust to many current litigants and would be
      inconsistent with this Court's precedents...............................7

      A.     WSU's advocacy of judicial notice here is incompatible
           with this Court's cautions about substituting a
           defendant's preferred facts for the allegations in a
           complaint....................................................................7

      B.     The District Court's assumption of crucial, disputed facts
           has been contradicted by well-reasoned approaches taken
           by other district courts in the Pacific Northwest .....................10

      C.     Affirming undue hardship as a matter of law, based on
           judicially noticed facts, would wreak havoc on cases
           pending across the Circuit..........................................12

III.   WSU had fair notice of Dr. Beuca's need for religious
      accommodation, and it chose to reject his request out of hand ..........14

      A.     WSU and the District Court overlook the Supreme
           Court's holding that a prima facie claim need not be pled
           in employment discrimination cases.........................14

B.  Fair notice has been, and continues to be, a key
    consideration for dismissal under *Twombly*, *Iqbal*, and
    this Court's precedents ..............................................................15

C.  On the present record, WSU had fair notice of the basis
    for Dr. Beuca's failure-to-accommodate claims.......................19

D.  Disallowing amendment of the complaint was an abuse
    of discretion................................................................................22

E.  This Court should decline to accept WSU's invitation to
    second-guess Dr. Beuca's stated religious beliefs...................24

IV. WSU dodges Dr. Beuca's WLAD claim............................................25

CONCLUSION...........................................................................................26

CERTIFICATE OF COMPLIANCE.........................................................27

CERTIFICATE OF SERVICE ..................................................................28

# TABLE OF AUTHORITIES

## CASES

*Allbright v. Southern California Permanente Medical Group, Inc.*,
Case No. 5:23-cv-00022-JGB-KK (C.D. Cal. 2023) ............................. 13

*Arizona v. Mayorkas*,
143 S. Ct. 1312 (2023) .......................................................... 8, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................. 1, 15, 17, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................... 1, 15, 16, 17, 18

*Biden v. Missouri*,
595 U.S. 87, 142 S. Ct. 647 (2022) .................................. 5, 6, 10

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971) .................................................................. 17

*Bolden-Hardge v. Office of Cal. State Controller*,
63 F.4th 1215 (9th Cir. 2023) ........................................... 19, 24

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ................................................................. 24

*Camp v. L.A. Arena Co. LLC*,
2023 U.S. Dist. Lexis 104655 (C.D. Cal. June 15, 2023) ...................... 19

*Carroll v. Longwood Manor Convalescent Hospital*,
Case No. 2:23-cv-05506-JFW-BFM (C.D. Cal. 2023) ........................... 13

*Conley v. Gibson*,
355 U.S. 41 (1957) ............................................................ 16, 18

*Does 1-2 v. Hochul*,
632 F. Supp. 3d 120 (E.D.N.Y. 2022) ........................................... 4

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015) ........................................................... 20, 21

*Finfrock v. Yuma Regional Medical Center,*
Case No. CV-23-00998-PHX-MTL (D. Ariz. 2023)............................. 13

*Gilligan v. Jamco Dev. Corp.,*
108 F.3d 246 (9th Cir. 1997) ........................................................... 15, 18

*Groff v. DeJoy,*
600 U.S. 447, 143 S. Ct. 2279 (2023)............................................. *passim*

*Johnson v. City of Shelby,*
574 U.S. 10 (2019)........................................... 17, 18, 20, 23, 25

*Keene v. City and County of San Francisco,*
No. 22-16567, 2023 U.S. App. Lexis 11807,
2023 WL 3451687 (9th Cir. May 15, 2023)....................................... 6, 24

*Khoja v. Orexigen Therapeutics, Inc.,*
899 F.3d 988 (9th Cir. 2018) ........................................................ 7, 8, 22

*Kumar v. Gate Gourmet, Inc.,*
180 Wn.2d 481(Wash. 2014)................................................................ 25

*Lavelle-Hayden v. Legacy Health,*
Case No. 3:22-cv-01752-KI (D. Or. 2022)............................................ 13

*Lawson v. Washington,*
296 F.3d 799 (9th Cir. 2002) ........................................................... 19, 20

*Lopez v. Optum Services, Inc.,*
Case No. 5:23-cv-01016 (C.D. Cal. 2023) ............................................ 13

*MacDonald v. Or. Health & Sci. Univ.,*
2023 U.S. Dist. Lexis 151070,
2023 WL 5529959 (D. Or. Aug. 28, 2023)...................................... 10, 11

*McDonnell-Douglas Corp. v. Green,*
411 U.S. 792 (1973)........................................................................ 14, 18

*Nelson v. Centene, Inc., and California Health and Wellness Plan,*
Case No. 8:22-cv-02244-JWH-DFM (C.D. Cal. 2022)......................... 13

*Payne v. St. Charles Health Sys.,*
No. 6:22-cv-01998-MK, 2023 WL 4711431 (D. Or. July 6, 2023) ........ 10

iv

*Petersen v. Hewlett-Packard Co.*,
358 F.3d 599 (9th Cir. 2004) .................................................................. 19

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63 (2020) ............................................................................... 6

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ........................................................................ *passim*

*Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*,
450 U.S. 707 (1981) ................................................................................ 24

*Together Employees v. Mass General Brigham Inc.*,
573 F. Supp. 3d 412 (D. Mass. 2021) ........................................................ 4

*Trans World Airlines, Inc. v. Hardison*,
432 U.S. 63 (1977) ........................................................................... 3, 4, 5

*Trinh v. Shriners Hosps. for Child.*,
2023 U.S. Dist. Lexis 203734 (D. Or. Oct. 23, 2023) ......................... 11

*United States v. Corinthian Colls.*,
655 F.3d 984 (9th Cir. 2011) ................................................................. 22

*Williams et. al. v. Legacy*,
Case No. 3:22-06004-TMW (W.D. Wash. 2022) .................................... 13

*Zimmerman v. Peace Health*,
2023 U.S. Dist. Lexis 201874 (W.D. Wash. Nov. 9, 2023) ........ 11, 12, 26

## STATUTES AND RULES

42 U.S.C. § 2000e et seq. (Title VII of Civil Rights Act) ..................... *passim*

Fed. R. Civ. P. 8 ................................................................................... *passim*

Fed. R. Civ. P. 9 .......................................................................... 15, 21, 22

Fed. R. Civ. P. 12(b)(6) ........................................................... 3, 14, 21

Fed. R. Evid. 201 .................................................................................. 8

RCW 49.60.180 (Washington Law Against Discrimination) ........... 2, 20, 25

**OTHER SOURCES**

Black's Law Dictionary 388 (5th ed. 1979) ................................................... 3

Kip Hill, *Former WSU football coach Nick Rolovich asks for vaccine-related firing lawsuit to continue*, THE SEATTLE TIMES (May 11, 2023), https://www.seattletimes.com/sports/wsu-cougar-football/former-wsu-football-coach-nick-rolovich-asks-for-vaccine-related-firing-lawsuit-to-continue/#:~:text=Former%20 Washington%20State%20University%20football,get% 20the%20COVID%2D19%20vaccine ............................................... 13

# INTRODUCTION

The Brief of Defendant-Appellee Washington State University (WSU Br.) confirms the issue at the heart of this appeal. WSU insists that its Title VII undue hardship defense is so "unassailable" as a matter of law that no set of facts offered by Dr. Beuca about his beliefs could prevent early dismissal of his case. WSU nevertheless faults Dr. Beuca for failing to present more of the very facts it says would be futile. At the same time, WSU offers a highly selective version of statements about COVID-19 and vaccines, hoping the Court will judicially notice its version of pandemic history while foreclosing contrary evidence. On a Motion to Dismiss, this would be manifestly unjust to Dr. Beuca and many other current litigants across the Circuit.

WSU offers little on the U.S. Supreme Court's recent, controlling decision in *Groff v. DeJoy*. Yet that decision emphasizes the fact-based inquiry that WSU skirts.

The WSU Brief instead focuses on the Supreme Court's well-trodden decisions setting forth the FRCP 8 pleading standard in *Iqbal* and *Twombly*. Its omission of the Supreme Court's corollary authority, though, holding that pleading a prima facie case for Title VII violations is not required, defeats its arguments. This key omission leads WSU to commit other analytical errors, such as claiming Circuit precedent has been implicitly abrogated.

1

In light of the Supreme Court's and this Circuit's many admonitions that discrimination claims not be too hastily dismissed, or leave to amend be deprived, the decision below was an abuse of discretion. Affirmance would harm not just Dr. Beuca, but hundreds of other plaintiffs in dozens of pending cases where employees were not accommodated and lost their jobs in the healthcare context.

Finally, WSU downplays the Washington Law Against Discrimination. The Court should proceed cautiously when interpreting this state law.

## ARGUMENT

## I.    WSU fails to distinguish *Groff v. DeJoy*.

Appellants' Opening Brief explained that the District Court applied the de minimis standard for undue hardship, even though that standard was in its death throes at the Supreme Court. AOB at 7 (quoting ER-10).

WSU pretends that little changed with the announcement of *Groff v. DeJoy*, 143 S. Ct. 2279 (2023). WSU Br. at 34, 36. In this, Appellees are quite mistaken.

### A.    The difference between de minimis and substantial is not slight.

WSU first minimizes the District Court's reliance on the now-defunct de minimis standard for undue hardship, arguing that its defense is so "unassailable" it could have met any standard. WSU Br. at 2. But since the only standard invoked by the District Court is now obsolete, WSU's prediction of what the District Court would have done post-*Groff* is pure speculation.

To those who, like WSU, see little difference between "de minimis" and "substantial" burdens, the Supreme Court instructed:

> Of course, there is a big difference between costs and expenditures that are not "substantial" and those that are "de minimis," which is to say, so "very small or trifling" that they are not even worth noticing. Black's Law Dictionary 388 (5th ed. 1979).

*Groff*, 143 S. Ct. at 2291-2292. The District Court could not have sized up the "big difference" between the alleged "costs and expenditures" imposed by Plaintiff's individual accommodation to determine whether they were "trifling" or indeed, actually "substantial" because Defendant offered no such evidence about its operations or the hospital where Dr. Beuca worked. Nor would it have been proper to do so in the FRCP 12(b)(6) context.

Title VII, as delineated by the unanimous *Groff* Court, requires that Defendant "must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business. *Hardison*, 432 U.S., at 83, n. 14." *Groff,* 143 S. Ct. at 2297. Lacking such evidence, the District Court could not and did not conduct the necessary Title VII analysis. WSU instead relied upon a one-size-fits-all Covid-19 defense culled from mass communications by government actors such as the Governor and CDC. The shortcomings of its request for judicial notice will be separately addressed below in Section II. For the present, *Groff* clearly does not contemplate defendants meeting

their substantial cost burdens at a high level of generalization, without any assessment of the plaintiff's actual situation and accommodation request.

WSU nonetheless makes two attempts to explain why the District Court's "actual reasoning" was consistent with *Groff*. Neither is persuasive.

Defendant asserts that the "[s]ubstantiality of the hardship found by the District Court is clear from the two cases it cited—both of which found that an increased risk of COVID-19 infection was a 'significant hardship.'" WSU Br. at 35. Undue hardship analysis, of course, requires a "fact-specific inquiry," *Groff,* 143 S. Ct. at 2294. Defendant, in lieu of presenting its own facts that would have enabled such an analysis by the District Court, seeks to transpose facts specific to a case in the District Court in Maryland and specific to a case from the Eastern District of New York. WSU Br. at 35-36; *see*, *Together Employees v. Mass General Brigham Inc.,* 573 F. Supp. 3d 412 (D. Mass. 2021); *Does 1-2 v. Hochul,* 632 F. Supp. 3d 120 (E.D.N.Y. 2022). The substitution of findings from another case across the country is incompatible with the fact-specific analysis required by Title VII and as articulated by *Groff*. The Court, in clarifying *Hardison,* carefully noted that in direct contrast to a mere de minimis standard, "the [*Hardison*] Court described the governing standard quite differently, stating three times that an accommodation is not required when it entails 'substantial' 'costs' or 'expenditures.'" *Groff,* 143 S. Ct. at 2292 (quoting *TWA v. Hardison,* 432 U.S. 63,

83 n. 14 (1977). The District Court did not have before it the necessary facts to make a specific finding that an accommodation for Dr. Beuca would entail substantial costs or expenditures. For this reason, it is erroneous to now recast the District Court's analysis as consistent with Title VII and *Groff.*

### B. *Biden v. Missouri* underscores, rather than undermines, the essentiality of accommodation.

Seeking to distance itself from *Groff*, WSU takes refuge in *Biden v. Missouri,* 595 U.S. 87 (2022), which generally upheld the federal vaccine mandate for covered healthcare providers. Yet the Justices emphasize accommodations even in the pandemic era. WSU quotes the Court's comment that "[i]t would be the very opposite of efficient and effective administration for a facility that is supposed to make people well to make them sick with COVID-19." *Biden v. Missouri*, 595 U.S. at 94. WSU Br. at 3. However, Defendant decouples that statement from what immediately precedes it: "After all, ensuring that providers take steps to avoid transmitting a dangerous virus to their patients is consistent with the fundamental principle of the medical profession." *Biden v. Missouri*, 595 U.S. at 94 (*cf.* WSU Br. at 3, 35). The Court observed that HHS is tasked with ensuring that hospitals take steps—*plural*—to protect patient safety. WSU, in contrast, would have this Court assume that only one singular step—vaccination—is available and sufficient to protect patients. But the Court made no such exclusionary finding. It did not

state that the COVID-19 vaccine was a panacea the absence of which "would have contravened the core ethos of the medical profession itself." WSU Br. at 35. In its entirety, the Court's per curium opinion is silent on the question of substantial hardship and is wholly unrelated to Title VII. More specifically—and contradicting WSU—the Court opened its opinion by noting approvingly the fact that the HHS mandate explicitly provides exemptions "for medical or religious reasons." *Biden v. Missouri*, 142 S. Ct. 647, 650 (2022). Defendant thus cites a precedent that stands for the very opposite of its own premise: COVID-19 vaccine mandates can be effective and consistent with the "fundamental principle of the medical profession" when they offer religious exemptions. *Id.*

This holding was echoed by this Court earlier this year; balancing the equities of COVID-19 mandates must take account of the importance of civil rights protections in the workplace. *Keene v. City and County of San Francisco*, No. 22-16567, 2023 U.S. App. Lexis 11807 at *7, 2023 WL 3451687 (9th Cir. May 15, 2023) (mem. Op. reversing denial of prelim. Inj.) (citing, inter alia, *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020)).

As a fallback for the lack of evidence about its own operations, WSU urges that dismissal was consistent with the facts, not as pled by Dr. Beuca, but as attempted to be introduced by the defense via judicial notice. The next section will explain the fallacies of this approach.

6

**II.    Basing undue hardship on judicially noticed facts would be manifestly unjust to many current litigants and would be inconsistent with this Court's precedents.**

**A.    WSU's advocacy of judicial notice here is incompatible with this Court's cautions about substituting a defendant's preferred facts for the allegations in a complaint.**

WSU, while strenuously opposing any opportunity Dr. Beuca might have to present his own facts, seeks to substitute its own version of the facts via judicial notice. WSU Br. at 6.

WSU's claim that the District Court implicitly took judicial notice of its preferred facts, without expressly granting the request, WSU Br. at 15, fn. 13, strains credulity. Had the District Court intended to so rule, it undoubtedly knew how to express itself unambiguously. But judicial notice would have been improper there, as it would be here, because the conclusions put forward by WSU continue to be controversial, and the documents sought to be noticed do not address the core issue here—whether WSU could have accommodated Dr. Beuca.

This Court clarified the limits of judicial notice in *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999 (9th Cir. 2018) (en banc). It explained:

> Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit. Unless the District Court converts the Defendant's Motion to Dismiss into a

Motion for Summary Judgment, the Plaintiff receives no opportunity to respond to the Defendant's new version of the facts.

*Id.* at 1003. This Court further cautioned:

> The overuse and improper application of judicial notice and the incorporation by reference doctrine, however, can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their Motions to Dismiss to undermine the Complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the Complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery.

*Id.* at 998. This aptly describes WSU's efforts here to secure premature dismissal.

Under FRE 201, a judicially noticeable adjudicative fact is one that is not subject to reasonable dispute. *Khoja,* 899 F.3d at 999. A fact is not subject to reasonable dispute if it is generally known, or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *Id.*

Unfortunately, executive proclamations and pronouncements from federal and state-level public health authorities have become anything but the types of statements which cannot reasonably be questioned. As the pandemic wore on, even Justices of the Supreme Court began airing their alarm with the moving targets of public health edicts, especially when such mandates and orders restricted core freedoms. As Justice Gorsuch put it in *Arizona v. Mayorkas*, 143 S. Ct. 1312 (2023), "fear and the desire for safety are powerful forces. They can lead to a clamor for action, almost any action, as long as someone does something to

address a perceived threat. A leader or an expert who claims he can fix everything, as long as we do exactly as he says, can prove an irresistible force . . . Along the way, we will accede to the loss of many cherished liberties. . . ." *Id*. at 1315 (statement of Gorsuch, J.). WSU essentially asks the Court to continue deferring to past decrees and experts, in the face of growing doubts about the truth of their pronouncements. Were the Court to venture down this road, it would need to account for vastly more government-produced data on the pandemic and vaccine efficacy than what WSU puts forward. It would, at a minimum, need to consider vacillations in statements from the CDC by late July and early August of 2021 acknowledging the mandated vaccines did not prevent transmission of the virus. The Court would need to weigh the risks of the vaccines themselves, the prevalence of so-called "breakthrough" infections among the vaccinated, and the implications of deciding such facts for the first time on appeal, with Circuit-wide ramifications.

Dr. Beuca will resist the temptation to introduce and seek judicial notice of his own reams of peer-reviewed studies and government acknowledgements painting a much murkier picture of vaccine mandates. This is, after all, an appeal from a Motion to Dismiss, where a battle of the experts would be wholly improper.

The Court need not and should not undertake the hazardous journey proposed by Appellees. WSU's version of the facts is fatally undermined by the

very mandates on which it relies. From Washington State to Washington, D.C. the vaccine mandates uniformly provided for accommodations. As discussed above, *Biden v. Missouri* highlighted the availability of just such accommodations—for healthcare workers no less. As will be shown next, other district courts have rejected similar requests for judicial notice and noted the ubiquity of accommodation options in vaccine mandates.

### B. The District Court's assumption of crucial, disputed facts has been contradicted by well-reasoned approaches taken by other district courts in the Pacific Northwest.

The Eastern District of Washington's truncated approach to Dr. Beuca's pleadings is inconsistent with the most recent, more thorough approaches taken by other district courts within this Circuit.

In the AOB, Dr. Beuca pointed out that two other district court decisions this summer reached nearly the opposite conclusion than did the Eastern District of Washington below on the undue hardship question. AOB at 15-16 (citing *MacDonald v. Or. Health & Sci. Univ.*, 2023 U.S. Dist. Lexis 151070, 2023 WL 5529959 (D. Or. Aug. 28, 2023) (rejecting hospital's motion to dismiss based on undue hardship as a matter of law); and *Payne v. St. Charles Health Sys.*, 6:22-cv-01998-MK, 2023 WL 4711431 (D. Or. July 6, 2023) (same) (mag. findings and recommendations)).

Even more recently, another district court has weighed in, finding the *Beuca* ruling less persuasive than the Oregon decisions to the contrary. *Zimmerman v. Peace Health*, 2023 U.S. Dist. Lexis 201874 at *27-29 (W.D. Wash. Nov. 9, 2023) (rejecting healthcare entity's argument that dismissals should be based on undue hardship as a matter of law). The plaintiffs in that case are 50 nurses, medical professionals, engineers, and other employees of the healthcare entity. *Id.* at *5.

Unlike the decision below, the *Zimmerman* decision peered under the hood of the federal and Washington State vaccine mandates and found accommodation contemplated in the decrees. *Id.* at *6-7, *18-20, *24-26. The Court's conclusion reflects common sense: such accommodation provisions would be meaningless if the employer were able to assert undue hardship as a matter of law. *Id.* at *25-26. The Western District of Washington likewise weighed requests to consider CDC reports from July 2021. *Id.* at *19-22. The Court ultimately held that public health reports and regulations, even if they could be said to establish a scientific consensus on the importance of vaccines for "almost all" healthcare workers, did not establish that no accommodation was possible for the plaintiffs, especially in light of *Groff. Id.* at *25-26.

This is not the only recent district court decision to find *Beuca* less persuasive than *MacDonald. See, e.g., Trinh v. Shriners Hosps. for Child.*, 2023

U.S. Dist. Lexis 203734 at *13-19 (D. Or. Oct. 23, 2023) (collecting recent cases) (rejecting hospital's argument of undue hardship as a matter of law on a Motion to Dismiss, and reserving the issue for summary judgment).

These decisions, and *Zimmerman* in particular, represent the better and more reasoned view emerging within the Circuit. Handing healthcare entities an undue hardship as a matter of law would insulate their decisions not to accommodate from scrutiny. In the present case, Dr. Beuca would not even be able to present evidence that fellow healthcare professionals at the same hospital were being accommodated. As will be noted next, affirmance could also have devastating effects on many other worthy litigants.

**C.      Affirming undue hardship as a matter of law, based on judicially noticed facts, would wreak havoc on cases pending across the Circuit.**

In addition to the foregoing, Dr. Beuca's counsel is aware of dozens of similar cases making their way through the district courts across the West Coast. There are estimated to be dozens if not hundreds more in active litigation (some, like *Zimmerman*, including dozens of employees in one action) involving healthcare employees terminated for declining COVID-19 vaccines. These should not be short-circuited. A sampling of such cases known to Appellants' counsel and understood to be representative of many others includes:

- *Allbright v. Southern California Permanente Medical Group, Inc.,* Case No. 5:23-cv-00022-JGB-KK (C.D. Cal. 2023);
- *Carroll v. Longwood Manor Convalescent Hospital,* Case No. 2:23-cv-05506-JFW-BFM (C.D. Cal. 2023);
- *Finfrock v. Yuma Regional Medical Center*, Case No. CV-23-00998-PHX-MTL (D. Ariz. 2023);
- *Lavelle-Hayden v. Legacy Health,* Case No. 3:22-CV-01752-KI (D. Or. 2022);
- *Nelson v. Centene, Inc., and California Health and Wellness Plan,* Case No. 8:22-cv-02244-JWH-DFM (C.D. Cal. 2022);
- *Lopez v. Optum Services, Inc.,* Case No. 5:23-cv-01016 (C.D. Cal. 2023);
- *Williams et. al. v. Legacy,* Case No. 3:22-06004-TMW (W.D. Wash. 2022).

Dr. Beuca offers these docket citations as indicative of the outcry that could be expected if healthcare entities defending against pandemic-era terminations were suddenly handed a bullet proof defense. While not related to this action in the strict sense, they and others would undoubtedly be affected.

Nor should it be thought that WSU's claimed undue hardship is limited to hospitals or the healthcare context. Although in the present case it emphasizes Dr. Beuca's role in a hospital, WSU's high-profile firings of athletic personnel due to the vaccine mandate—and its ongoing defense of its actions—have been widely reported.[1]

---

[1] Kip Hill, *Former WSU football coach Nick Rolovich asks for vaccine-related firing lawsuit to continue*, THE SEATTLE TIMES (May 11, 2023), https://www.seattletimes.com/sports/wsu-cougar-football/former-wsu-football-coach-nick-rolovich-asks-for-vaccine-related-firing-lawsuit-to-continue/#:~:text=Former%20Washington%20State%20University%20football,get%20the%20COVID%2D19%20vaccine.

**III.** **WSU had fair notice of Dr. Beuca's need for religious accommodation, and it chose to reject his request out of hand.**

    **A.** **WSU and the District Court overlook the Supreme Court's holding that a prima facie claim need not be pled in employment discrimination cases.**

WSU urges the Court to hold that Dr. Beuca did not plead a prima facie claim. WSU Br. at 19.

Both the District Court and WSU overlook controlling precedent from the Supreme Court that contradict the notion that Dr. Beuca is subject to 12(b)(6) dismissal for failure to plead prima facie elements of a Title VII claim. This was the exact issue before the Court in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). For a unanimous Court, Justice Thomas stated the issue and holding as follows:

> This case presents the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth by this Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 36 L.Ed.2d 668, 93 S.Ct. 1817 (1973). We hold that an employment discrimination complaint need not include such facts and instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief.

*Swierkiewicz*, 534 U.S. at 508.

The Court explained the prima facie case under *McDonnell-Douglas* is an evidentiary standard, not a pleading requirement. *Swierkiewicz*, 534 U.S. at 510. The Court noted it was particularly inappropriate to require a prima facie showing

14

at the pleading stage, before discovery could unearth direct evidence of discrimination. *Id.* at 512. The Court observed that FRCP 8 provided a fair notice standard, while relying on discovery and summary judgment to dispose of unmeritorious claims. *Id*. The Court contrasted this with the heightened pleading standards for fraud in FRCP 9. *Id.* at 513. Pleadings failing to provide sufficient notice of the claims could also be addressed through motions for a more definite statement. *Id.* at 514.

The decision below, and WSU's position now, are irreconcilable with these governing principles.

### B.    Fair notice has been, and continues to be, a key consideration for dismissal under *Twombly, Iqbal*, and this Court's precedents.

WSU avoids *Swierkiewicz* but instead contends that this Court's similar decision in *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (1997). Has been implicitly abrogated by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). WSU Br. at 22-23. While the latter two decisions are quoted for their best-known propositions, WSU Br. at 16-17, 21, a closer look is necessary to understand why they did not overrule prior precedent to the extent suggested by WSU.

Justice Souter's opening lines for the majority in *Twombly* succinctly capture what was at issue:

The question in this putative class action is whether a Section 1 complaint [under the Sherman Act] can survive a motion to dismiss when it alleges that major telecommunications providers engaged in certain parallel conduct unfavorable to competition, absent some factual context suggesting agreement, as distinct from identical, independent action. We hold that such a complaint should be dismissed.

*Twombly*, 550 U.S. at 548-549 (brackets added).

The putative class action plaintiffs essentially alleged the contract, combination, or conspiracy elements based on information and belief. *Id*. at 551.

Because parallel conduct by itself would not violate the Sherman Act, the allegations in the complaint must rise above the speculative level. *Id*. at 555.

Justice Souter spent some time deconstructing a line from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that dismissal should only happen where it was beyond doubt the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Twombly*, at 561.

The Court also expressed its concern that, in large antitrust cases particularly, allowing speculative claims to proceed to discovery would cause defendant to incur massive expense for claims that might never have a chance. *Id*. at 558-560.

Most pertinently here, what the Court did not do in *Twombly* was change the pleading standard for Title VII actions. *Id*. at 569-570 (discussing *Swierkiewicz*).

The Supreme Court followed up *Twombly* with *Iqbal*. There, the Court weighed claims by a post-9/11 detainee against Attorney General Ashcroft and FBI Director Meuller. *Iqbal*, 556 U.S. at 666-668.

Since respondeat superior did not apply to the *Bivens*-type claims Iqbal was pursuing, and *Bivens* actions overall were limited and disfavored, Iqbal was required to plead facts showing that General Ashcroft and Director Mueller were directly responsible for his alleged mistreatment during his detention. *Id*. at 676-678. Applying *Twombly*, the Court found that Iqbal had pled no facts, nor would he likely be able to do so, showing that policies established by officials at the highest levels of government were directly responsible for his mistreatment. *Id*. at 678-682. The Court emphasized the importance of qualified immunity for high-level government officials, and its reticence to expand *Bivens* actions. *Id*. at 684-687.

Nowhere did the majority suggest it was displacing the Title VII pleading standard unanimously set forth in *Swierkiewicz*. Unlike *Twombly*, *Iqbal* divided the Court; Justice Souter, who authored *Twombly*, dissented from *Iqbal*. *Id*. at 687-88, 695-99.

Meanwhile, the Justices have continued to uniformly apply *Swierkiewicz* in Title VII and related employment discrimination contexts. For instance, in *Johnson v. City of Shelby*, 574 U.S. 10 (2019) (per curiam), the Justices summarily reversed dismissal of police officers' constitutional due process claims for failure to cite

17

Section 1983. *Id.* at 10-11. The Court clarified that *Twombly* and *Iqbal* were not in point. *Johnson*, 574 U.S. at 12. Pointing instead to *Swierkiewicz*, the Court directed that technicalities should not control in employment civil rights cases. FRCP 8 and related rules, the Court admonished, "[D]o not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claims asserted." *Johnson*, 574 U.S. at 11.

Against this backdrop, *Gilligan* has not been abrogated or overruled in the main. It did quote the "no set of facts" language from *Conley* that was retired by *Twombly*. But *Gilligan* spent the bulk of its discussion adopting the Eighth Circuit's view that the prima facie elements from *McDonnel-Douglas* were evidentiary and not pleadings standards. Since this extended reasoning from *Gilligan* was fully vindicated by the Supreme Court in *Swierkiewicz*, 534 U.S. at 508, 510, 512, *Gilligan* was prescient, and remains authoritative on that point.

WSU points to unpublished district court rulings that ostensibly deem *Gilligan* to have been implicitly overruled and no longer applicable. WSU Br. at 23. District courts cannot, of course, assume this Court's precedents to have become obsolete. Since *Gilligan* was largely ratified by the Supreme Court as explained above, it remains good law for the proposition that fair notice, not form, is central to applying FRCP 8.

Reliance by the District Court and WSU on decisions such as *Petersen v. Hewlett-Packard Co.*, 358 F.3d 599 (9th Cir. 2004), WSU Br. at 19-20, 23, and *Lawson v. Washington*, 296 F.3d 799 (9th Cir. 2002), WSU Br. at 25, are misplaced. Both set forth the prima facie elements, as they were obligated to do, in the context of summary judgment.

*Bolden-Hardge v. Office of Cal. State Controller*, 63 F.4th 1215 (9th Cir. 2023), did invoke the prima facie standard. WSU Br. at 21. It did so, though, while overturning dismissal of Title VII and constitutional claims. The Court relied on pre-*Swierkiewicz* holdings, appearing not to have been apprised by the parties of the controlling authority. Dr. Beuca is aware of no post-*Swierkiewicz* decision from this Court which relied on the absence of prima facie elements to affirm dismissal of a Title VII complaint. *Cf. Camp v. L.A. Arena Co. LLC*, 2023 U.S Dist. Lexis 104655 (C.D. Cal. June 15, 2023) (denying Motion to Dismiss in vaccine termination case noting *Swierkiewicz* does not require prima facie showing of Title VII elements).

## C. On the present record, WSU had fair notice of the basis for Dr. Beuca's failure-to-accommodate claims.

WSU assails Dr. Beuca for acknowledging that his complaint could have been more extensive and elaborate. WSU Br. at 24; AOB at 21. Dr. Beuca's pleading set forth "simply, concisely, and directly" the events that he alleges

entitled him to damages from his former employer. *Johnson*, 574 U.S. at 11.

Federal rules of procedure are "designed to discourage battles over mere form of

statement." *Id*. (citations omitted).

Dr. Beuca does not concede that his succinct Amended Complaint failed to

plead the prima facie elements of his Title VII and WLAD claims. But as

explained above, the proper standard at this early stage is not prima facie but fair

notice. As pled, WSU was on notice that the vaccine mandate had caused a

religious conflict for him; that he had sought accommodation; and that WSU

nevertheless terminated him. AOB at 21. As WSU acknowledges, the hospital

where he was in residency, Providence Regional Medical Center, had initially

approved his request. WSU Br. at 11; ER-40. This contrasts sharply with situations

such as *Lawson*, on which WSU relies, where the unsuccessful plaintiff had

resigned and later claimed constructive discharge, under circumstances where it

was unclear whether he ever would have been disciplined for his religious

opposition to saluting the flag. *Lawson*, 296 F.3d at 805-806.

At this early stage of litigation, it should be taken as true that Dr. Beuca was

fired by WSU after he had asserted a request for religious accommodation to the

vaccine mandate. WSU's position that it does not have enough information about

his beliefs and accommodation request is reminiscent of arguments the Supreme

Court rejected in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015).

There, the Tenth Circuit had awarded summary judgment to the employer, holding that ordinarily an employer cannot be liable for failing to accommodate a religious practice until the applicant's or employee provides actual knowledge of the need for accommodation. *Id.* at 771. The Supreme Court reversed, stating as follows: "Abercrombie's primary argument is that an applicant cannot show disparate treatment without first showing that an employer has actual knowledge of the applicant's need for accommodation. We disagree." *Id*. at 772. At the 12(b)(6) stage, WSU's argument—in essence, that even though it fired Dr. Beuca it does not have actual knowledge of his need for religious accommodation—fares no better.

Likewise, WSU claims that it lacks important details about Dr. Beuca's accommodation claims, while at the same time asserting it would not have mattered—its "unassailable" undue hardship defense would have rendered any additional facts futile. WSU Br. at 2, 30.

Indeed, WSU's "primary argument in its Motion to Dismiss was Dr. Beuca's failure to include the what/how/why of his beliefs, and the how/when of making WSU aware of his beliefs." WSU Br. at 11, 12. At the same time, WSU argued more specificity would have been futile. WSU Br. at 12. Yet Such details are required of pleadings not under FRCP 8, but FRCP 9 governing certain fraud actions.

This Court has taken pains to explain the greater particularity required. *Khoja*, 899 F.3d at 1008, "that is, the complaint must allege the who, what, when, where, and how of the alleged fraud." *Id.* This sounds much like what the District Court and WSU insist Dr. Beuca was obligated to do. Even so, this Court has applied both FRCP 8 and FRCP 9 with extreme liberality in amending. *Id*.

### D. Disallowing amendment of the complaint was an abuse of discretion.

The District Court declined to permit Dr. Beuca leave to amend primarily because it believed its assessment of undue hardship as a matter of law would render any such amendment futile. ER-11. Because undue hardship has been thoroughly discussed in the AOB and above in reference to *Groff*, those arguments will not be repeated here.

WSU further contends that futility was not the only basis for the District Court's decision not to offer leave to amend. It makes much of Dr. Beuca's lack of an express request to amend. WSU Br. at 52-53. But this Court has previously regarded unwillingness to grant leave to amend an abuse of discretion, even where the plaintiff did not specifically request such. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

Besides futility, WSU notes that the District Court invoked other *Corinthian Colleges* factors including prior amendment, prejudice and undue delay. WSU Br.

at 51. Dr. Beuca has previously explained the timeline—that just one week transpired in March of this year between removal of his case to federal court and the Motion to Dismiss. AOB at 24. One week in federal court cannot legitimately be called "ample opportunity" in these circumstances. Even taking into account WSU's and the District Court's expanded timeframe includes a few weeks when the original Complaint was filed in state court but not served, and the Amended Complaint was then filed in state court and served, modestly expanding the causes of action from one to two. Their claim of ample opportunity for Dr. Beuca to then readjust his complaint in the one week after removal rings hollow. Similarly, the District Court's declaration that leave to amend for the first time since the case reached federal court "would create undue delay and prejudice to Defendant," ER-11, without further explanation, is unsupported by any facts. As of this writing, less than a year has passed since WSU was first served. ER-6. The case was pending in the District Court for about two months before judgment was entered. Ironically, what the District Court called "undue delay" would have given both parties an opportunity to brief the implications of *Groff*.

A basic objective of FRCP 8 is to avoid cases turning on technicalities. *Johnson*, 574 U.S. at 11. The Court specifically directed the lower courts to permit amendment of the pleading. *Id*.

This Court should do likewise.

**E.    This Court should decline to accept WSU's invitation to second-guess Dr. Beuca's stated religious beliefs.**

WSU invites the Court to affirm on an alternative, even shakier ground that the District Court did well to avoid—second-guessing the sincerity of Dr. Beuca's religious beliefs. WSU Br. at 25.

The District Court, though erring in other respects, was mindful of controlling precedent. ER-8 (citing *Bolden-Hardge,* 63 F.4th at 1223; *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (citation omitted); *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 715 (1981)).

WSU instead searches far and wide for decisions from other jurisdictions while ignoring this Court's most recent reminder that second-guessing religious beliefs is particularly untenable in the early stages of litigation. *Keene v. City and County of San Francisco*, No. 22-16567, 2023 U.S. App. Lexis 11807, 2023 WL 3451687 (9th Cir. May 15, 2023) (mem. Op. reversing denial of prelim. Inj.). The sincerity of an employee's stated religious belief is usually not in dispute and is presumed or easily established. *Id.* at *5 (citing EEOC Guidance).

The District Court agreed with WSU that vague statements in Dr. Beuca's complaint about to whom his request was presented should lead to dismissal without leave to amend. ER-9. But the Supreme Court has provided guidance that

if the defendant truly cannot tell what is being claimed, a motion for a more definite statement—not dismissal—would be in order. *Johnson*, 574 U.S. at 11.

## IV. WSU dodges Dr. Beuca's WLAD claim.

WSU urges that, because of diversity jurisdiction, remand of state claims to the state court would not have been proper in any instance. WSU Br. at 4. Even assuming arguendo WSU were correct, the District Court's dismissal of the state discrimination claim without any serious discussion of state law was reversible error. As the above discussion illustrates, neither the undue hardship standard nor the pleading requirements under FRCP 8 have proceeded in a straight line.

While similarities certainly exist between Title VII and the Washington Law Against Discrimination, the state appellate courts' limited precedent for the latter renders it difficult at best to guess how the WLAD might be newly interpreted in light of *Groff*. The leading authority for religious accommodation under the WLAD, *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481(Wash. 2014), by no means supports the District Court's abbreviated treatment of it. WSU does no better, failing to meaningfully rebut the points Dr. Beuca elucidated from *Kumar*. Compare, AOB at 26-27, with WSU Br. at 54-55.

Whether by remand to the state trial court or a more searching inquiry in the District Court, it must not be simply assumed Dr. Beuca's state accommodation claims can be defeated by undue hardship as a matter of law, particularly when as

discussed above in *Zimmerman*, state public health orders contemplated accommodation even in healthcare settings.

## CONCLUSION

"The federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Swierkiewicz*, 534 U.S. at 514.

For all of the foregoing reasons, the decision below dismissing Dr. Beuca's employment discrimination claims without leave to amend should be reversed.

Dated: December 1, 2023

/s/ Matthew McReynolds
Matthew McReynolds, Counsel of Record
Harold Franklin, Jr.

*Attorneys for Plaintiff-Appellant, Timothy Beuca*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)**  23-35395

I am the attorney or self-represented party.

**This brief contains 5,902 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[XX] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


Signature /s/ Matthew McReynolds_____ Date  December 1, 2023_____

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: December 1, 2023

/s/ Kirstin E. Largent